IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF SOUTH DAKOTA
SOUTHERN DIVISION

MARK CHRISTIANS,

Plaintiff,

v.

DARRIN YOUNG, et al.

Defendant.

Case No. 4:20-CV-04083-LLP

**SUMMIT DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGEMENT**

Defendants, Jarred Anderson, Kelly Buchholz, John Trierweiler, Pamela Thomas, Justin Barthel, Unnamed Summit Licensed Dieticians, Unnamed Summit Dietary Assistants, Unnamed Summit Directors of Operations, Unnamed Summit District Managers, Unnamed Summit Food Service Directors, Unnamed Summit Assistant Food Service Directors, and Unnamed Summit Food Service Works (collectively, "Summit Defendants"), through undersigned counsel, hereby submits this Memorandum in Support of Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(a), and states as follows:

## I. INTRODUCTION

This case arises from the meals that Summit Food Services, LLC ("Summit Food Services") serves to Plaintiff during his incarceration at Mike Durfee State Prison ("MDSP") in Springfield, SD and South Dakota State Penitentiary ("SDSP") in Sioux Falls, SD.[1]

[1] Plaintiff has been incarcerated within the South Dakota Department of Corrections ("SDDOC") since 2013 and is serving an 80-year sentence for second-degree rape.

Plaintiff alleges that Summit Defendants violated the Eighth Amendment for cruel and unusual punishment for failing to provide Plaintiff with an adequate and nutritious diet. Plaintiff claims that as a result of receiving an inadequate diet, he has suffered from a host of medical issues, including severe weight loss. Additionally, Plaintiff claims that Summit Defendants do not prepare diets in accordance with the nutritional guidelines as set forth in the Dietary Guidelines of Americans and that Summit Defendants knowingly serve expired food products to inmates and intentionally change the expiration dates on food products to prolong the use of the food and cut costs.

Plaintiff's claims are baseless and are not actionable Constitutional violations because he has never been deprived of an adequate and nutritious diet during his incarceration within the SDDOC. Rather, Plaintiff's untreated, pre-existing health issues, his participation in lengthy hunger strikes, and his failure to adhere to his medically-prescribed gluten-restricted diet is the cause of his ongoing health issues and weight loss. Summit Defendants are simply food preparers and are required to follow the strict and specific food service instructions as set forth in the contract between Summit Food Services and the SDDOC. The SDDOC makes all final decisions regarding the food preparation services, including the types and amounts of food products within each diet.

There is no genuine dispute as to any material fact related to Plaintiff receiving adequate and nutritious meals at SDDOC. Accordingly, Summit Defendants respectfully request that this Court enter summary judgment in favor of Summit Defendants and against Plaintiff.

## II. <u>STATEMENT OF FACTS</u>

Summit Food Services is a food preparation service contracted by the SDDOC to serve food to various prisons with South Dakota, including MDSP and SDSP. Plaintiff's Complaint

asserts that he suffered and is currently suffering from a litany of medical issues as a result of Summit Defendants' alleged failure to serve him with a nutritionally adequate diet.

Plaintiff claims that he lost at least 90 pounds between 2017 and 2018 and developed various medical conditions, such as severe weight loss, fatigue, chronic fainting spells, loss of muscle and strength, frequent bowel movements, H. Pylori,[2] frequent urination, chest pain, and diarrhea, insomnia, and high cholesterol as a result of his alleged nutritionally inadequate diet.[3]

Additionally, Plaintiff claims that Summit Defendants fail to prepare inmate diets in accordance with the standard food safety and nutritional guidelines as set forth by the Dietary Guidelines of Americans and that he only consumes 1,750 calories per day, which includes only 30-40 grams of protein.[4] Plaintiff also claims that Summit Defendants knowingly serve expired food products to inmates and intentionally change the expiration dates on food products to prolong the use of the food and cut costs.[5] Plaintiff's claims are unsupported.

The contract between SDDOC and Summit Food Services requires that all inmates be provided with a weekly average of 2,700 calories, which includes approximately 120 grams of protein. Summit Defendants strictly adhere to these requirements and even increased Plaintiff's protein intake in May 2019 after the SDDOC directed it to do so.

Additionally, prior to and shortly after his incarceration, Plaintiff experienced a host of health issues, including obesity, and was eventually diagnosed with celiac disease. As a result of this diagnosis, Plaintiff was placed on a medical gluten-restricted diet by SDDOC medical staff. Plaintiff, however, failed to strictly adhere to his medical diet by consuming foods that only

---

[2] H. Pylori is a type of bacteria that lives in the digestive tract and is typically spread from person to person through direct contract with saliva, vomit, or fecal matter.
[3] *See, e.g.,* Doc. 26 at ¶¶ 36, 43, 44, 52, 53.
[4] *Id.* at ¶¶ 40, 125.
[5] *See generally* Doc. 81.

inflamed his celiac disease and caused subsequent health issues, which contributed to his weight loss. Additionally, Plaintiff participated in a month-long hunger strike, which also contributed to his ongoing health issues and weight loss. Plaintiff's ongoing health issues, including his diagnosis of celiac disease, and his participation in the hunger strike are unrelated to the adequacy of the foods prepared and served by Summit Defendants.

Further, pursuant to the policies and procedures of SDDOC, if an if an inmate is placed on a medical diet, that medical diet supersedes the inmate's request for a standard diet, especially where, as here, the foods that make up the standard diet conflict with the foods prescribed by the jail's medical staff. Summit is simply a food preparer and does not employ policies or practices related to food requests. Rather, the SDDOC makes all final decisions regarding the approval or denial of an inmate's meal requests.

Plaintiff seeks approximately $438,000 in monetary damages plus attorney's fees and filing fees, as well as a permanent injunction against Summit to serve "healthy, tasty, palatable, nutritious foods including fresh fruits, fresh vegetables, fish and beef" and to employ licensed nutritionists, independent on Summit, to ensure that all dietary guidelines for inmates are being met.[6] Additionally, Plaintiff seeks an unknown amount of "discretionary damages" to be determined by the jury.[7] To date, Plaintiff has not provided any evidence substantiating the amount of damages that he seeks, much less how his Eighth Amendment rights were violated for cruel and unusual punishment.

As explained herein, there is no genuine dispute as to any material fact in Plaintiff's Complaint, including Plaintiff's complaints regarding Summit Defendants' alleged failure to provide Plaintiff with an adequate and nutritious diet. Plaintiff's untreated, pre-existing health

[6] *See* Doc. 26 at ¶¶ 151-153.
[7] *Id.* at ¶ 156.

issues, his participation in a month-long hunger strike, and his failure to adhere to his medically-prescribed diet are the cause of his ongoing health issues and weight loss.

Accordingly, Plaintiff's allegations against Summit do not rise to the level of actionable Constitutional violations and must be dismissed as a matter of law.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to S.D. L.R. 56.1(a), the Statement of Undisputed Material Facts are filed contemporaneously herewith. The Statement of Undisputed Material Facts are incorporated herein by reference.

## IV. ARGUMENT

### A. Legal Standard for Motion for Summary Judgment.

Summary judgment is properly granted under Fed. R. Civ. P. 56(c) where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material mater and that the moving party is entitled to judgment as a matter of law." *Schultz v. Dew*, 564 N.W.2d 320, 322 (S.D. 1997); *see also* Fed. R. Civ. P. 56(c). The initial burden is upon the party seeking summary judgment, to inform the Court of the basis for its motion and identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The party opposing a motion for summary judgment must be diligent in resisting the motion, and mere general allegations and denials which do not set forth specific facts will not prevent issuance of a judgment." *Schultz*, 564 N.W.2d at 322 (quoting *Ward v. Lange*, 533 N.W.2d 246, 249 (S.D. 1996). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).

If the non-moving party "fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics*, 818 F.2d 1466, 1468 (9th Cir. 1987) (citing *Celotex*¸ 477 U.S. at 323). To withstand a motion for summary judgment, the non-moving party must show that there are "genuine factual issues that can be resolved only by a finder of facts because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. The non-moving party, therefore, "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B. Claims Against Unknown Summit Employees Must Be Dismissed.**

"In general, fictitious parties may not be named as defendants in a civil action." *Taylor v. Spitzer*, 2010 WL 148438 (E.D. Mo. Jan. 12, 2010) (citing *Phelps v. U.S.*, 15 F.3d 735, 739 (8th Cir. 1994)); *see also Estate of Rosenburg by Rosenburg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). An action may proceed against an unknown defendant, however, if the identity of the unknown defendant can be "learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.3d 1254, 1257 (8th Cir. 1985). The complaint, in such an instance, must contain "allegations specific enough to permit the identity of the pasty to be ascertained after reasonable discovery." *Estate of Rosenburg*, 56 F.3d at 37. Dismissal of a complaint as to unknown defendants is proper when at the completion of discovery, the identify of unknown defendants has not been ascertained and no facts regarding these defendants have been established. *See Gold Star Taxi and Trans. Svc. V. Mall of Am. Co.*, 987 F.Supp. 741, 753 (D. Minn. 1997).

Here, Plaintiff served two sets of written discovery upon Summit Defendants. *See, e.g.,* **Ex. Z** and **Ex. AA**, respectively. None of these discovery requests asked Summit Defendants to

produce the identity of any unknown Summit employees that may have been involved in any alleged conduct in violation of the Eighth Amendment. *Id.* Plaintiff has made no attempts to conduct any discovery regarding the identity of unknown Summit employees. *Id.* Additionally, the majority of Plaintiff's discovery responses state that the information sought by Summit Defendants was either "listed in the complaint" or was "previously submitted to the courts or will be submit[ed]." *See, e.g.,* **Ex. BB**.

Plaintiff appears to be acutely aware of the discovery process as he has served two set of discovery to multiple Defendants in this matter in addition to numerous discovery- related motions.[8] Accordingly, Plaintiff's failure to conduct adequate discovery in this matter as it pertains to Summit Defendants cannot be chalked up to ignorance of the discovery process.

Plaintiff has been allowed to engage in reasonable discovery and has failed to seek out the identities of any unknown defendant. The Court is without proper jurisdiction over the unnamed defendants because Plaintiff has failed to identify the unknown defendants, has failed to seek leave to amend his Complaint to properly name any unknown defendants, and has failed to effectuate proper service upon any unknown defendants. *See* Fed. R. Civ. P. 4(c)(1); *Adams v. Allied Signal Gen. Aviation Avionics*, 74 F.3d 882, 885-86 (8th Cir. 1996).

As such, Plaintiff's claims should not proceed against any unknown Summit employees and should be dismissed as to said unknown Summit employees.

**C. Qualified Immunity.**

Public officials are protected from liability in their individual capacities under the doctrine of qualified immunity if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555

[8] *See, e.g.,* Docs. 4, 19, 20, 22, 24, 26, 40, 42, 47, 56, 59, 65, 76, 77, 79, 80, 81, 112, and 113.

U.S. 223, 231 (2009). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hayes v. Long*, 72 F.3d 70, 72 (8th Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 349 (1986). Qualified immunity is a fact-intensive inquiry and cannot be plead as a "broad general proposition," but must be examined "in light of the specific context of the case." *Davis v. Hall*, 375 F.3d 703, 712 (8th Cir. 2004).

The United States Supreme Court has set forth a two-prong test to determine if the actions of a state official are protected by the doctrine of qualified immunity. Courts must determine:

> (1) Whether the facts alleged or shown, construed in the light most favorable to [plaintiff], establish a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of alleged misconduct, such that a reasonable official would have known that [his or] her actions were unlawful.

*McCaster v. Clausen*, 684 F.3d 740, 746 (8th Cir. 2012) (citing *Pearson*, 555 U.S. at 232).

Summit is entitled to qualified immunity unless either of these inquiries results in the affirmative. *Id.* To establish whether an official's conduct violates an individual's constitutional right, courts do not require "a case directly on point" to clearly establish a right. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Instead, courts require that "existing precedent . . . place[ ] the statutory or the constitutional question beyond debate." *Id.* The conduct of a reasonable official is measured by what "'[a] reasonably competent official should know.'" *Walters v. Grossheim*, 990 F.2d 381, 384 (8th Cir. 1993) (quoting *Slone v. Herman*, 983 F.2d 107, 111 (8th Cir. 1993)).

Courts within the Eighth Circuit have consistently found that contracted food service providers at prisons, like Summit here, are government actors for purposes of constitutional violations. *See, e.g., Shaw v. Kaemingk*, 2020 WL 4001474, at *5 (D. S.D. 2020) (finding that food service providers were entitled to qualified immunity on inmate plaintiff's constitutional

violation claims); *Jenkins v. Stutsman Cty. Corr. Ctr. Com'r Chairman*, 2015 WL 1458158, at *6 (D. N.D. 2015) (same).

Here, Plaintiff fails to overcome Summit's entitlement to qualified immunity, as he has not demonstrated a violation of his Eighth Amendment rights. Summit kitchen staff at SDDOC have no decision-making authority as to which diet inmates receive and how the meals are prepared and handled. *See* **Ex. C** at ¶ 4; **Ex. D** at ¶¶ 3-4, 9. Moreover, all Plaintiff's grievances were submitted to and answered by SDDOC staff, not Summit employees. *See* **Ex. C** at ¶ 7; *see generally* Doc. 26 and at ¶¶ 56-63, 65-70. Thus, Plaintiff not only fails to demonstrate an objective violation of his Constitutional rights, but also fails to satisfy the subjective requirement, as Summit employees could not have reasonably known that such violation was occurring.

Accordingly, the Qualified Immunity Doctrine applies to Summit, and Summit is entitled to qualified immunity because their actions have not violated Plaintiff's constitutional rights.

**D. Summit Did Not Violate the Eight Amendment for Cruel and Unusual Punishment.**

Plaintiff alleges that Summit Defendants violated the Eighth Amendment by failing to provide him with adequate nutrition, prepare foods in accordance with the nutritional guidelines as set forth in the Dietary Guidelines of Americans and that Summit Defendants knowingly serve expired food products to inmates and intentionally change the expiration dates on food products to prolong the use of the food and cut costs.[9] Plaintiff alleges that Summit Defendants "acted with deliberate indifference to [Plaintiff's] nutritional needs causing pain, discomfort and a host of present and future health issues, constituting cruel and unusual punishment…" during his time at SDSP and MDSP.[10]

---

[9] *See generally* Doc. 26; Doc. 81.
[10] *See* Doc. 26 at ¶¶ 126, 145.

The Eighth Amendment of the United States Constitution prohibits the federal government from imposing unduly harsh penalties on criminal defendants. *See* U.S. Const. amend. VIII. Specifically, "[t]he Eighth Amendment requires that inmates be provided 'well-balanced meal[s], containing sufficient nutritional value to preserve health.'" *Elerson v. Jones*, 2007 WL 2325967, at *5 (W.D. Ark. 2007) (quoting *Green v. Ferrell*, 801 F.2d 765, 770 (5th Cir. 1986)). The Eighth Amendment's prohibition against cruel and unusual punishment is violated if an inmate is not provided with meals adequate to maintain his health. *See, e.g., Campbell v. Cauthron*¸623 F.2d 503, 508 (8th Cir. 1980) (holding that prisoners are guaranteed a reasonably adequate diet).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Courts within this circuit have held:

> The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subject state of mind evincing deliberate indifference to the health or safety of the prisoner.

*Id.*; *see also Schmidt v. Lentsch*, 2015 WL 2092575, at *4 (D.S.D. May 5, 2015) (holding that a deprivation must result "in the denial of the minimal civilized measure of life's necessitates" and that prison officials were deliberately indifferent to " an excessive risk to inmate health or safety….") (internal citations and quotations omitted); *Oliver v. Cook*, 2017 WL 8220201, at *5 (E.D. Ark. Mar. 23, 2017) (holding that the alleged deprivation must result "in the denial of the minimal civilized measure of life's necessities….") (citing *Williams v. Delo*, 49 F.3d 442, 445 (8th Cir. 1995)).

As will be demonstrated below, Plaintiff has failed to present any evidence to establish that Summit Defendants denied Plaintiff the "minimal civilized measure of life's necessities" in relation to his diet or that Summit Defendants were deliberately indifferent to his dietary needs.

Plaintiff cannot establish that he suffered any real injury or health impairment stemming from Summit Defendants' food preparation services. As such, summary judgment is proper.

**1. Summit Defendants' Did Not Deprive Plaintiff of the Minimal Civilized Measure of Life's Necessities.**

Under the objective standard, "[w]hether conditions at a specific prison are unconstitutional necessitates a factual inquiry about the specific conditions at the facility." *Patchette v. Nix*, 952 F.2d 158, 163 (8th Cir. 1991); *see also Brakeall v. Stanwick-Klemik*, 2020 WL 1180727, at *7 (D.S.D. Mar. 11, 2020) (same). "An inmate must show that a condition of confinement 'pose[s] an unreasonable risk of serious damage to his future health' or safety." *Brakeall*, 2020 WL 1180727, at *7 (quoting *Helling v. McKinney*, 509 U.S. 25, 35 (1993). "The deprivation of food constitutes cruel and unusual punishment only if it denies a prisoner the 'minimal civilized measure of life's necessities.'" *Talib v. Gilley*, 138 F.3d 211, 21 n. 3 (5th Cir. 1998) (expressing doubt that an inmate, who missed approximately 50 meals in five months and lost fifteen pounds met this threshold) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

Courts have held that "minimal civilized measure of life's necessities" constitutes "identifiable human need[s] such as food, warmth, or exercise…" *Wilson v. Seiter*, 501 U.S. 294, 304 (1991). An inmate, however, is not denied the "minimal civilized measure of life's necessities" merely because he is unsatisfied with the quantity or quality of the item he seeks. *See, e.g., Green v. Ferrell*¸801 F.2d 765, 770 (5th Cir. 1986) (holding that even on a regular permanent basis, two meals per day was adequate); *Berry v. Brady*¸192 F.3d 504, 507 (5th Cir. 1999) (dismissing as frivolous an inmate's claim that he missed eight meals); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (holding that the Eighth Amendment was not violated when an inmate was served only one meal a day for fifteen consecutive days where the one meal was sufficient to maintain normal health); *Key v. McKinney*, 176 F.3d 1083 (8th Cir. 1999) ("[w]hile

the shackles made it more difficult to sleep and relieve himself, [the inmate] has not shown that he suffered a serious deprivation of the 'minimal civilized measure of life's necessities'"); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 83 (8th Cir. 1996) (no finding of serious deprivation where "inmate…[was] deprived of underwear, blankets and mattress, exercise, and visits"); *Seitzer-Bey v. Delo*, 66 F.3d 961, 963 (8th Cir. 1995) (no finding of serious deprivation where inmate was placed in "strip cell for two days without clothing, bedding, or running water, with a concrete floor, a concrete slab for a bed, and cold air blowing on him"); *Williams v. Delo*¸49 F.3d 442, 444 (8th Cir. 1995) (no Eighth Amendment violation where inmate was provided no clothes, running water, hygiene supplies, blanket or mattress).

a. <u>Summit Defendants are required to adhere to SDDOC policies and procedures regarding food preparation.</u>

Plaintiff claims that Summit Defendants do not follow the requirements as set forth in the contract between Summit Defendants and the SDDOC.[11] Specifically, Plaintiff alleges that Summit Defendants violated the SDDOC contract by failing to provide him with foods as identified in SDDOC contract.[12]

Summit Defendants have not deprived Plaintiff of the "minimal civilized measure of life's necessities" because Summit Defendants do not promulgate policies and procedures regarding food services and the quality of food within the SDDOC. *See* **Ex. C** at ¶¶ 4-6; *see also* **Ex. D** at ¶ 4-5; *see generally* **Ex. B** (outlining obligations of Summit regarding food services). Rather, Summit Defendants are required to follow SDDOC policies and procedures by providing all inmates, including Plaintiff, with a minimum of three nutritional meals per day as required by contract and in accordance with SDDOC policies and procedures. *Id.*

[11] *See* Doc. 26 at ¶¶ 96, 99-100.
[12] *Id.*

Pursuant to SDDOC policies, "[a]ll inmates will be afforded the opportunity to access three nutritional meals a day, seven days a week." *See* **Ex. CC**, SDDOC's Inmate Wellness Policy at p. 2, ¶ IV(1)(F). Additionally, the SDDOC requires that all "[i]nmates…be provided a balanced diet that will meet the nationally recommended allowances for basic nutrition" and prohibits inmates from being denied access to nutritionally adequate diets. *Id.* at p. 1, ¶ IV(1)(B)(1).

Additionally, the contract between SDDOC and Summit specifically identifies the food products, portion sizes, and grades of meat that Summit Defendants are required to serve to inmates within SDDOC. *See* **Ex. B**; *see also* **Ex. D** at ¶ 6. Summit is required to, and does, adhere to the strict requirements of its contract with the SDDOC and must receive approval from the SDDOC for any modifications. *See* **Ex. D** at ¶ 5; *see also* **Ex. C** at ¶¶ 4-5. Pursuant to the contract, inmates must receive food products that are "in conformance with the specified minimum U.S. Standards for Grades[,]" "top quality[,]" and, where available, USDA approved. *See* **Ex. B** at p. 7, ¶ III.

Here, Summit Defendants prepare and serve Plaintiff with three nutritional meals every day and have done so since his incarceration. *See* **Ex. D** at ¶ 11. On or about October 24, 2018, after being diagnosed with celiac disease, Plaintiff was placed on a medical gluten-restrictive diet. *Id.* at ¶¶ 9-10; *see also* **Ex. K** at p. 2. As such, Summit Defendants were required to prepare a gluten-restrictive diet for Plaintiff, which consists of nutritional gluten-free foods such as baked ham, ground meat, turkey, potatoes, mixed vegetables, fresh or canned fruit, corn tortillas, grits, applesauce, cheese, whipped margarine, salad, chips , milk, coffee, and fortified drinks. *See* **Ex. D** at ¶ 8; *see also* **Ex. Y**.

Additionally, per the contract, foods served to inmates are required to be, and are, in compliance with the National Institute of Health Dietary and Nutrition Standard's Dietary Intakes and Recommended Dietary Allowances and are updated as necessary to fits the needs of all

inmates. *See* **Ex. D** at ¶ 7. Summit Defendants have never denied or prohibited Plaintiff, or any inmate, from consuming the foods as required by his medical diet. *See* **Ex. C** at ¶ 10.

Further, all inmates that wish to consume a certain foods or a specific diet must first submit a request to the SDDOC for approval. *See* **Ex. CC** at ¶ IV(1)(D). Any grievances by an inmate regarding a policy, condition, action, or decision directly affecting the inmate, including complaints regarding diets, must be submitted to SDDOC staff. *See generally* **Ex. DD**. SDDOC staff, not employees of Summit Defendants, make all final decisions regarding an inmate's diet requests and then direct Summit Defendants as to which inmates have been approved for certain diets. *Id.*; *see also* Doc. 26 at ¶¶ 56-63, 65-70 (Plaintiff acknowledging that grievances were answered by SDDOC staff).

Indeed, it is the signature of the Unit Coordinator, employed by the SDDOC, or other SDDOC staff that responds to, approves or denies, and signs off on the inmate's request. *Id.*; *see also* Docs. 99-80, 99-81, 99-84 – 99-93, 99-150. Additionally, throughout the Complaint, Plaintiff identifies the various times that he spoke with SDDOC staff regarding his numerous complaints with his diet. *See, e.g.,* Doc. 26 at ¶¶ 56-63, 65-70. Plaintiff never spoke with anyone at Summit regarding his food complaints because Summit Defendants are simply food preparers and are required to follow the SDDOC's orders.

Further, Plaintiff was placed on a medically necessary diet by SDDOC staff. *See* **Ex. D** at ¶¶ 9-10. Pursuant to SDDOC policies and procedures, if an inmate is placed on a medical diet, that medical diet supersedes the inmate's request for any other type of diet, especially when, like here, the foods that the inmate requests to consume conflict with the foods prescribed by the jail's medical staff. *Id.* at ¶ 10.

Accordingly, Summit Defendants cannot be found to have deprived Plaintiff of any minimal civilized measure of life's necessities, such as a nutritionally adequate diet, because Summit Defendants are required to, and do, provide regularly-scheduled nutritional meals to Plaintiff as required by the SDDOC.

b. The food served to Plaintiff by Summit Defendants is adequate.

Plaintiff claims that the meals that he receives contain significant less calories than what is recommended and that the foods he consumes are not nutritionally sufficient.[13] Specifically, Plaintiff claims that his diet is "approximately 1,750 [sic] calories per day" which is "approximately 1,300 [sic] calories short of his recommended total calories of 3,000 [sic] per day."[14] Additionally, Plaintiff claims that the portion sizes are substandard, the food is "terrible tasting," there is a lack of fresh vegetables and fruit, and the is a lack of variety between meals.[15] Plaintiff's arguments lack support.

Courts have held that "[m]erely because the food is not prepared to an inmate's taste or the fact that an inmate prefer other foods does not implicate the Eighth Amendment." *Avery v. Ferguson*, 2010 WL 3829433, at *11 (W.D. Sept. 3, 2010); *Burgin v. Nix*, 889 F.2d 733, 734-35 (8th Cir. 1990) (holding that inmates do not have a right to be served a particular type of food); *Giddings v. Cradduck*, 2017 WL 2791345, at *7 (W.D. Ark. June 6, 2017) (finding that the Eighth Amendment requires only that the inmates "receive food that is adequate to maintain health; it need not be tasty or aesthetically pleasing.")

Here, the majority of Plaintiff's allegations stem from the mere dissatisfaction of the food served to him in prison. For example, Plaintiff complains about the temperature of the food (Doc.

[13] *See* Doc. 26 at ¶¶ 38, 40.
[14] *Id.* at ¶ 40.
[15] *Id.* at ¶ 125; Doc. 81.

26 at ¶ 98), not receiving dessert with one meal (*Id.* at ¶ 116), receiving the same dessert twice in one day (*Id.* at ¶ 100), the quality of the corn tortillas (*Id.* at ¶ 110), not receiving a bread or pasta options despite his celiac disease (*Id.* at ¶¶ 117, 119), the lack of variety with the meals served (*Id.* at 117), the quality of cheese (*Id.* at ¶ 104), the quality of eggs (*Id.* at ¶ 103); and that Summit Defendants fail to check their comment cards on a regular basis (*Id.* at ¶ 99). Such complaints do not rise to the level of an Eighth Amendment violation.

While Plaintiff is entitled to nutritionally adequate food, he does not have a right to food that is particular to his personal taste. *See Gard v. Dooley*, 2016 WL 5376236, at *30 (D.S.D. Mar. 4, 2016) (holding that prisoners do not have a right to "food that is tasty or even appetizing"). Nor does Plaintiff have a right to choose the items on his particular diet, especially when the items on his specific diet are prescribed by the medical ward unit at SDSP and MDSP. *See Spight v. Davidson*¸2014 WL 2811829, at *2 (M.D. Tenn. June 23, 2014); *see also* **Ex. K** at p. 2. The fact that Plaintiff does not like his diet does not render it unreasonable or legally deficient.

Plaintiff is neither a medical doctor nor a nutritionist and is therefore unqualified to render an expert opinion on whether the meals provided to him are nutritionally adequate and contain sufficient portion sizes. *Gard*, 2016 WL 5376236, at *30. Summit Defendants employ a licensed dietician who is plays an active role when all diet menus are prepared to ensure that the food items follow Summit's contract with the SDDOC and in accordance with the dietary guidelines as established by the National Institute of Health Dietary and Nutrition Standard. *See* **Ex. D** at ¶ 7.

As a baseline, all inmates, including Plaintiff, receive approximately 2,700 calories per week, regardless of the type of diet that a particular inmate consumes. *Id.* If the medical ward of the SDDOC prison facility orders Summit's licensed nutritionist to increase the calorific intake for a certain inmate, Summit Defendants are required to comply with such an order. *Id.* at ¶ 5; *see*

*also* **Ex. C** at ¶ 5. All menus are evaluated at least twice per year to ensure that inmates are receiving the proper amount of nutrition with each meal and to provide inmates with some variety throughout the year. *See* **Ex. D** at ¶ 12. Any food products that do not comply with Summit Defendants' high standards for food quality are not included on any menus. *See* **Ex. D** at ¶ 6.

Here, despite Plaintiff's claim that he only consumes 1,750 calories per day, Plaintiff previously advised medical staff on least two occasions that he consumed between 4,000-5,0000 calories per day (*See* Docs. 99-10, 99-70, 99-21) and that he had even increased his calorie intake. *See* Doc. 99-8. Additionally, in April 2019, the MDSP medical unit requested that Summit Defendants increase Plaintiff's protein intake by 40 grams, to which Summit Defendants complied. *See* **Ex. EE**; *see also* **Ex. C** at ¶ 11 .

As stated above, per his medical diet, Plaintiff receives a variety of meats, vegetables, fruits, gluten-free starches, dairy products, coffee and fortified drinks. *See* **Ex. Y**. Plaintiff also has the option to purchase commissary items. *See* Doc. 99-96. Thus, Plaintiff receives significantly more calories than the average inmate within the SDDOC to sustain his health and receives a balanced proportion of nutritional foods to meet his needs.

Further, an "Evaluation of the Food Service Program" was conducted at SDDOC in 2017. *See* Doc. 99-78. This evaluation included a "off-site review evaluating the DOC menus and food service programs, including a summary nutritional analysis of the main menu and therapeutic diets" and was aimed to ensure that inmates were receiving proper nutrition. *Id*. Although the evaluation revealed high sodium levels in the food, the overall food provided within the SDDOC was quality and nutritious. *Id.*; *see also Brakeall v. Stanwick-Klemik*, 2020 WL 1180727, at *14 (D.S.D. Mar. 11, 2020) (holding that food served within SDDOC was nutritionally adequate despite 2017 evaluation that revealed higher levels of sodium found in food products).

Additionally, after receiving the evaluation regarding the sodium levels, Summit Defendants took measures to reduce the amount of sodium within food products. *See* Ex. 99-79.

There is no genuine issue as to any material fact regarding whether Summit Defendants provide Plaintiff with an adequate diet. Plaintiff's mere complaints regarding the taste and variety of the foods he consumes within the SDDOC does not constitute an Eighth Amendment violation, especially when Plaintiff is receiving a well-balanced diet in calorific excess of the diets that other inmates receive. Additionally, the independent food evaluations in 2017 and 2019 regarding Summit's food preparation services support the fact that Summit Defendants provided (and still provide) nutritionally adequate foods to inmates. As such, summary judgment is proper.

c. <u>Plaintiff's health has not suffered as a result of the food served by Summit Defendants.</u>

Plaintiff alleges that due to Summit Defendants' alleged failure to serve nutritionally adequate foods, he lost at least 90 pounds between 2017 and 2018 and developed various medical conditions, such as severe weight loss, chronic fainting spells, loss of muscle strength, frequent bowel movements, frequent urination and diarrhea, insomnia, and high cholesterol.[16] Plaintiff's health problems, however, are unrelated to the foods prepared and served by Summit Defendants and are instead stem from pre-existing, undiagnosed conditions, his own failure to adhere to his medical diet, and his participation in the hunger strike.

Courts have held that to sufficiently establish an Eighth Amendment violation, inmates must show "the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992). Specifically, inmates must "demonstrate significant weight loss or other adverse physical effects from lack of nutrition." *Ingrassia v.*

[16] *See* Doc. 26 at ¶¶ 36, 43, 44.

*Schafer*, 825 F.3d 891, 899 (8th Cir. 2016); *see also Berry v. Brady*¸192 F.3d 504, 508 (5th Cir. 1999) (suggesting that an inmate claiming inadequate diet under the Eighth Amendment must allege that he lost weight or suffered adverse physical effects or was denied nutritionally or calorically adequate diet).

When Plaintiff first entered the SDDOC in 2013, he was approximate 6'2" and weighed approximately 307 lbs. *See* Doc. 99-1. Additionally, Plaintiff had a host of pre-existing diagnoses including hypothyroid disorder, bipolar disorder, obsessive compulsive disorder, and depression. *Id*. To combat these issues, Plaintiff was taking numerous medications, which, according to Plaintiff, caused him to gain weight. *Id.* Indeed, Plaintiff told a nurse that he believed his psychiatric medications had caused, and were causing, him to gain weight. *Id.*

After Plaintiff stopped taking these medications in October 2017, his medical records reflect that he steadily began to lose weight. *See generally* Doc. 99-7. Plaintiff voiced concerns about his weight loss but was told by licensed SDDOC doctors and nurses that the weight loss was appropriate in light of his excessive weight, especially since he was considered to be obese and had increased his exercise habits since his incarceration. *See* Doc. 99-5. On one occasion, Plaintiff even admitted that he was aware that he needed to lose weight. *Id.* This demonstrates that Plaintiff's weight loss was due to stopping his medications had nothing to do with his nutrition.

Plaintiff's weight loss plateaued around February 2019, and he maintained an average weight of approximately 230 pounds through March 2021. On March 31, 2021, however, Plaintiff took part in a hunger strike that lasted just over a month through May 11, 2021. *See* Doc. 105-142; *see also* **Ex. W** and **Ex. X.** Over the course of his hunger strike, Plaintiff lost approximately 35 pounds and weighed approximately 195 pounds by the end of the strike. *See* Doc. 99-143.

In addition to his weight loss concerns, from January 2018 through November 2020, Plaintiff voiced numerous concerns about his incontinence, excessive bowel movements, loss of muscle/strength in his right shoulder, fainting spells, right ankle pain, dehydration due to his incontinence and bowel movements, big toe pain, dry lips, cracked feet, untreated genital warts, and bumps on his face. (*See* Summit Defendants' Statement of Undisputed Material Facts at ¶ 21.) Plaintiff claims that these health issues are all related to his alleged poor diet. *See generally* Doc. 26. Plaintiff's medical records, however, do not attribute these illnesses to the adequacy of the food served by Summit Defendants within the prison system.

Rather, Plaintiff's health issues stem from a combination of the following: an injury that Plaintiff sustained to his shoulder while working at MDSP that resulted in surgery; mild arthritis in his toe; poor hygiene resulting in H-Pylori; a previously undiagnosed gluten intolerance; acne; a fracture of his right ankle; side effects from his psychiatric medicine; hyperlipidemia; hypothyroidism; and pre-existing genital warts. (*See* Summit Defendants' Statement of Undisputed Material Facts at ¶ 21.) Additionally, after Plaintiff was diagnosed with celiac disease in October 2018 and placed on a medical gluten-restricted diet, SDDOC medical staff noted that his weight fluctuation and bowel issues were likely related to the celiac disease. *See* Doc. 99-70.

Plaintiff, however, was not properly following his gluten-restricted diet after several follow-up lab tests in July 2019 revealed inflammation in Plaintiff's small intestine. *See* **Ex. R**. Indeed, Plaintiff's medical records from July 31, 2019 indicate Plaintiff's failure to follow his medically-required diet was the cause of his weight loss and other health issues that he was experiencing. *See* Doc. 99-70.

Further, there are numerous documented instances wherein Plaintiff knowingly consumed foods that did not comply with his gluten-restricted diet. *See, e.g.,* **Ex. S**; *see also* Doc. 99-96.

Food products that contain gluten are strictly prohibited by Plaintiff's diet because he is celiac and will cause him to experience weight loss and other health issues. *See* **Ex. R**.

Indeed, despite his celiac diagnosis, Plaintiff purchased and consumed the following non-gluten-free items from commissary: wheat bread; honey buns; Cheez-It crackers; Little Debbie chocolate chip cream pies; Toast'em Popup S'mores pastries; Toast'em Popup brown sugar/cinnamon pastries; Little Debbie nutty bars; Salsitas tortilla chips; flour tortillas; Jay's Krunchers kettle jalapeno chips; Cup O'Noodles spicy chile chicken soup; Carmela ready cuts; Little Debbie strawberry shortcake rolls; Frosted Flakes cereal; and Raisin Bran cereal. *See* **Ex. S**; *see also* Doc. 99-96. All of this, of course, is junk food; in addition to being non-gluten-free, these foods also likely contain little to no nutritional value.

If Plaintiff's allegations are that Summit Defendants failed to properly prepare nutritionally adequate foods and that Summit Defendants refused to provide Plaintiff with nutritionally adequate foods, it is questionable as to why Plaintiff would specifically purchase food items that either have little to no nutritional value or clearly conflict with his celiac-restrictive diet. Indeed, Plaintiff, and not Summit Defendants, is contributing to his health issues and lack of nutrition by consuming foods that he knows contain little nutritional value or contain gluten.

Pursuant to SDDOC procedures, "[i]nmates who access commissary to purchase food, remain responsible for maintaining a healthy diet and following any prescribed medical/therapeutic diet." *See* **Ex. CC** at ¶ IV(1)(E). Plaintiff's failure to consume nutritious foods and foods containing gluten indicate that Plaintiff, not Summit Defendants, is contributing to his poor health and related medical issues. Regardless, Plaintiff's requests for specific foods or a different diet are submitted through SDDOC and have no bearing on Summit Defendants' role in the meal preparation and service.

As such, Plaintiff's health has not suffered as a result of the food served to him by Summit Defendants. Rather, Plaintiff's history pre-existing health conditions, refusal to adhere to his medical diet, and participation in a month-long hunger strike is the cause of his health issues. Accordingly, summary judgment in favor of Summit Defendants is proper.

**2. <u>Summit Defendants Were Not Deliberately Indifferent To Plaintiff's Dietary Needs.</u>**

Plaintiff claims that Summit Defendants knowingly fail to prepare diets in accordance with standard food safety and nutritional guidelines and lack training on how to prepare and serve nutritionally adequate meals.[17] Additionally, Plaintiff claims that Summit Defendants knowingly serve rancid and/or expired meat to inmates and intentionally change the expiration dates on food products to prolong the use of the food and cut costs.[18] Plaintiff also claims that Summit Defendants knew that Plaintiff was unsatisfied with the food being served but did nothing to address his concerns.[19]

Under the subjective component of a claim for inadequate diet, the inmate must "show that the Defendants were deliberately indifferent to his dietary needs." *Giddings v. Cradduck*, 2017 WL 2791345, at *5 (W.D. Ark. June 6, 2017) (citing *Wishon*, 978, F.2d at 449); *see also Hudson v McMillian*, 503 U.S. 1, 20 (1992) (holding that an inmate must demonstrate that prison officials "acted with a sufficiently culpable state of mind" in relation to the prison condition). A "should-have-known" standard is not sufficient to demonstrate deliberate indifference. *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "Absent a showing that the prison officials consciously are not a punishment within the meaning of the Eighth Amendment." *Schmidt*, 2015 WL 2092575 at, *4.

[17] *See* Doc. 26 at ¶ 103.
[18] *See, e.g.,* Doc. 81.
[19] *See* Doc. 26 at ¶¶ 100-104.

Here, all meals served within the SDDOC arrived to the facilities from Summit Defendants' vendor, Cash-Wa Distributing Co. ("Cash-Wa"). *See* **Ex. D** at ¶ 13. As it pertains to Plaintiff's gluten-restricted diet, Summit staff are required to follow special procedures to ensure that the food does not come into contact with anything that contains gluten. *See* **Ex. C** at ¶ 9. All meals served within the SDDOC by Summit, including Plaintiff's gluten-restrictive meals, are prepared in a clean, sanitized and sterile environment and all Summit staff, including inmate workers, receive the requisite training to ensure that all foods are served in an appropriate manner. *Id.* at ¶¶ 8, 9.

The procedures listed above ensure that all gluten-free meals received from Cash-Wa remain gluten-free in accordance with the National Institute of Health Dietary and Nutrition Standard. *See* **Ex. D** at ¶ 7. Additionally, all Summit staff, including inmates, receive the requisite training to ensure that all foods are served in an appropriate and sanitary manner. *See* **Ex. C** at ¶ 9. Plaintiff is unable to demonstrate how Summit Defendants were deliberately indifferent to his dietary needs in preparing and serving his gluten-restrictive diet when Summit Defendants expressly take extra precautionary measures to ensure that all meals do not come in contact with non-gluten-free foods throughout Summit Defendants' preparation of the same.

Further, Plaintiff has provided no evidence, aside from self-serving, conclusory affidavits, to support his allegations that Summit Defendants knowingly serve rancid meat to inmates and/or change the expiration date of foods to prolong the use of such foods. As stated above, independent evaluations of Summit Defendants' food storage, safety, handling and sanitation, meal and diet service, conducted in February 2017 and December 2019, reveal that Summit Defendants consistently maintain compliance with their meal services. *See* Docs. 99-78, 99-79.

SDDOC staff, not Summit Defendants, review and address complaints by inmates. *See* **Ex. C** at ¶ 4; **Ex. D** at ¶ 7; *see also* Doc. 26 (Plaintiff acknowledging that SDDOC staff address his grievances). If the SDDOC directs Summit Defendants to alter an inmate's diet, provide additional foods to an inmate, etc., Summit Defendants are required to follow such orders. *See* **Ex. D** at ¶¶ 3-5; **Ex. C** at ¶¶ 5-7. There are no instances wherein Summit Defendants received an order from the SDDOC relating to Plaintiff's diet and refused to comply with such orders.

As stated above, "[m]erely because the food is not prepared to an inmate's taste or the fact that an inmate prefer other foods does not implicate the Eighth Amendment." *Avery*, 2010 WL 3829433, at *11; *Burgin*, 889 F.2d at 734-35. Plaintiff consumes more than the recommended calories per day and is provided with nutritionally adequate foods. *See* **Ex. C** at ¶ 11; **Ex. D** at ¶ 11. Had Summit Defendants received a legitimate complaint regarding Plaintiff's diet demonstrating that his diet did not comply with the SDDOC contract or the National Institute of Health Dietary and Nutrition Standards, Summits Defendants would be required to address it. Such a scenario simply did not occur and as such, Summit Defendants were not required to modify Plaintiff's diet.

Plaintiff is unable to demonstrate that Summit Defendants were deliberately indifferent to Plaintiff's dietary needs or that they acted in a way that placed Plaintiff's health in danger. Accordingly, Summit Defendants respectfully request that this Court find that Summits Defendants committed no Eighth Amendment violations and grant summary judgment in their favor.

### E. Compensatory and Punitive Damages are Not Recoverable.

Plaintiff's prayer for relief requests that the Court grant him compensatory, punitive, and nominal damages. *See* Doc. 26 at ¶¶ 150-158. The Prison Litigation Reform Act ("PLRA") states

that "[n]o federal civil action may be brought by a prison confined in jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The PLRA bars recovery of compensatory damages by inmates who did not suffer a physical injury. *See Sisney v. Reisch*, 674 F.3d 839, 843 (8th Cir. 2012); *Royal v. Kautzky*, 375 F.3d 720, 724 (8th Cir. 2004). Plaintiff has not demonstrated that his alleged health issues are related to the food prepared for and served to Plaintiff. As such, his request for compensatory damages should be dismissed.

Plaintiff also requested that the Court grant him punitive damages against Summit Defendants in the approximately amount of $561,350. *See* Doc. 26 at ¶¶ 152-154. Punitive damages are recoverable under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Kolstad v. Am. Dental Assoc.*, 527 U.S. 526, 536 (1999); *Kautzky*¸375 F.3d at 724.

Plaintiff has not established that Summit Defendants acted with evil motive or in a callous or reckless manner. Indeed, Plaintiff improperly assumes, without sufficient evidence, that Summit Defendants independently prepare and distribute nutritionally inadequate and expired food products to inmates with no adherence to the requirements of the governing dietary policies and/or SDDOC policies.

If Summit Defendants served inadequate, expired food to inmates, they would certainly be unable to obtain any business in the State of South Dakota or elsewhere within the prison system, and the SDDOC likely would have declined to renew Summit Defendants' contract. Further, as discussed above, Summit Defendants merely act at the direction of the SDDOC and in accordance with the requirements set forth in the SDDOC contract. Plaintiff's failure to establish the proper

state of mind to justify an award of punitive damages must result in a dismissal of Plaintiff's claims for punitive damages. Accordingly, Summit Defendants respectfully request that the Court enter an order dismissing Plaintiff's claims for compensatory and punitive damages.

## V. CONCLUSION

Plaintiff has not met the threshold requirements to establish a cause of action under the Eighth Amendment. Based upon the arguments, authorities, and material facts raised herein, Summit Defendants committed no constitutional violations. Accordingly, Summit Defendants respectfully request that the Court enter an order granting summary judgment in favor of Summit Defendants and for such further relief as the Court finds just and proper.

Respectfully submitted this 5th day of July, 2022.

*s/Patrick Q. Hustead*
Patrick Q. Hustead, Esq.
THE HUSTEAD LAW FIRM,
*A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
(303) 721-5000; pqh@thlf.com
*Attorney for Summit Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 5, 2022, I electronically filed the foregoing with the Clerk of Court using CM/ECF system on all counsel of record.

s/*Patrick Q. Hustead*
Patrick Q. Hustead