UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| MARK CHRISTMANS, PLAINTIFF, | 4:20-CV-04083-LLP |
| V. | BRIEF IN OPPOSITION TO SUMMARY JUDGMENT REGARDING NEWLY ADDED CLAIMS AND DEFENDANTS. |
| DARRIN YOUNG, ET. AL., DEFENDANTS. | |

A REVIEW OF THE RECORD WILL REVEAL THAT THE COURT, IN AN ORDER DATED OCTOBER 17, 2023, ORDERED: THAT THE PARTIES MAY NOT ... FILE ANY FURTHER MOTIONS, OTHER THAN MOTIONS IN LIMINE, RELATED TO ANY OF CHRISTMANS' CLAIMS AGAINST THE DOC DEFENDANTS WHICH SURVIVED SUMMARY JUDGMENT. THIS WAS REPEATED IN ORDERS DATED JANUARY 5, 2024 AND JANUARY 16, 2024 AND AGAIN SIMILARLY AND SPECIFICALLY IN AN ORDER DATED JANUARY 31, 2024. EXCLUDING THE FIRST EIGHT (8) NUMBERED PARAGRAPHS OF DEFENDANTS' STATEMENT OF MATERIAL FACTS, THAT DEAL WITH "PARTIES AND CLAIMS," THE NEXT 102 PARAGRAPHS (9-110) [redacted] ARE EITHER IRRELEVANT TO THE INSTANT CLAIMS AGAINST THESE DEFENDANTS OR DO VERY LITTLE TO SUPPORT ANY DISPUTE. IT IS A BLATANT ATTEMPT TO REINTRODUCE OLD PREVIOUSLY DECIDED ISSUES AND ISSUES SUBSEQUENT TO THE INSTANT CLAIMS AND DEFENDANTS ACTIONS, OR LACK THERE OF, THAT CANNOT POSSIBLY APPLY TO ANY KNOWLEDGE OF INFORMATION THAT WAS PRIOR TO NEW OR SUBSEQUENT INFORMATION THEY DID NOT POSSES AT THE TIME, (DID NOT EXISIT AT THE TIME OF CLAIMS). THE ATTORNEY CLEARLY STATES THE ISSUES OF SLIGHT PORTIONS AND MISSING FOOD ITEMS BASED ON THE DIETICIANS SET MENU, [redacted] THIS WAS SPECIFICALLY IN REFFRENCE TO CHRISTMANS' TIME IN THE SHU FROM MARCH TO MAY OF 2021 (COMPLAINT 127(B)(Q)-(HH)). THEN THIS ATTORNEY PROCEEDS TO ARGUE ABOUT [redacted] "NUTRITIONAL ANALYSIS" (WHICH IN HIS DECEMBER 6, 2023 [redacted] OPPOSITION TO COMPEL DISCOVERY STATES HAS NEVER EXISTED [SEE ALSO STATEMENT OF FACTS]) AVAILABLE TO DETERMINE

CALORIES (P. 10), DR. GUTNIK AND CELIAC DISEASE FROM 2018 (P. 13), PSYCHIATRIC MEDICATIONS FROM 2017 (P. 17), WEIGHT LOSS FROM 2017-2019 (P. 17-18), WEIGHT GAIN IN 2022 (P. 18), MUSCLE AND STRENGTH LOSS IN 2022 (P. 18-19), WEIGHT LOSS IN 2023 (P. 20), EXERCISE IN 2022 (P. 22), MUSCLE AND STRENGTH LOSS FROM 2017 -2020 (P. 29-30), NECK INJURY/LEFT ARM ATROPHY [redacted] IN 2019 (P. 30-31), STRENGTH GAIN (DISPUTED BY PLAINTIFF) IN 2018 (P. 31), CANCELLED SNACK BASED ON OFFICER FABRICATION IN 2022 (P. 32). IN THE FIRST THIRTY-THREE (33) NUMBERED PAGES, NOT ONE REFERENCE IS MADE TO THE SPECIFICATE ALLEGATIONS OF PLAINTIFFS CLAIMS OF MISSING FOOD, MISSING DIETARY SNACKS, SLIGHT PORTIONS OR LOSS OF WEIGHT AND MUSCLE [redacted] TOTALING 21 POUNDS (16 POUNDS THE WAY IT WAS DOCUMENTED) IN HIS FIRST 14 DAYS BEING HELD IN THE SHU. THIS IS BEFORE THE HUNGER STRIKE AND WITHOUT ACCESS TO CONTRACTED FOOD PROVIDER SUMMIT. NOR DOES HE MENTION ANY ACTUAL KNOWLEDGE THE DEFENDANTS MAY OR MAY NOT HAVE POSSESSED DURING THIS TIME (NOR CAN HE WITHOUT AFFIDAVITS FROM DEFENDANTS). THERE ARE NO DENIALS OF CHRISTIANS' CLAIMS (NOR CAN THERE BE WITHOUT AFFIDAVITS FROM DEFENDANTS). HE DOES MAKE SEVERAL CURIOUS STATEMENTS. ONE BEING ON PAGE 26, "CHRISTIANS... SHOULD HAVE AVAILED HIMSELF OF THE GRIEVANCE PROCEDURE..." PLAINTIFF DID JUST THAT ON SEVERAL OCCASSIONS, FIRST GRIEVANCES WERE DISCARDED, SECOND SET ANSWERED. (PLAINTIFF RESPONSE TO STATEMENT OF FACTS #86, 89; GRIEVANCES #36091, 36094; COMPLAINT #127(B)(Q)-(HH)). IT'S REPEATEDLY SUGGESTED THAT THE DEFENDANTS CONTACTED SUMMIT, BUT OTHER THAN ONE OCCASSION BY PRIOR DEFENDANT DAREK EKEREN, [redacted] IN 2020, NOTHING IS IN RECORD BY WAY OF AFFIDAVIT OR EMAILS FROM DEFENDANTS TO SUMMIT STATING THAT THEY WERE CONTACTED ABOUT THE ISSUES PERTAINING TO CHRISTIANS IN THE SHU IN MARCH TO MAY OF 2021. ON PAGE 27 HE SAYS THE SDDOC DEFENDANTS... DID NOT HAVE THE AUTHORITY TO CHANGE CHRISTIANS' MEAL PLAN OR VARY FROM

THE MENUS." BUT THIS EXACTLY WHAT THEY DID THROUGH THEIR OWN ADMITTALS OF POSSESSION OF MENUS AND REFUSING TO CORRECT THE ISSUES OF INCOMPLETE TRAYS AND MISSING DIETARY SNACKS. AND AGAIN NOTHING CHRISTIANS CLAIMS IS DENIED OR REFUTED BY THE EVIDENCE IN RECORD. CHRISTIANS HAS REPEATEDLY ASKED FOR EMAILS OR DOCUMENTATION OF COMMUNICATION WITH SUMMIT BUT DEFENDANTS HAVE REFUSED, IGNORED, DISPUTED OR OTHERWISE FAILED TO RESPOND TO DISCOVERY REQUESTS EVEN WHEN COMPELLED BY THE COURT. ADDITIONALLY, THE FILING IN WHOLE BY THE ATTORNEY IS FULL OF MISSING RELEVANT INFORMATION, MISSING EXHIBITS TO PLAINTIFF, FULL OF REFERENCES TO DOCUMENTS PREVIOUSLY ARGUED NOT TO EXIST AND NOT SUBSEQUENTLY PROVIDED TO PLAINTIFF. PLAINTIFF PROVIDES SOME MISSING DOCUMENTS AS ACCESS HAS PROVIDED BUT IS NOT ALL INCLUSIVE. ADDITIONALLY THE DOCUMENTS PROVIDED ARE FULL OF DECEIT, OUT RIGHT FALSIFICATIONS, PROBABLE PERJURY, AND MISLEADING INFORMATION WITHOUT USING COMPLETE FACTS AND "PAINTING A COMPLETE PICTURE," BY THIS ATTORNEY AND THE AFFIDAVITS HE PROVIDED. THAT SAID, IT'S HARD TO IMAGINE HOW ANY CASE LAW CITED IS GOING TO APPLY SINCE THE ACTUAL COMPLAINT FACTS AND ALLEGATIONS ARE NOT ADDRESSED.

PLAINTIFF RESPECTFULLY ASSERTS THAT, BASED ON THE INFORMATION THAT WAS AVAILABLE TO THEM AT THE TIME IN QUESTION, NO REASONABLE PERSON COULD HAVE BELIEVED THAT THERE WAS NOT A PROBLEM WHICH NEEDED FIXING. THERE IS NO EVIDENCE STATING OTHERWISE. AS WILL ALSO BE SHOWN BELOW, DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY REGARDLESS OF THE TOTAL CALORIES CLAIMED TO BE PROVIDED IN THE SET MENU (WHICH IS DISPUTED) DUE TO THE FACT DEFENDANTS REFUSED TO PROVIDE MEALS THAT WERE COMPLETE AS BASED ON THE MENU

IN THERE POSSESSION. THEY ALSO REFUSED TO DELIVER MEDICALLY ORDERED DIETARY SNACKS (ADDITIONAL 30 GRAMS PROTEIN). BOTH OF WHICH IS UNDISPUTED IN THE RECORD BY THOSE WHO CAN PERSONALLY ATEST.

QUALIFIED IMMUNITY

A REVIEW OF THE RECORD HEREIN WILL REFLECT THAT THE FACTS KNOWN TO DEFENDANTS AT THE TIME DO NOT APPEAR TO BE IN DISPUTE. THIS INCLUDES POSSESSION OF ESTABLISHED MENUS, FOOD DELIVERED TO CHRISTIANS, WHICH WAS RETRIEVED BY OFFICERS FROM THE KITCHEN WAS MISSING SET MENU ITEMS, DIETARY SNACKS WHICH WERE MEDICALLY ORDERED WERE NOT DELIVERED, CHRISTIANS WAS ON LOCKDOWN IN THE SHU WITH NO ACCESS TO KITCHEN STAFF TO SHOW MISSING FOOD, DEFENDANTS NEVER CONTACTED KITCHEN STAFF (IN FACT REFUSED), PER WARDEN YOUNG, "IF ANY TRAY, SNACK, OR SACK EVER HAS AN ISSUE AND IT IS FOUND WARRANTED BY A KITCHEN SUPERVISOR THEN STAFF IS ALWAYS HAPPY TO IMMEDIATELY FIX THE ISSUE" (ADMINISTRATIVE REMEDY RESPONSES 36091, 36094), DEFENDANTS WERE AWARE OF CHRISTIANS WEIGHT LOSS BY PHYSICALLY WITNESSING A LOSS OF 16-21 POUNDS IN 14 DAYS, HEALTH SERVICES DOCUMENTATION AND VERBAL COMPLAINTS OF WEIGHT LOSS BY CHRISTIANS. ALL OF WHICH DIRECTLY RELATIVE OF THE COMPLAINT ISSUES.

WEIGHT LOSS

ON PAGES 6 AND 7 IT'S CITED ABOUT "DISSATISFACTION WITH VARIETY, PORTION SIZE OR SAVOR" WHICH ARE NOT PLAINTIFF'S COMPLAINTS TO THE ISSUE AT HAND. ALTHOUGH PORTIONS WERE DISPUTED IT IS IN DIRECT RELATION TO THE SET

MENU STANDARDS. ALSO STATED HERE "MUST ESTABLISH HE LOST WEIGHT OR SUFFERED ADVERSE PHYSICAL EFFECTS, OR WAS DENIED NUTRITIONALLY OR CALORICALLY ADEQUATE DIET." THAT IS ALL WELL ESTABLISHED BY THE RECORD, PLAINTIFF LOST 16-21 POUNDS IN 14 DAYS BEFORE HE BEGAN HIS HUNGAR STRIKE (SEE SUPPLIED MEDICAL WEIGHTS DATED 2021-03-20 AND 2021-04-03 AND COMPLAINT). IF SET MENU FOR THOSE DATES PROVIDED 2700 CALORIES PER DAY FOR AN ADULT REFERENCED MALE OF 5'10" AND 154 POUNDS (CALORIES DISPUTED IN FIRST SUMMARY JUDGMENT) THEN IT IS ONLY REASONABLE TO DETERMINE THAT WHEN MULTIPLE FOODS ARE MISSING FROM TRAYS THROUGHOUT A DAY (I.E. MEAT, PROTEIN SOURCE, BREADS, VEGETABLES, MILK, FRUITS, ETC.) AND ADDITIONAL SNACKS ARE MISSING AS WELL, THEN THE SET STANDARD IS NOT BEING MET AND THE DIET IS NUTRITIONALLY OR CALORICALLY INADEQUATE. (SEE WAKEEN REPORTS, NOTE NONE OCCURRED IN 2021) ONE DOES NOT NEED SPECIALIZED TRAINING TO DEDUCE THIS AS IT IS FOR THE LAY PERSON.

CHRISTMANS PLAINLY DEMONSTRATES THAT THE 1.) NUTRITION HE RECEIVED WAS INADEQUATE AND (AS OPPOSED TO "OR" WHICH IS QUOTED) THAT HE SUFFERED WEIGHT LOSS OR OTHER ADVERSE PHYSICAL EFFECTS AS A RESULT OF HIS DIET; AND 2.) THE DOC DEFENDANTS (BY THEIR OWN ADMITTALS, FAILURES TO DENY/DISPUTE EXHIBITS AND BY PLAINTIFFS EVIDENCE AND SWORN STATEMENTS) WERE AWARE OF AND DELIBERATELY CHOOSE NOT TO PROVIDE THE SET NUTRITION.

ALTHOUGH THE PREVIOUS CLAIMS OF 2700 CALORIES BEING PROVIDED TO INMATES FOUND IN THE PRIOR SUMMARY JUDGMENT AND 2017 AND 2019 EVALUATIONS ARE HIGHLY IN DISPUTE, THAT IN ITSELF IS NOT THE SPECIFIC ISSUE HERE (ALTHOUGH THESE DISPUTED ISSUES OF FACT POTENTIALLY MAKES THE CLAIMS FAR WORSE FOR

DEFENDANTS). THE ISSUE IS, AS DEFENDANTS STATE ON PAGE 8, "WHAT AN INMATE COULD REASONABLY EXPECT TO RECEIVE AS A FOOD TRAY DURING THIS TIME" (THE SET MENU) WHICH UNDISPUTEDLY WAS NOT THE CASE. THE COMPLAINT THAT DID REACH SUMMIT, AS THEY STATE ON PAGE 8, WERE FROM 2020, NONE WERE PASSED ALONG FROM MARCH 20, 2021 TO MAY, 2021 DURING CHRISTMANS TIME IN THE SHU. THAT STATEMENT AS IT APPLIES INSTANTLY IS MISLEADING BY THE AUTHOR OF THAT DOCUMENT.

THE CONTRACT STATES MANY THINGS INCLUDING A CERTIFIED INMATE TRAINING PROGRAM AND ADHERENCE TO DIETARY GUIDELINES FOR AMERICANS AND USDA MY PLATE GUIDE. IT IS UNDISPUTED NO TRAINING PROGRAM EVER EXISTED (COMPLAINT #109; IRR/AR #30426 AND 30509). THE DIETARY GUIDELINES COMPLIANCE IS DISPUTED BUT CHRISTMANS PROVIDED SUBSTANTIAL EVIDENCE WITH THE ACTUAL PAGE 96 (AND MORE) OF THAT DOCUMENT AS COMPARED TO SUBMITTED APPROVED MENUS, SHOWING NO DISPUTE THAT IT IS IN FACT NOT BEING FOLLOWED. CONTRACT ALSO STATES INMATES ARE TO BE PROVIDED COMMENT/SURVEY CARDS EVERY FOUR (4) WEEK MENU CYCLE. THIS IS NOT DONE. (SEE COMPLAINT #99 AND 107; IRR/AR #30009). AS THE ATTORNEY SAYS ON PAGE 8 "CONTRACTOR SHALL ADDRESS ALL COMPLAINTS" AND "WORK WITHIN [THE EXISTING] PROCESS TO RESOLVE COMPLAINTS AND/OR QUALITY ISSUES." THE ONLY PROVIDED INFORMATION, WHICH WAS NOT PROVIDED BY THE DOC, SHOWS EMAILS BETWEEN EKEREN AND A SUMMIT OFFICIAL IN 2019. (THIS CORRECTS CHRISTMANS PREVIOUS ERROR STATING THE EMAIL WAS IN 2020) CHRISTMANS V. YOUNG, 2023 WL 2687260 AT *9. THERE IS NOTHING IN RECORD SHOWING CHRISTMANS COMPLAINTS OF MISSING FOOD/DIETARY SNACKS AND SLIGHT PORTIONS IN THE SHU IN 2021 REACHED SUMMIT OR THAT A REPLY WAS GIVEN. (PLAINTIFF HAS REQUESTED SUCH IN DISCOVERY REQUEST #4).

DEFENDANTS SEEM TO PLACE ALL BLAME ON SUMMIT BUT NEVER INFORMED THEM OF ANY COMPLAINTS, KITES, GRIEVANCES OF CHRISTIANS IN MARCH THROUGH MAY, 2021. [redacted] THEY ALSO DID NOT ENFORCE MOST ASPECTS OF THE CONTRACT AS TO INMATE NUTRITION OR THEIR COMPLAINTS. AS THIS COURT STATED IN CHRISTIANS V. YOUNG, 2022 WL 4535550 AT *19, "THE STATE OF SOUTH DAKOTA AND ITS PRISON OFFICIALS SHOULD TAKE NO COMFORT IN THE FACT THAT THEY HAVE CONTRACTED WITH SUMMIT FOR AN ADEQUATELY NUTRITIOUS DIET. IT IS STILL THE FUNCTION OF THE PUBLIC ENTITY THAT HAS CUSTODY OF THE PRISONERS TO ULTIMATELY SEE THAT THEIR NUTRITIONAL NEEDS ARE MET." IT GOES ON TO SAY "THE GIDDINGS COURT ALSO FOUND THAT "[C]ONTRACTING OUT PRISON [FOOD SERVICE] DOES NOT RELIEVE THE STATE OF ITS CONSTITUTIONAL DUTY TO PROVIDE [AN ADEQUATE DIET] TO THOSE IN ITS CUSTODY, AND DOES NOT DEPRIVE THE STATE'S PRISONERS OF THE MEANS TO VINDICATE THEIR EIGHTH AMENDMENT RIGHTS." ALSO "THE DOC DEFENDANTS STILL HAVE A CONSTITUTIONAL DUTY TO PROVIDE AN ADEQUATE DIET TO INMATES, IF PASSING GRIEVANCES ALONG TO SUMMIT [DURING MARCH TO MAY 2021] THAT CHRISTIANS CLAIMS HE HAS NOT BEEN RECEIVING AN ADEQUATE DIET DID NOT ADDRESS THE ALLEGED FOOD ISSUES, THEN THE DOC DEFENDANTS MAY HAVE BEEN DELIBERATELY INDIFFERENT REGARDING THAT DUTY. SEE GRAY, 826 F.3D AT 1009." HERE IN THIS INSTANT CLAIM AGAINST THE NEWLY ADDED DEFENDANTS, NO CONTACT WAS MADE, NOR IS THERE ANY SUBSTANTIAL EVIDENCE IN RECORD TO SHOW OTHERWISE AND ITS NOT DENIED. (NO EMAILS, MEMOS, NOTES TO SUMMIT STAFF AT THIS TIME)

IN REFERENCE TO PAGE 9 OF DEFENDANTS BRIEF, STATING THAT SUMMIT [redacted] RESPONSES TO AN INQUIRY WAS THAT "MEALS ARE APPROVED BY A LICENSED DIETICIAN AND MEET

NUTRITIONAL REQUIREMENTS." FIRST, THE ISSUES ARE <u>WITH</u> THE FOOD PROVIDER, IT MAKES NO REASONABLE SENSE NOT TO PRESENT CHRISTMANS'/INMATE FOOD ISSUES TO THE AVAILABLE THIRD PARTY CONTRACTED (BARBARA WAKEEN IN THIS CASE). SECONDLY, THIS RESPONSE BY SUMMIT, CLAIMED BY DEFENDANTS IS IRRELEVANT TO THIS INSTANT ISSUE AS IT WAS NOT A REPLY TO INFORMATION ABOUT CHRISTMANS' SHU EXPERIENCE IN 2021. IT'S UNDISPUTED SUMMIT WAS NOT INFORMED OF THIS. ADDITIONALLY, IT WAS NOT IN REFERENCE TO THE SET MENUS NOT BEING ADHERED TO OR WHAT STEPS SHOULD BE TAKEN TO ENSURE COMPLETE MEALS ARE BEING PROVIDED AS WELL AS DIETARY SNACKS, TO NOTE, IMPORTANTLY, THERE IS NO MENTION OF PORTION CONTROL METHODS AS WELL BY DEFENDANTS TO ENSURE PROPER MENU PORTIONS. STILL ON PAGE 9, THE "PRIVATE, INDEPENDENT CONSULTANT" WAS NOT ASKED TO OPINE ON THE MATTER OF MISSING FOOD AND INCOMPLETE TRAYS AND HOW THAT WOULD AFFECT NUTRITIONAL ADEQUACY. ALSO TO THAT POINT, ALL HER HARD DATA IS BASED ON A NUTRITIONAL ANALYSIS THAT WAS PROVIDED BY SUMMIT. <u>AND</u> THE SUPPOSED NUTRITIONAL ANALYSIS (OF ANY YEAR, BUT SPECIFICALLY THE 2017 REPORT WHICH IS THE ONLY ONE THAT COULD REMOTELY APPLY TO THE INSTANT CLAIMS) IS SAID BY SUMMIT TO HAVE "NEVER EXISTED" (SUMMIT'S RESPONSE TO DISCOVERY) AND CONFIRMED BY THE ATTORNEY ON RECORD IN HIS OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DISCOVERY DATED DECEMBER 6, 2023 STATING, "AS FOR ANY 'NUTRIENT ANALYSIS REPORTS', 'NOT IN POSSESSION OF ANY MATERIALS <u>RELATING</u> TO A 'NUTRIENT ANALYSIS' AND THEREFORE, NO RESPONSIVE DOCUMENT EXIST[ED]." A PARTY CANNOT PRODUCE WHAT IT DOES NOT HAVE." TWO POINTS ON THIS. ONE, THIS ATTORNEY REFERENCES WAKEEN'S REPORTS AND FINDINGS ON THIS MULTIPLE TIMES ALL WHILE DENYING THE INFORMATION SHE USED AS A BASIS EVER EXISTED. SECONDLY, ALL MENTIONS OF NUTRIENT ANALYSIS' IN

WAKEEN'S 2017 REPORT AND HER OCTOBER 17-19, 2023 REPORT, AS WELL AS JENNIFER JACKSON'S APPARANT SEPTEMBER 2023 REPORT WERE BEFORE THE ATTORNEYS DENIAL OF SUCH DOCUMENTS EXISTING OR WAS IN POSSESSION OF, (DECEMBER 6, 2023) DEFENDANTS READILY ADMIT THEY HAD THE DIETARY INFORMATION FROM TWO DIETICIANS AND PROCEEDED NOT TO PROVIDE THE APPROVED MEALS TO PLAINTIFF IN 2021.

AGAIN, THE REST OF CLAIMS ON PAGE 9 ARE IRRELEVANT TO CHRISTIANS CLAIMS AGAINST DEFENDANTS AND WEIGHT LOSS OF 16-21 POUNDS FROM MARCH 20, 2021 TO APRIL 3, 2021 AND HIS FULL DURATION IN THE SHU THROUGH MAY 2021.

THE FIRST PARAGRAPH OF PAGE 10 AGAIN REFERS TO WAKEEN'S 2017 REPORT AND THE "NUTRITIONAL ANALYSIS" REVIEW WHICH WAS PREPARED AND PROVIDED BY CBM/SUMMIT. PLAINTIFF RENEWS HIS ABOVE ARGUMENTS ABOUT THE NON-EXISTANCE OF THIS ANALYSIS AND POINTS OUT WAKEEN'S CLAIM OF CALORIES IS BOTH BASED ON THIS MISSING DOCUMENT AND INFORMATION PROVIDED TO HER BY THE FOOD CONTRACT (NOT AN INDEPENDANTLY PRODUCED NUTRITIONAL ANALYSIS).

THE ADULT REFERENCED MALE, WHO WOULD NEED 3000 CALORIES A DAY FOR "ACTIVE" DAILY ROUTINE IS 5'10" TALL AND 154 POUNDS. (DIETARY GUIDELINES PG. 96 [AND MORE]). PLAINTIFF REASONABLY BELIEVES HE WEIGHED 238 POUNDS ON MARCH 20, 2021 (DOCUMENTED 233 POUNDS BY HEALTH SERVICES; SEE PROVIDED WEIGHTS CHART FROM HEALTH SERVICES) AND IS DOCUMENTED 6'2" TALL, WITH "GOOD MUSCLE TONE." THEREFORE CHRISTIANS HAS 1.5 TIMES MORE BODY WEIGHT THAN THE REFERENCED MALE, THUS 1.5 TIMES 2700 OR 3000 CALORIES NEEDED BY THE REFERENCED MALE WOULD BE 4050 OR 4500 CALORIES NEEDED PER DAY (RESPECTIVELY) FOR HIM TO MAINTAIN BODY WEIGHT. THESE SIMPLE LAY DEDUCTIONS ALSO LINE UP WITH THE SCIENTIFIC CALCULATIONS REFERRED TO IN #22 AND #35 OF PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF MATERIAL FACTS, (TO NOTE DIFFERENT

WEIGHTS ARE USED [255# CURRENT WEIGHT V. 233# WEIGHT (USED HERE) ON MARCH 20, 2021] WHICH HELPS EXPLAIN SLIGHT DIFFERENCES).

TO THE LAST PARAGRAPH WHICH BRINGS US TO PAGE 11, WAKEEN USED A NON EXISTING NUTRIMONAL ANALYSIS THAT WAS PROVIDED TO HER BY CBM/SUMMIT, WHICH WAS NOT INDEPENDANTLY PRODUCED ON FOODS ACTUALLY CONSUMED BY INMATES, BY WAKEEN HERSELF. TO NOTE, THIS IS ALL IRRELEVANT TO FOOD SUPPLIED TO CHRISTIANS (OR LACK THERE OF) DURING HIS SHU EXPERIENCE IN 2021, WHERE IT IS UNDISPUTED AND ADMITTED THAT DEFENDANTS REFUSED TO FIX THE MENU INCOMPLETENESS. NOR DOES ANY DEFENDANT DENY SUCH CLAIMS MADE IN THE SECOND AMENDED COMPLAINT.

AS TO MS. WAKEEN NOT CONDUCTING ANY EVALUATIONS DUE TO COVID IN 2020-2022, CHRISTIANS FINDS THIS AN EXTREMELY WEEK ARGUMENT FOR NOT CONDUCTING OFF SITE EVALUATIONS OF APPROVED MENUS FOR THOSE YEARS, IF CHRISTIANS CAN PRODUCE FOOD JOURNALS WITH ACCURATE CALORIE, PROTEIN, FAT, CARBOHYDRATE (AND OTHER NUTRIENTS) BREAKDOWN, INCLUDING MACRO NUTRIENT PERCENTAGES OF OVERALL CALORIES PER DAY, CERTAINLY MS. WAKEEN OR ANY OTHER TRAINED NUTRITIONIST/DIETICIAN WITH MANY AVAILABLE TOOLS (I.E. COMPUTERS, SOFTWARE, REFERENCE BOOKS, MANUALS, AND MUCH MORE) COULD HAVE DONE THE SAME. (FOOTNOTE 2 - PG. 11) (SEE ALSO FOOD JOURNALS PREVIOUSLY SUBMITTED BY CHRISTIANS).

TO NOTE JUST UP TO PAGE 12 HAS BEEN EXTREMELY REPETITIVE IN ITSELF, OF OLD ISSUES AND THE DOCUMENT COULD HAVE BEEN SIGNIFICANTLY SHORTENED.

WHAT IS NOT MENTIONED ABOUT THE 2019 REPORT IS THE MISSING FOOD PORTIONS (UNTIL INQUIRED ABOUT BY THE DIRECTORS OF OPERATIONS) AND THE WRONG PORTIONS BEING SERVED (AGAIN UNTIL INQUIRED ABOUT BY THE OFFICIALS). IT ALSO REFERS TO

THE LACK OF SUPERVISION OF INMATE WORKERS SERVING AND PREPARING FOODS.

CHRISMANS MAINTAINS HIS UNDISPUTED CLAIMS THAT DEFENDANTS FLAT OUT REFUSED TO PROVIDE, AT MINIMUM, THE FOODS AS REQUIRED BY THE SET APPROVED MENU, (DISPUTE OF TOTAL CALORIES PROVIDED BY THAT MENU ASIDE) THAT CANNOT BE CONSTRUED AS ERROR IN JUDGMENT OR A REASONABLE DECISION BY ANYONE, YET ALONE DEFENDANTS WHO, AS WARDEN YOUNG EXPLAINED IN A.R. RESPONSES #36091 AND 36094 WOULD BE "ALWAYS HAPPY TO IMMEDIATELY FIX THE ISSUE." (IN REFERENCE TO MISSING FOOD AND MEDICAL SNACKS IN THE SHU)

APPARENTLY, THIS ATTORNEY IS STATING, HIS CLIENTS ACTIONS (OR INACTIONS) OF REFUSING TO CORRECT DOCUMENTED MEALS, OF WHICH THEY WERE IN POSSESSION OF THE MENUS AND REQUIREMENTS, THAT WERE REPEATEDLY OVER MULTIPLE MEALS A DAY, MISSING ONE OR MULTIPLE ITEMS OF FOOD IN EACH MEAL PROVIDED, OVER THE COURSE OF NEARLY TWO MONTHS, IS SOME SORT OF "ERROR", AND "REASONABLE" TO BOOT. HE ALSO SEEMS TO ARGUE THIS BEHAVIOR OF DEFENDANTS FOR NEARLY TWO MONTHS OF REFUSING TO FIX DAILY, REPEATED INCOMPLETE MEALS OR DELIVER REQUIRED MEDICAL SNACKS IS A "REASONABLE BUT MISTAKEN JUDGMENT."

AS HE STATES AT THE END OF PAGE 13, "MUST EXAMINE INFORMATION POSSESSED BY OFFICIALS." THE LAW IS ESTABLISHED. THESE OFFICIALS HAD THE MENU APPROVED BY A LICENSED DIETICIAN AND FAILED TO PROVIDE WHAT WAS CLEARLY SHOWN, REPEATEDLY "NEARLY EVERY MEAL" FOR WEEKS. CHRISMANS CONCERNS WERE NEVER RELAYED "TO THE PROPER AUTHORITES" AS TO THE ISSUES FROM MARCH 20, 2021 TO MAY 2021 AND THERE IS NOTHING IN THE RECORD TO SUGGEST OTHERWISE. THEIR STATEMENT ON PAGE 14 IS FROMS YEARS PRIOR, AND MISLEADING. AND AGAIN ALOT OF REPETITION ON PAGE

14, MOST OF WHICH IS IRRELEVANT TO IMMEDIATE CLAIMS.
THEY ADMIT IN THE START OF PAGE 15 THAT THEY RELIED ON THE OPINIONS OF TWO DIETICIANS, YET WHEN IT COMES TO PROVIDING WHAT IS ESTABLISHED THEY OUTRIGHT REFUSED AND INSTEAD PUT THE BLAME ELSEWHERE.

THE REST OF PAGE 15 RENEWS OLD CLAIMS THAT HAVE PREVIOUSLY BEEN ARGUED AND DECIDED ON BY THIS COURT. AS IN PLAINTIFF'S OPENING ON PAGE 1 (ONE) OF THIS DOCUMENT, DEFENDANTS WERE INSTRUCTED THREE SEPERATE TIMES IN JANUARY OF 2024 NOT TO RENEW THE CLAIMS IN THE FIRST SUMMARY JUDGMENT, THESE REFERENCES TO DR. GUTNIK'S ORIGINAL OPINION AND SUBSEQUENT CHANGED OPINION ON CHRISTIANS' CELIAC DIAGNOSIS, WEIGHT LOSS AND WEIGHT GAIN IN 2018 ARE IRRELEVANT TO THE NEWLY ADDED DEFENDANTS AND NOT LIKELY THEY WOULD HAVE CONSIDERED THIS IN THEIR DECISIONS TO DELIBERATELY REFUSE TO ADDRESS CHRISTIANS INCOMPLETE MEALS IN 2021.

ON TO PAGE 16'S FIRST PARAGRAPH, THE ISSUE OF BMI HAS ALREADY BEEN DECIDED AND CHRISTIANS' BMI AT 233 POUNDS AND 6'2" TALL LIKELY HAD LITTLE TO DO WITH THEIR DECISION (DEFENDANTS NEWLY ADDED) TO DENY CHRISTIANS COMPLETE MEALS AND MEDICALLY ORDERED SNACKS.

EVEN IF CHRISTIANS' BMI IN 2021 WAS CONSIDERED OVERWEIGHT, THIS IS AN INACCURATE DEPICTION OF CHRISTIANS BODY COMPOSITION AS HE WAS DEEMED REPEATEDLY TO HAVE "GOOD MUSCLE TONE" BY MULTIPLE PROVIDERS AND "EXCELLENT MUSCLE TONE" ON AT LEAST ON OCCASSION, IN ADDITION TO "BMI DOES NOT AS A MATTER OF LAW FORECLOSE AN INADEQUATE NUTRITION CLAIM" IN INGRASSIA V. SCHAFER, 825 F.3D 891, 898 (8TH CIR. 2016), CHRISTIANS POINTS TO

UNITED STATES V. SANCHEZ, 2020 WL 2787654 AT *5, SAYING "ALTHOUGH BMI CAN BE USED FOR MOST MEN AND WOMEN, IT DOES HAVE SOME LIMITS." (1) "IT MAY OVER-ESTIMATE BODY FAT IN ATHLETES AND OTHERS WHO HAVE A MUSCULAR BUILD." (HTTPS://WWW.NHLBI.NIH.GOV/HEALTH/EDUCATIONAL/LOSE_WT/RISK.HTM) SUCH IS OBVIOUS IN THE CASE HERE WITH THE SUPPORTING RECORD.

ALTHOUGH CHRISTIANS BODY WEIGHT ACCORDING TO BMI'S STATED HE WAS OVERWEIGHT OR OBESE AT DIFFERENT POINTS, CHRISTIANS ASSERTS BMI IS USED (WITH ITS CLASSIFICATIONS) TO SHOW BODY FATNESS. THIS IS NOT THE CASE WITH CHRISTIANS AS HE HAS ALWAYS BEEN SAID TO HAVE "GOOD" OR "EXCELLENT" MUSCLE TONE, SHOWING LOW BODY FAT.

ON PAGE 17, THE ATTORNEY MAKES REFERENCE TO CELIAC DISEASE AND PSYCHIATRIC MEDICATIONS BOTH OF WHICH ARE EITHER PREVIOUSLY DISPUTED AND RULED ON OR IRRELEVANT.

THE SUGGESTION BY DR. HAYNES THAT CHRISTIANS WOULD LOSE WEIGHT INDEFINATELY IS LUDACRIS FOR A DOCTOR WITH HIS CREDINTIALS TO MAKE IN AN ATTEMPT TO MISLEAD THIS COURT. IT SHOULD BE OBVIOUS TO MOST PERSONS THAT AS ONE LOSES WEIGHT HIS CALORIC REQUIREMENT TO MAINTAIN WEIGHT WOULD ALSO BE REDUCED. THUS, THE 233 POUND MAN WHO LOSES NO WEIGHT AT A SET AMOUNT OF REQUIRED CALORIES BASED ON ACTIVITY LEVEL COULD NOT BE COMPARED TO A 286 POUND MAN WITH THE SAME ACTIVITY LEVEL AND SIMILAR BODY COMPOSITION WHO CONSUMED THE SAME FOODS/CALORIES OF THE 233 POUND MAN. THIS IS DUE TO THE FACT THAT THE 286 POUND MAN WOULD LOSE WEIGHT, SIGNIFICANTLY UNTIL HE WEIGHED 233 POUNDS, AT WHICH POINT HE WOULD STOP

LOSING WEIGHT. AS IS THE CASE HERE (OR ANY OTHER) WHERE CHRISTIANS CALORIE REQUIREMENT BASED ON HIS WEIGHT AND ACTIVITY LEVEL "CAUGHT UP" TO HIS ENERGY EXPENDITURE, AT WHICH POINT HIS WEIGHT 'PLATEAUED'.

MUCH OF PAGE 18 RENEWS OLD ARGUMENTS OR ARGUES INFORMATION SUBSEQUENT TO THE CLAIMS OF SHU FOOD AND WEIGHT LOSS ISSUES EXPERIENCED BY CHRISTIANS IN MARCH TO MAY OF 2021 AND ARE THUS BY ~~THE~~ THEIR VERY NATURE, IRRELAVANT OR DO VERY LITTLE TO SUPPORT DEFENDANTS DECISIONS TO DENY CHRISTIANS COMPLETE MEALS AND SNACKS AS THE SET MENU REQUIRED. AS BRIEFLY AS POSSIBLE PLAINTIFF WILL STILL ADDRESS THESE DECIDED OLD ISSUE AGAIN OR IRRELEVANT ISSUES SUBSEQUENT TO 2021 THAT CONTINUE FOR FIVE PAGES (18-23).

FIRST, ANY FACT OF WEIGHT GAIN IN THE PRIOR OR SUBSEQUENT YEARS CAN BE CONTRIBUTED TO CHRISTIANS WEIGHT TRAINING ALONG WITH ADDITIONAL COMMISSARY PURCHASES AND FOODS SUPPLIED BY FRIENDS/FAMILY, AS SHOWN IN RECORDS. ALSO, TO NOTE DURING SPECIFIC TIMES, AS INDICATED IN THE COMMISSARY RECORDS, CHRISTIANS PURCHASED UP TO 16 "HEALTH SHAKES" AND 4 BAGS OF POWDERED MILK PER WEEK TO SUPPLEMENT HIS MISSING PROTEIN AND CALORIES.

CHRISTIANS DENIES DOING CARDIOVASCULAR EXERCISE AT THE TIME SUGGESTED HERE IN 2022. (DECLARATIONS CHRISTIANS, HARRUFF, CLAY, HOADLEY) CHRISTIANS HAS CONTINUED TO WEIGHT/STRENGTH TRAIN FOR YEARS, THE LACK OF CARDIO EXERSIZE WAS DUE TO ARTHRITIS IN HIS FEET (TOES) AND A KNEE INJURY (TORN ACL) IN 2020/2021. PA. HANVEY WHO MADE THE STATEMENT ABOUT RE-INSTITUTING A CARDIO PROGRAM TO PROMOTE WEIGHT LOSS KNEW OF CHRISTIANS ARTHRITIS AND KNEE INJURY AND HOW IT AFFECTED HIS ABILITY TO DO CARDIO. BY THE MEDICAL

RECORDS, CHRISTMANS STATEMENTS TO HIM, AND AS IN THE CASE OF THE TORN ACL, HANVEY HIM SELF ORDERED THE MRI AND INTERPRETED TO CHRISTMANS ( EXHIBIT 23 FROM PRIOR SUMMARY JUDGEMENT [ENCLOSED] AND AVERA MCKENNAN HOSPITAL REPORTS DATED 10/27/21.) THERE ARE MORE RECORDS PERTAINING, CHRISTMANS REFERENCES ONLY THOSE HE HAS ACCESS TO.

CHRISTMANS SNACK WAS NOT EXPIRED IN JULY 2020. IT WAS REPORTED INCORRECTLY BY A NURSE IN HER NOTES TO A PROVIDER FOR REVIEW. THERE IS NO RECORD OF CANCELLATION ON THAT DATE (A RECORD FROM HEALTH SERVICES DATED 7/2020) SHOWING THE CANCELLATIONS BEYOND THIS NURSES ASSERTION ON 11-30-2022. (SEE ORDER DATED 11-30-2022 10:37 AM PROVIDED BY PLAINTIFF) IT WAS DELETED ON 7-20-2022 BY ALYSSA WELBIG "AW" P.A. AS SEEN IT THE ORDER DATED 7-20-2022 6:55 PM PROVIDED BY THE PLAINTIFF. THIS WAS CANCELLED BY P.A. WELBIG SPECIFICALLY AS SHE STATES IN THE "COMMENTS" AT THE BOTTOM OF THE PAGE "SINCE HE HAS BEEN GIVING IT AWAY TO OTHER INMATES." AND AN "INFORMATIONAL" THAT DOES NOT EXIST. (SEE KITE FROM STAFF ATTORNEY DATED NOV. 23, 2023) SWYGERT, A C.O., ASKED FOR THE SNACK TO BE REMOVED. THERE IS NOTHING IN THE RECORD SUGGESTING P.A. WELBIG EXAMINED OR TALKED TO CHRISTMANS REGARDING THE ALLEGATIONS IN THIS CASE OR CONSULTED DR. GUTNIKS ORDERS. IT WAS SOLELY BASED ON THE REQUEST OF A CORRECTIONS OFFICER. ADDITIONALLY CHRISTMANS SNACK WAS CHANGED FROM "RANCID" TURKEY TO PEANUT BUTTER BY SUMMITS DIETICIAN JESSICA, DURING A TELECONFERENCE ON JUNE 2, 2021 (NURSE APRIL SHAEFER PRESENT AND THE NURSE WHO PUT IN FOR A DIETICIAN CONSULT) (SEE HEALTH SERVICES DATED ENCOUNTERS 5-17-2021 AND 6-02-2021)

IT WAS "LATER" DETERMINED BMI WAS NOT UNDERWEIGHT SO EXTRA PROTEIN WAS NOT REINSTATED. AGAIN THIS IS WITH

PHYSICAL EXAM OF CHRISTIANS, NO CONSULT WITH DR. GUTNIK, AND NO REVIEW OF THAT RECORD, IT WAS BASED SOLELY ON BMI CLASSIFICATION AS FOR CHRISTIANS' REQUEST TO REINSTATE. TO NOTE CHRISTIANS ADAMANTLY DENIES EVER GIVING A SNACK AWAY, YET ALONE ALMOST DAY. THERE IS NO CAMERA EVIDENCE SHOWING SUCH, JUST AN ACCUSATIONS BY A CORRECTIONAL OFFICER.

DR. HAYNES CITES A MARKER THAT COULD INDICATE OR SUGGEST PROTEIN MALNUTRITION; THIS IS JUST ONE POSSIBLE MARKER TO SHOW PROTEIN DEFICIENCY. ANOTHER WOULD BE RECORDING OF MUSCLE LOSS THROUGH PHYSICAL EXAM AND/OR BODY COMPOSITION. THIS WAS UNDISPUTEDLY NOT DONE AND WOULD BE SIGNIFICANT.

DR. HAYNES ATTEMPTS TO MISLEAD THE COURT BY NOT PROVIDING A COMPLETE PICTURE TO CHRISTIANS CLAIM HE LOST 35 POUNDS IN ABOUT 11 WEEKS. CHRISTIANS WEIGHED 286 PRIOR TO HIS WEIGHT CHECK ON MARCH 29, 2023 WHERE IT'S RECORDED AT 258 POUNDS. THIS ALONE IS NEARLY 30 POUNDS (ASSUMING CHRISTIANS WEIGHT REMAINED CONSTANT AFTER OCTOBER 5, 2022) AS CHRISTIANS WAS GAINING WEIGHT IN 2022, IT'S NOT UNREASONABLE TO THINK THIS CONTINUED AS CLAIMED TO OVER 300 POUNDS IN JANUARY 2023 WHEN WEIGHED IN LAUNDRY. (CHRISTIANS DECLARATION) 300+ POUNDS IN JANUARY 2023 TO MARCH 21 2023 WHERE IT'S RECORDED CHRISTIANS WEIGHT AT 258 POUNDS IS 11 WEEKS AND 35 POUNDS.

AS FOR THE MENTIONED "TB SCREENING" THE RECORD SHOWS PLAINTIFF HAD LOST 40 POUNDS PRIOR BUT HIS WEIGHT HAD AGAIN "PLATEAUED" AT 255 POUNDS. (SEE #82 OF PLAINTIFF'S RESPONSE TO STATEMENT OF MATERIAL FACTS FOR ADDITIONAL FACTS/ARGUEMENT).

PAGE 22 OF DEFENDANTS DOCUMENT IS MUCH REPEATED FROM PRIOR PAGES AND CHRISTIANS MAINTAINS SAME ARGUEMENTS AS ABOVE AND REFERENCES TO THE RECORD.

TO THE LAST PARAGRAPH OF THIS PAGE, CHRISTIANS MAINTAINS DEFENDANTS KNEW OF THE "SUBSTANTIAL RISK OF SERIOUS HARM" BY HIS STATEMENTS TO THEM INDIVIDUALLY (CHRISTIANS DECLARATION), MEDICAL RECORD OF 16 POUND WEIGHT LOSS FROM MARCH 20, 2021 TO APRIL 3, 2021 AND THE KNOWLEDGE OF AN "ADEQUATE DIET" BEING THAT OF A SET MENU IN THEIR POSSESSION. DEFENDANTS PROVIDED INCOMPLETE MEALS AT THE RISK OF PROVIDING INADEQUATE NUTRITION FOR WEEKS, (MISSING SNACKS AND IMPROPER PORTIONS ASIDE). THROUGH MUCH PROTEST, COMPLAINTS, KITES AND GRIEVANCES THE ISSUES WERE NOT CORRECTED BY THE DEFENDANTS REFUSAL TO DO SO OR CONTACT THE FOOD SERVICE PROVIDER AT THE TIME IN QUESTION. DEFENDANTS WERE THE ONLY SOURCE OF CHRISTIANS ACCESS TO NUTRITION OR ISSUES OF NUTRITION AS HE WAS ISOLATED ON A-FLOOR IN THE SHU WITHOUT ACCESS TO THE FOOD PROVIDER.

DEFENDANTS END THE QUOTE "AND DISREGARDED THAT RISK BY FAILING TO TAKE REASONABLE MEASURE TO ABATE IT". CHRISTIANS ASSERTS THIS REQUIREMENT IS ALSO MET BY THEIR INTENTIONAL REFUSAL TO CORRECT KNOWN ISSUES IS NOT REASONABLE (AND AS NOTED DID NOT MAKE ISSUES KNOWN TO FOOD PROVIDER).

ON PAGE 23 THE ATTORNEY STATES "FACTUAL DISPUTES THAT ARE IRRELEVANT OR UNNECESSARY WILL NOT BE COUNTED." CHRISTIANS MAINTAINS THE VAST MAJORITY OF THE ATTORNEYS STATEMENT OF MATERIAL FACTS AND BRIEF UP TO THIS POINT ARE JUST THIS "IRRELEVANT AND UNNECESSARY."

THE ONLY RELEVANT INFORMATION IS THAT DEFENDANTS CLAIM KNOWLEDGE THAT THE DIETICIANS APPROVED THE MENU FOR INMATES AS ADEQUATE AND THEN PROCEEDED TO "QUITE SUBSTANTIALLY" NOT PROVIDE THAT MENU (INCOMPLETE MEALS) AND BOTH REFUSED TO CORRECT INADEQUACIES OR NOTIFY THOSE WHO WOULD/COULD CORRECT IT. (MISSING SNACKS/SLIGHT PORTIONS ASIDE)

THEY DID NOT PROVIDE THE MINIMUM RECOMMENDED INTAKES AS GIVEN TO THEM BY THEIR DIETICIANS. THESE MATERIAL FACTS ARE WHAT IS AT ISSUE.

CHRISTIANS FOOD JOURNAL, ALTHOUGH ACCURATE AND SIGNIFICANT, HAS LITTLE TO DO WITH HIS ARGUMENT OR CLAIMS. [redacted] THE DEFENDANTS OWN MENU, PROVIDED BY THEIR DIETICIANS WAS NOT BEING ADHERED TO AT ALL AND DEFENDANTS REFUSED TO ADDRESS IT OR CHRISTIANS WEIGHT LOSS DUE TO THAT.

CORRECTIONAL OFFICERS AND STAFF, BOTH NAMED DEFENDANTS AND OTHERS NOT LISTED AS DEFENDANTS MADE COMMENTS TO CHRISTIANS REGARDING THAT HE (CHRISTIANS) LOOKED LIKE HE WAS LOSING WEIGHT AND GETTING SKINNY. THIS WAS [redacted] BETWEEN THE DATES OF MARCH 20, 2021 AND APRIL 3, 2021 [redacted] BEFORE CHRISTIANS BEGAN HIS HUNGER STRIKE AND SUBSEQUENTLY. (CHRISTIANS DECLARATION) ADDITIONALLY CHRISTIANS VERBALLY STATED TO ALL DEFENDANTS HIS WEIGHT LOSS AS MEASURED ON APRIL 3, 2021. MOST IF NOT ALL DEFENDANTS WERE RESPONSIBLE FOR ESCORTING CHRISTIANS TO HEALTH SERVICES.

CHRISTIANS MAINTAINS THE FOOD CONTRACTOR CANNOT ADDRESS CLAIMS THEY ARE UNINFORMED OF. THIS IS ESPECIALLY TRUE OF COMPLAINTS BY INMATES IN THE SHU OR A-FLOOR IN GENERAL WITH NO ACCESS TO THE FOOD CONTRACTOR, AND AS THE RECORD SHOWS, THE CONTRACT IS NOT ENFORCED.

IN RESPONSE TO CLARK'S STATEMENTS ON PAGE 26, CHRISTIANS [redacted] ABSOLUTELY TOOK ADVANTAGE OF THE GRIEVANCE SYSTEM ON DIFFERENT OCCASSIONS WHILE IN THE SHU IN 2021. HIS FIRST THREE GRIEVANCES WERE DISCARDED BY PECHOUS. CHRISTIANS MADE COUNTLESS "INFORMAL" GRIEVANCES VERBALLY TO

ALL DEFENDANTS. CHRISTIANS FILED THREE ADDITIONAL GRIEVANCES AFTER LEARNING THE ORIGINALS WERE DISCARDED UNANSWERED. (IRR'S AND ARS #36090, 36091, 36094) 36091 AND 36094 WERE ANSWERED BY WARDEN YOUNG IN THE ADMINISTRATIVE REMEDY RESPONSE. CHRISTIANS FURTHER ASSERTS HE DOES NOT CONCEDE DEFENDANTS MADE ISSUES KNOWN TO SUMMIT AT THE DATES IN ISSUE. ANY CONTACT WITH SUMMIT WAS MUCH PRIOR TO MARCH TO MAY 2021. ANY "FOOD SERVICE SUPERVISOR BEING CONTACTED" WAS ALSO PRIOR, IF DONE AT ALL. CHRISTIANS DOES NOT ADMIT THE "INFORMATION [HAD] BEEN FORWARDED TO THE APPROPRIATE AUTHORITIES FOR REVIEW," AS IT PERTAINS TO THE SHU ISSUES HERE. ALL THESE STATEMENTS ARE BY THIS ATTORNEY ARE INTENTIONALLY MISLEADING AS THEY WERE PART OF PRIOR COMPLAINTS AND THE FIRST SUMMARY JUDGMENT WHICH ARE IRRELEVANT HERE (FOR THE MOST PART). ANY EMAILS REFERRED TO IN THIS BRIEF ARE FROM DAREK EKEREN IN 2019 OR 2020 AND HE IS NOT PART OF THIS IMMEDIATE ISSUE.

ON PAGE 27, CHRISTIANS TAKES ISSUE WITH CLARK'S STATEMENTS THAT CORRECTIONAL OFFICERS OR OTHER DOC STAFF (DEFENDANTS) ARE NOT ALLOWED OR AUTHORIZED TO GO INTO KITCHEN AREA TO RETRIEVE FOOD ITEMS. ANYONE WITH SUBPEONA POWER (CHRISTIANS BELIEVES HE HAS NONE) COULD SUBPEONA SDDOC VIDEO EVIDENCE OF ANY AND ALL DOC STAFF IN THE KITCHEN RETRIEVING FOOD ITEMS (I.E. TRAYS, SNACKS, FRUITS, MILK CARTONS, JUICE, BOOSTS, ETC.) AND DELIVERING TO INMATES ON A-FLOOR (SHU) AND OTHER AREAS OF THE PRISON. THAT WOULD BE UNDISPUTABLE, UNREFUTED PROOF CONTRARY TO DOUG CLARK'S SWORN STATEMENT. THIS HAPPENS MANY TIMES THROUGHOUT THE DAY, SEVEN DAYS A WEEK, 365 DAYS A YEAR.

ADDITIONALLY, OFFICERS AND DOC STAFF PREPARE TRAYS/SACK LUNCHES BY THEMSELVES WHEN INMATES AND FOOD CONTRACTED (SUMMIT/ARAMARK) STAFF HAS LEFT FOR THE DAY AND THE FOOD IS NEEDED FOR INMATES FOR A VARIETY OF REASONS (I.E. AWAY AT COURT, MEDICAL APPOINTMENT, LATE ARRIVAL, ETC.) WHEN THEY MAY HAVE MISSED A MEAL. (DECLARATIONS OF BLAIR, CLAY, HEADLEY, HARRUFF, CHRISTMANS, BOYER) ADDITIONALLY, AS CHRISTMANS STATED IN THE COMPLAINT OFFICER CRAIG MADE EFFORTS TO CORRECT ISSUES AT AT LEAST ONE OCCASSION. PLAINTIFF ASSERTS CRAIG IS NOT A DEFENDANT, NOR OTHERS WHO MAY HAVE DONE THE SAME.

IT SEEMS THE DEFENDANTS ATTORNEY MAKES CHRISTMANS' EXACT ARGUMENT FOR HIM IN THE SECOND PARAGRAPH OF PAGE 27 BY SAYING DEFENDANTS DID NOT HAVE THE AUTHORITY TO VARY FROM THE MENUS (WHICH IS UNDISPUTED THEY WERE IN POSESSION OF). AS TO "DELIBERATELY DISREGARD[ING] A MEDICAL PROFESSIONAL'S ORDER TO PROVIDE HIM WITH SPECIFIC FOOD ITEMS," IT'S OBVIOUS THEY DID JUST THIS BY REFUSING TO ON MOST DAYS/MEALS DELIVER CHRISTMANS SNACK OF EXTRA PROTEIN. CHRISTMANS ADMITS ON A FEW OCCASSIONS IT WAS DELIVERED. THIS IS SWORN TO BY CHRISTMANS IN THE COMPLAINT AND NOT DENIED OR ADMITTED BY DEFENDANTS.

IF THEY "RELIED ON THE EXPERTISE OF THE REGISTERED DIETICIAN" AS THE ATTORNEY CLAIMS, IT HAS TO BE QUESTIONED WHY THEY DID NOT CORRECT THE INCOMPLETE MEAL TRAYS ACCORDING TO THE MENU GIVEN TO THEM BY SAID DIETICIAN. COMPLETELY UNREASONABLE.

TO NOTE, NO SWORN TESTIMONY IS IN RECORD OF DEFENDANTS BELIEFS FOR CHRISTMANS TO REVIEW, CONFIRM OR DISPUTE. THERE SIMPLY NO DENIALS FROM THE DEFENDANTS AS TO THEIR ACTIONS OR

INACTIONS. IT CANNOT BE REASONABLE TO KNOW A SET MEAL/MENU AS ADEQUATE NUTRITION THEN PROCEED TO REFUSE TO CORRECT THE OBVIOUS INADEQUACIES OF INCOMPLETE MEALS NOR ALERT ANY OFFICIAL WHO WOULD BE WILLING TO PROVIDE THE MEALS AS DESIGNED BY THE DIETICIANS.

ALLEGED LOSS OF STRENGTH

[redacted]

PLAINTIFF ASSERTS THE NEXT FOUR PAGES OF DEFENDANTS ARGUMENTS HAVE ALREADY BEEN CONSIDERED IN THE PRIOR SUMMARY JUDGMENT AND IS NOTHING MORE THAN AN ATTEMPT TO RENEW THOSE ISSUES OR ARE IRRELEVANT TO CHRISTIANS' CLAIMS SPANNING MARCH 20, 2021 TO APRIL 3, 2021 AND EXTENDING TO MAY 2021.

CHRISTIANS HAS HAD GOOD MUSCLE TONE, THIS WAS TRUE DURING THE DATE AT ISSUE WHEN HE WEIGHED 238/233 POUNDS UPON ENTERING THE SHU ON MARCH 20 AND 217 POUNDS 14 DAYS LATER (A LOSS OF 21 OR 16 POUNDS). THIS WAS AFTER REPEATED VERBAL COMPLAINTS TO [redacted] DEFENDANTS AND NUMEROUS KITES TO STAFF, IF ONE HAS GOOD MUSCLE TONE AND THAT MUSCLE TONE REMAINS CONSISTANT THROUGH WEIGHT LOSS, IT QUITE REASONABLE TO DETERMINE ACTUAL MUSCLE WAS LOST. IT WOULD BE FURTHER SUPPORTED IF THE ONE WHO LOST WEIGHT REPORTED MUSCLE ATROPHY (SMALLER MUSCLES GLOBALLY), LOSS OF MUSCLE DENSITY (HARDNESS/FIRMNESS) OR LOSS OF STRENGTH.

THE 150-POUND LOSS OF UPPER BODY STRENGTH IN 2019 IS SO FAR FROM IRRELEVANT AND PRIORLY DISCUSSED, CHRISTIANS WILL NOT ADDRESS IT AGAIN AND PRAYS THE COURT AGREES.

THE SAME IS TRUE OF ALL MENTIONS OF LEFT ARM MUSCLE ATROPHY AND STRENGTH LOSS DUE TO AN

INJURY TO CHRISTMANS NECK/NERVES. THE SAME APPLIES TO ANY COMMENTS THAT MAY HAVE BEEN MADE ABOUT LEG STRENGTH THAT WAS SPECIFICALLY IN REFERENCE TO SAID NECK INJURY AND COMPARISON OF THE LOSS IN HIS LEFT ARM, ALL OCCURRING AT AN APPOINTMENT ON JULY 2, 2019. AGAIN, CHRISTMANS PRAYS THE COURT AGREES AS IT WAS DISPUTED PRIOR AND THE RESPONSE TO DEFENDANTS STATEMENT OF MATERIAL FACTS.

THE STRENGTH INCREASE FROM 2018 TO 2019 IS HIGHLY DISPUTED. IT'S DIFFICULT TO COMPARE 10 PUSH-UPS AT A BODY WEIGHT OF 260 POUNDS ON JANUARY 4, 2018 TO A ONE REP MAX OF 250 POUNDS ON JANUARY 7, 2019. CHRISTMANS ASSERTS IT WOULD BE A RELATIVELY SMALL GAIN, IF ANYTHING AND COULD SUGGEST A LOSS. THE "BARELY DO A PUSHUP" STATEMENT IS DISPUTED BY CHRISTMANS DECLARATION AND STATEMENT OF FACTS RESPONSE. TO NOTE, SINCE CHRISTMANS COULD BENCH PRESS 400 POUNDS FIVE MONTHS PRIOR OR LONGER, IT WOULD SHOW A SIGNIFICANT STRENGTH LOSS IF "COULD BARELY DO A PUSH UP" OR EVEN 10 PUSH UPS.

DR. HAYNES STATEMENTS ARE NOT AN ACCURATE DEPECTION OF THE RECORD. TO POINT, IF CHRISTMANS HAD BEEN TRAINING DEDECATEDLY (NOT DISPUTED) AND RECEIVING ADEQUATE NUTRITION DURING THIS "WEIGHT LIFTING" PERIOD BETWEEN JANUARY 2018 AND JANUARY 2019, HE WOULD HAVE VERY LIKELY GAIN MUSCLE AND THEREFORE WEIGHT (BODY WEIGHT) AS HE ALWAYS HAD "GOOD MUSCLE TONE" DURING THAT TIME. THE RECORD REFLECTS, HOWEVER, CHRISTMANS LOST AN ADDITIONAL 40 OR MORE POUNDS BETWEEN THOSE DATES! (SEE SUBMITTED MEDICAL WEIGHTS SPREAD SHEET)

CHRISTMANS HAS CONTINUOUSLY "LIFTED WEIGHTS," [redacted] DONE RESISTANCE TRAINING AND/OR STRENGTH TRAINING FROM 2018 TO THE PRESENT WITH ONLY SMALL AMOUNTS OF TIME OFF. (DECLARATIONS CHRISTMANS, HOADLEY, CLAY, HARRUFF, BLAIR, COOK) AS FOR DENYING EXERCISE, THE ONLY EXERSICE CHRISTMANS DENIES DOING IS CARDIO FOR FAT LOSS AS HE BOTH HAS DOCUMENTED ARTHRITIS IN HIS TOES/FEET AND A TORN ACL IN HIS LEFT KNEE FROM 2021. (SEE SAME DECLARATIONS). TO NOTE, ON PAGE 32 OF DEFENDANTS BRIEF IT IS BOTH ARGUED CHRISTMANS DENIED DOING ANY REGULAR EXERCISE AND CONTRIBUTED LOSS OF MUSCLE AND STRENGTH TO THE "RESULT OF REGULAR EXERCISE."

ALTHOUGH, CHRISTMANS FELT COMPELLED TO SHOW THE MISLEADING INFORMATION AS INACCURATE OR INCOMPLETE PICTURES OF THE RECORD, HE MAINTAINS THOSE ARGUMENTS IN THE ABOVE HEADING BY THE DEFENDANTS ARE LARGELY IRRELEVANT.

## ALLEGED RETALIATION

AFTER CHRISTMANS THREATS OF VIOLENCE AND DEATH FROM WARDEN YOUNG IN 2021, HE IMMEDIATELY WROTE THE COURT DESCRIBING THE SITUATION (AS SUPPLIES TO DO SO BECAME AVAILABLE [i.E. PAPER, PENCIL, ENVELOPES]) TWO IDENTICAL LETTERS WERE MADE DATED APRIL 28, 2021 DESCRIBING CHRISTMANS SHU EXPERIENCE. THESE WERE MAILED ON APRIL 30 AND MAY 5, 2021 RECEIVED BY THE COURT ABOUT MAY 10, 2021 (49 AND 50 IN THE DOCKET). ALSO WHEN PLAINTIFFS PHONE PRIVLAGES BECAME AVAILABLE AFTER BEING RELEASED FROM THE SHU, HE PLACED A "CONCERNING" CALL TO HIS SISTER DESCRIBING HIS SHU EXPERIENCE (CHRISTMANS DECLARATION, MARSHA WARE DECLARATION). HE ALSO TOLD

HIS PREVIOUS CELLMATE WHEN SEEING HIM AGAIN.

PRIOR TO THE SEPTEMBER 19, 2019 ALLEGATIONS ON THE PART OF STRATMAN AND CHRISTENSEN, PLAINTIFFS RECEIVED DIRECT THREATS FROM BOTH DEFENDANTS. ONE, CHRISTENSEN, SPECIFICALLY STATED SHE WOULD KILL PLAINTIFF BY PUTTING POISON IN HIS COFFEE AND POWDER MILK. ALSO STATING SHE KNEW WHERE HE KEPT THEM IN HIS ROOM. THIS WAS ESPECIALLY CONCERNING TO CHRISTIANS DUE TO NOT ONLY CLAIMED KNOWLEDGE OF THE LOCATIONS OF THESE BEVERAGES BUT ALSO THAT SHE KNEW CHRISTIANS HAD POWDERED MILK, AS IT WAS NOT A POPULAR COMMISSARY ITEM. STRATMAN MADE A SIMILAR REMARK SAYING SHE WOULD "FIND A WAY TO GET RID OF [HIM] (CHRISTIANS)." THESE REMARKS WERE SPECIFICALLY STATED, ACCORDING TO THE DEFENDANTS THEMSELVES, DUE TO CHRISTIANS' EXCESSIVE FILING OF GRIEVANCES ON FOOD ISSUES BECAUSE IT WAS MAKING THEIR LIFE DIFFICULT. (PG. 4, CIVIL COMPLAINT, 4:22-CV-04072-LLP). DUE TO THESE THREATS, CHRISTIANS IMMEDIATELY CALLED HIS SISTER, MARSHA WARE, URGING HER TO DO A FULL AUTOPSY IF ANYTHING WERE TO HAPPEN TO HIM AND PURSUE LEGAL REMEDIES. (CHRISTIANS DECLARATION, WARE DECLARATION).

ON SEPTEMBER 19, 2019 BOTH STRATMAN AND CHRISTENSEN FILED REPORTS STATING THEY TRIED PREVENTING CHRISTIANS FROM LEAVING WITH "PAPERWORK", NOW IDENTIFIED AS CHRISTIANS' GRIEVANCES AND SDDOC FOOD CONTRACT BELONGING TO CHRISTIANS. CHRISTIANS WAS ATTEMPTING TO MAKE COPIES FOR HIS RECORDS, THE NOW CIVIL SUIT AND OTHER INMATES. NONE OF THE PAPERWORK WAS RETURNED AND CHRISTIANS EVENTUALLY RECEIVED A REPLACEMENT FOOD CONTRACT DURING HIS TIME IN JAMESON ANNEX, THAT IS AVAILABLE ON THE STATE WEBSITE. DURING THIS EVENT, OF WHICH THE ONLY DISPUTED PART IS WETHER OR NOT CHRISTIANS PHYSICALLY MADE

CONTACT WITH NANCY CHRISTENSEN, CHRISTIANS WAS LOCKED IN AN OFFICE WITH DEMANDS TO TURN OVER HIS LEGALLY POSSESSED FOOD CONTRACT AND HIS OWN PREVIOUSLY FILED GRIEVANCES AND ADDITIONAL GRIEVANCES FOR SUBMITTAL. THIS WAS DONE DENYING CHRISTIANS' REQUEST FOR WITNESSES (WARDEN FLUKE, AN OIC [OFFICER IN CHARGE], OR VIDEO CAMERA). THIS ESSENTIAL KIDNAPPING IN ANY REGULAR ENVIRONMENT, WAS DONE BY THE SAME TWO WOMEN WHO HAD JUST PRIOR MADE DIRECT OR INDIRECT THREATS ON PLAINTIFF'S LIFE. (COMPLAINT ¶ 140, GRIEVANCES - IRR./A.R. #29870 [DEFENSE EXHIBIT 25 AND 27)

FOR CHRISTIANS H-7 CHARGE IN 2020 THE FOLLOWING FACTS ARE ALL UNDISPUTED. PLAINTIFF WAS QUESTIONED BY SPECIAL INVESTIGATIONS OFFICER WYNIA AS TO HIS FILING OF ALOT OF GRIEVANCES ON FOOD ISSUES AND A LAWSUIT FILING ABOUT THE SAME ISSUES. (SIU) OFFICER WYNIA ALSO ASKED CHRISTIANS ABOUT A "YARD" MEETING(S) [redacted] OF INMATES AT NIGHT REC THAT WAS APPARENTLY VIDEO TAPED. CHRISTIANS DENIED ANY KNOWLEDGE OF OR PRESENCE AT SUGGESTED MEETING DUE TO NOT ALLOWED ACCESS TO NIGHT REC AT THE TIME. THIS IS FURTHER SUPPORTED BY NO VIDEO EVIDENCE OF CHRISTIANS AT THIS SUPPOSED MEETING. CHRISTIANS HIMSELF NEVER STOPPED EATING AT THIS PERIOD. WYNIA, HERSELF, STATED TO CHRISTIANS IN THE INTERVIEW SHE DID NOT BELIEVE CHRISTIANS WAS INVOLVED IN THE PLANNING OF THIS EVENT. ADDITIONALLY WHILE BEING HELD FOR THE H-7 CHARGE IN THE SHU, WARDEN YOUNG AND JESSICA COOK VISITED WITH CHRISTIANS ACCUSSING HIM OF INVOLEMENT DUE TO HIS FILING OF "TOO MANY" GRIEVANCES ON FOOD ISSUES. ALL UNDISPUTED. (COMPLAINT 141; GRIEVANCES #35495/35485 AND APPEAL TO SECRETARY #35498)

DEFENDANT YOUNG

PLAINTIFF ASSERTS THAT HE EXHAUSTED HIS ADMINISTRATIVE REMEDIES ACCORDING TO SET SDDOC POLICY 1.3.E.2.

ADMINISTRATIVE REMEDY FOR INMATES. ALSO, CHRISTIANS WILL SHOW HE EXHAUSTED ADMINISTRATIVE REMEDIES AS WERE AVAILABLE (FURTHER AVENUES WERE UNAVAILABLE). ADDITIONALLY CHRISTIANS WILL CITE JUST A FEW OF HUNDREDS OF EXAMPLES BOTH IN RECORD AND NOT IN RECORD, WHERE THE DOC DOES NOT FOLLOW THEIR OWN ADMINISTRATIVE REMEDY POLICY BY WHICH MAKING IT ARBITRARY.

FIRST, AS THE ATTORNEY POINTS OUT ON PAGE 35 OF HIS BRIEF, "IF THE INMATE IS UNABLE TO RESOLVE THE COMPLAINT VERBALLY, HE IS TO SUBMIT AN INFORMAL RESOLUTION REQUEST." IT IS UNDISPUTED AND [illegible] CANNOT BE ARGUED AGAINST BY EVIDENCE IN RECORD THAT ON APRIL 29, 2021, CHRISTIANS "TALKED WITH (SETH) HUGHES AND BROUGHT UP DIET CONCERNS PREVIOUSLY DISCUSSED AND BEING SHIPPED OUT OF STATE DUE TO MAKING AN ISSUE OF THE FOOD PROBLEMS." (COMPLAINT #127(EE)). THIS WAS AN OBVIOUS VERBAL COMPLAINT. TO NOTE, THIS WASN'T THE ONLY OCCURANCE, JUST THE ONLY ONE IN IMMEDIATE RECORD (CHRISTIANS ADDS ADDITIONALLY IN HIS DECLARATION). AS STATED IN BRAKEALL V. STANWICK-KLEMIK, 2020 WL 1180727 AT *6, THIS COURT NOTED, "ACCORDING TO POLICY, WHEN [HUGHES] RECEIVED A VERBAL INFORMAL RESOLUTION REQUEST, AND VERBALLY REPLIED AN OUTCOME [HUGHES] SHOULD HAVE PROVIDED [CHRISTIANS] WITH A DOCUMENTED RESPONSE PER POLICY 1.3.E.2 (4)(C)(5)(d) ("THE RESPONSE MAY BE VERBAL OR WRITTEN. IF VERBAL, THE OUTCOME AND RESPONSE PROVIDED MUST BE DOCUMENTED.")" CHRISTIANS MADE HIS GRIEVANCE KNOWN VERBALLY, REQUESTED TO REMAIN IN STATE TO WHICH HUGHES REPLIED IF HE (CHRISTIANS) CONTINUED TO PROTEST FOOD ISSUES HE WOULD BE "MOVED UP THE LIST TO BE SHIPPED OUT." (CHRISTIANS DECLARATION, DOCKET #49,50 - LETTER TO COURT). EVEN IF HUGHES DENIES HIS RESPONSE CLAIMED BY CHRISTIANS AND STATES A DIFFERENT "RESOLUTION" FOR THE VERBAL GRIEVANCE OF CHRISTIANS, NO

RESPONSE WAS DOCUMENTED, LIKE IN BRAKEALL," BECAUSE [HUGHES] DID NOT PROVIDE THE DOCUMENTATION, [redacted] [CHRISTMANS] WAS UNABLE TO COMPLETE THE ADMINISTRATIVE REMEDY PROCESS. THUS, [CHRISTMANS] HAS EXHAUSTED HIS ADMINISTRATIVE REMEDIES." FOR THIS FACT ALONE, ON THE DEFENDANTS ARGUMENT FOR FAILURE TO EXHAUST SEEKING DISMISSAL, THEY FAIL AND MUST BE DENIED SUMMARY JUDGMENT.

SECOND, IN SMITH V. ANDREWS, 75 F.4TH 805 (8TH CIR. 2023) 2023 WL 4753626 USING THE SUPREME COURTS DECISION IN ROSS V. BLAKE, 578 U.S. 632, 136 S.CT. 1850, 195 L.ED.2D 117 (2016) CONCLUDED:

"ADMINISTRATIVE REMEDIES AS BEING UNAVAILABLE WHEN: (1) THE PRISON'S GRIEVANCE PROCESS OPERATES AS A SIMPLE DEAD-END - WITH OFFICERS UNABLE OR CONSISTENTLY UNWILLING TO PROVIDE ANY RELIEF TO AGGRIEVED INMATES; (2) THE ADMINISTRATIVE SCHEME IS SO OPAQUE THAT IT BECOMES, PRACTICALLY SPEAKING, INCAPABLE OF USE BECAUSE SOME MECHANISM EXISTS TO PROVIDE RELIEF, BUT NO ORDINARY PRISONER CAN DISCERN OR NAVIGATE IT; OR (3) PRISON ADMINISTRATORS THWART INMATES FROM TAKING ADVANTAGE OF A GRIEVANCE PROCESS THROUGH MACHINATION, MISREPRESENTATION, OR INTIMIDATION."

SEE ALSO BRAKEALL (2020 WL 1180727); TOOF V. SWANSON, 2021 WL 1218453 AT *4; TOWNSEND V. MURPHY, 898 F.3D 780 AT 783, 784.

AS NOTED IN TOOF V. SWANSON 2021 AT *4 "AN INCARCERATED PERSON "IS REQUIRED TO EXHAUST THOSE, BUT ONLY THOSE, GRIEVANCE PROCEDURES THAT ARE 'CAPABLE OF USE' TO OBTAIN 'SOME RELIEF.'" ROSS, 578 U.S. AT 642 (QUOTING BOOTH, 532 U.S. AT 738)."

IN THE RECORD IS ESTIMATED OVER 100 INFORMAL RESOLUTION REQUESTS, ADMINISTRATIVE REMEDY REQUESTS AND APPEALS) TO SECRETARY

OF CORRECTION. ONE HUNDRED PERCENT OF THOSE WERE REJECTED, DENIED, NOT REPLIED TO, GIVEN IRRELEVANT ANSWERS, OR REJECTED FOR NOT FOLLOWING POLICY (WHEN POLICY WAS CLEARLY FOLLOWED/REJECTION WAS BASED ON "MADE UP" RULE BY ADMINISTRATOR NOT DEFINED IN POLICY). ADDITIONALLY, HUNDREDS MORE GRIEVANCES WERE SUBMITTED BY CHRISTIANS (BOTH INFORMALLY AND FORMALLY)(BY KITE, VERBALLY, LETTERS AND OFFICIAL FORMS) THAT ARE NOT IN RECORD, WHICH WERE ALSO DENIED ANY RELIEF FOR THE SAME REASONS AS ABOVE, IN FACT, OUT OF SEVERAL HUNDRED GRIEVANCES OVER PLAINTIFFS INCARCERATION, ONLY TWO (2) GRANTED "SOME" RELIEF (AND SHOULD BE NOTED THIS WAS PROPERTY TAKEN BY DOC OFFICIALS FOR ABSOLUTELY NO VALID REASON, WHERE IT SHOULD NOT HAVE EVEN COME TO THE GRIEVANCE PROCEDURE).

IS YOUNG, SOME HOW SUGGESTING THAT, EVEN THROUGH HIS DENIAL OF CHRISTIANS CLAIMS, THAT IF CHRISTIANS WOULD HAVE PURSUED ADDITIONAL GRIEVANCES TO YOUNG HIMSELF, THE SECRETARY OF CORRECTIONS OR THE GOVERNOR, "SOME RELIEF" MAY HAVE BEEN PROVIDED. AS STATED IN THE FIRST ARGUMENT, CHRISTIANS COMPLAINED TO HUGHES, HUGHES RESPONDED AND DID NOT PROVIDE WRITTEN DOCUMENTATION. THAT ENDED THE EXHAUSTION REQUIREMENT. THE ONLY THING CHRISTIANS WOULD HAVE DONE, BY FURTHER PURSUIT OF A DOCUMENTED COMPLAINT, WOULD HAVE BEEN TO PISS OFF WARDEN YOUNG EVEN MORE, AND QUITE ASUREDLY LANDING CHRISTIANS IN A HARSHER, MORE VIOLENT PRISON WHERE HE COULD GET STABBED (OR AS YOUNG PUT IN HIS AFFIDAVIT MORE "REALISTIC" "WORSE CONDITIONS"). THIS SATISFYS ROSS V. BLAKE STANDARD OF ADMINISTRATIVE REMEDIES UNAVAILABLE WHEN (1) [IT] OPERATES AS A SIMPLE DEAD END WITH OFFICERS ... CONSISTENTLY UNWILLING TO PROVIDE RELIEF.

THIRD, DOC OFFICIALS DO NOT FOLLOW THEIR OWN POLICY HERE (AS MANY OTHER PRISON POLICIES/CONTRACTS). CHRISTIANS FIRST POINTS TO I.R.R'S DATED 2/12/2019, RECEIVED BY DEB EILERS ON 2-13-19 (FOUR (4) INDIVIDUAL ORIGINAL

TRIPLICATE COPIES SUBMITTED TO COURT WITH ORIGINAL COMPLAINT FILING) NONE OF THESE FOUR GRIEVANCES OR REQUESTS FOR RESOLUTION RECEIVED A RESPONSE, NEXT, A REVIEW OF THE RECORD OF GRIEVANCES AND COMPLAINT POINTS TO NUMEROUS INSTANCES OF STAFF AND ADMINISTRATORS NOT ADHERING TO THE 10 AND 30 DAYS TIME LIMITS IN WHICH TO ANSWER INMATES. IN I.R.R./A.R # 30010 (ORIGINALLY SUBMITTED WITH COMPLAINT AND THIS DOCUMENT AS WELL) THE I.R.R RESPONSE WAS OBVIOUSLY NOT FULLY INVESTIGATED AND THE A.R. WAS ORIGINALLY DENIED FOR "NOT SUBMITTING ORIGINAL IRR PAPERWORK OR DETAILED INFORMATION SUCH AS DATES. CHRISTIANS MADE ISSUE AS HE SUBMITTED A "COPY" AS STATED IN POLICY AND WAS ALLOWED TO RESUBMIT. IN THE RESUBMIT A.R., CHRISTIANS BOLDLY UNDERLINED "TWICE PER DAY, SEVEN DAYS A WEEK WHICH IS UNDISPUTEDLY ALL INCLUSIVE OF ALL DAYS IN A WEEK AS IT PERTAINS TO THE CONTRACT ISSUE. STILL DENIED FOR NOT PROVIDING DATES. IS THE INMATE SUPPOSED TO LIST EVERY SINGLE DATE FOR THE PRIOR YEARS THIS WOULD APPLY? THAT REASONABLY WOULD BE HUNDREDS OF DAYS/DATES.

IN I.R.R. AND A.R.'S 36852 AND 37671, THE FIRST A.R. WAS RESUBMITTED MULTIPLE TIMES WITH NO RESPONSE. THE SUBSEQUENT I.R.R. RESPONSE GAVE CHRISTIANS "PERMISSION" TO RESTART THE RESPONSE TIME FRAME, AND RESUBMIT YET AGAIN. CHRISTIANS WAS NEVER GIVEN NOTICE AS REQUIRED, OF THE ADMINISTRATOR REQUEST FOR AN EXTENSION. ALSO, NEITHER A.R., BOTH 36852 AND 37671 EVER RECEIVED A RESPONSE WITH MULTIPLE RESUBMITS. (SEE ALSO IRR 38790)

AS LISTED IN DOC POLICY 13.E.2(4)(C)(5) "STAFF WILL: a. CONDUCT AN INFORMAL MEETING WITH THE INMATE TO DISCUSS AND UNDERSTAND THE ISSUE. THIS, OUT OF HUNDREDS OF GRIEVANCES, WAS ONLY CONDUCTED BY STAFF <u>ONE</u> TIME, AND THAT WAS TO DEMAND

CHRISTMANS PRODUCE RECEIPTS (WHICH DOC HAD ACCESS TO) FOR HIS CONFISCATED PROPERTY. LETTER D. NOT LIKELY DONE AS IT IS NOT DOCUMENTED. LETTER C. "CONSIDER ALL AVAILABLE INFORMATION" AS IN IRR. RESPONSE #30090, THE ACTUAL MENU WAS NOT CONSIDERED, JUST RELIANCE ON AN UNNAMED PERSON. AND, LETTER F, "ENSURE THE REMEDY ... ARE AGREED TO BY INMATE AND STAFF PERSON. THIS AS WELL HAS NEVER BEEN DONE. IT'S A COMPLETELY ARBITRARY POLICY TO STAFF AND IF THEY DON'T FOLLOW IT SUBSTANTIALLY, WHY ARE INMATES HELD TO A PERFECT STANDARD (OR IN SOME CASES HELD TO RULES THAT DO NOT EXISIT)?

TO ARGUMENTS THAT YOUNG NEVER ATTEMPTED TO CARRY OUT THE THREAT OR TOOK ANY AFFIRMATIVE TO ACT ON THE THREAT, CHRISTMANS WAS NEVER INFORMED OF THIS AND LEFT IN LIMBO AS TO WHAT HIS FUTURE SAFTEY WOULD BE. IN FACT, IT WAS REAFFIRMED BY HUGHES STATING "HE [CHRISTMANS] WAS MOVING UP THE LIST TO BE TRANSFERRED." (CHRISTMANS' DECLARATION). ALSO CHRISTMANS MADE A CONCERNING PHONE CALL TO HIS SISTER WHEN PHONE PRIVILAGES WERE RESTORED IN MAY OR JUNE OF 2021 STATING HIS FEAR FOR HIS SAFTEY OR LIFE DUE TO THE THREATS BY YOUNG. (CHRISTMANS DECLARATION, MARSHA WARE DECLARATION). YOUNG NOW DENIES THESE ALLEGATIONS AND STILL ADMITS IN HIS DECLARATION, AT THE VERY LEAST HE MADE CHRISTMANS "REALISTICALLY" AWARE OF "WORSE" CONDITIONS AT OTHER INSTITUTIONS THAT WOULD BE A RESULT OF A TRANFER. THE ABOVE STATED, SOMETHING MADE CHRISTMANS FEARFUL ENOUGH TO BOTH WRITE THIS COURT (DOCKET 49, 50) ASKING NOT TO BE TRANSFERRED AND PLACE A CALL TO HIS SISTER AS SOON AS IT WAS AVAILABLE TO INFORM HER, OF HIS FEARS AND REALITY.

IN SANTIAGO V. BLAIR, 707 F.3D 984, AN OFFICER WAS NOT ENTITLED TO QUALIFIED IMMUNITY AS TO THE INMATE'S FIRST AMENDMENT RETALIATION CLAIM REGARDING

RETALIATORY DEATH THREATS. AT i. [**16] CLUBBS "WE HAVE LONG HELD THAT A THREAT OF RETALIATION IS SUFFICIENT INJURY IF MADE IN RETALIATION FOR AN INMATES USE OF PRISON GRIEVANCE PROCEDURES' TO SUSTAIN A CLAIM OF FIRST AMENDMENT RETALIATION," BURGESS V. MOORE, 39 F.3D 216, 218 (8TH CIR. 1994) ... ESPECIALLY TRUE WHEN THE THREATS ARE ONES OF DEATH OR SERIOUS HARM TO AN INMATES SAFTEY."

AT ii. BLAIR "WHETHER THESE CONDITIONS AND THIS STATEMENT ARE THEMSELVES A CONSTITUTIONAL VIOLATION IS IRRELEVANT. ... AND CONDUCT THAT RETALIATES AGAINST THE EXERCISE OF A CONSTITUTIONALLY PROTECTED RIGHT... IS ACTIONABLE EVEN IF THE ALLEGED RETALIATORY CONDUCT DOES NOT ITSELF RISE TO THE LEVEL OF A CONSTITUTIONAL VIOLATION," VAN WYHE V. REISCH, 581 F.3D 639, 658 (8TH CIR. 2009) "A REASONABLE JURY COULD CONCLUDE DEFENDANTS THREATS ARE ADVERSE ACTIONS SUFFICENT TO CHILL A PRISONER OF ORDINARY FIRMNESS FROM ENGAGING IN THE PRISON GRIEVANCE PROCESS."

BURGESS V. MOORE, 39 F.3D 216 AT SAYS "CORRECTION OFFICERS WERE IMPROPERLY GRANTED SUMMARY JUDGMENT ON A PRISONER'S CONSTITUTIONAL CLAIMS WHERE THE CORRECTIONS OFFICERS ACTIONS REMAIN DISPUTED. SUMMARY JUDGMENT WAS NOT APPROPRIATE ON A QUALIFIED IMMUNITY THEORY." "BECAUSE THE CORRECTIONS OFFICERS' ACTIONS... REMAIN DISPUTED, SUMMARY JUDGMENT IS NOT APPROPRIATE ON A QUALIFIED IMMUNITY THEORY." SEE GAINER V. ROGERS, 973 F.2D 1379, 1385 (8TH CIR. 1992)

IN GARCIA V. CITY OF TRENTON, 348 F.3D 726 OVERVIEW STATES "THE CIRCUIT COURT REVERSED THE JUDGMENT OF THE DISTRICT COURT HOLDING THAT THE QUESTION OF WHETHER A PERSON OF ORDINARY FIRMNESS

WOULD HAVE HAD HIS OR HER FREE SPEECH RIGHTS CHILLED BY THE PARKING TICKETS AND THE INFERRED THREAT OF FUTHER HARASSMENT WAS SUFFICIENTLY CLOSE TO COME WITHIN THE JURY'S PROVINCE." THAT WAS FOR PARKING TICKETS AND HARASSMENT, IN THIS INSTANT CASE, THE PLAINTIFF'S VERY SAFTEY AND LIFE WAS THREATENED, AT *729 IT GOES ON TO SAY "THE TEST IS AN OBJECTIVE ONE, NOT SUBJECTIVE. THE QUESTION IS NOT WHETHER THE PLAINTIFF [HIMSELF] WAS DETERRED, RATHER, WHAT WOULD A PERSON OF 'ORDINARY FIRMNESS' HAVE DONE IN REACTION TO [THE RETALIATION]."

MORRIS v. POWELL, 449 F.3D 682 AT *687 STATES "TRANSFER TO A MORE DANGEROUS PRISON IS A MUCH MORE SERIOUS RETALIATORY ACT THAN WHAT HAS BEEN CONSIDERED DE MINIMUS IN OTHER CIRCUITS. WE HAVE HELD THAT TRANSFER TO A MORE DANGEROUS SECTION OF THE SAME PRISON IS A SUFFICENTLY ADVERSE ACT TO SUPPORT A SECTION 1983 CLAIM." SEE PARKER v. CARPENTER, 978 F.2D 190, 192-93 (5TH CIR. 1992) "THERE IS NO DOUBT THAT TRANFER TO A MORE DANGEROUS PRISON AS A PENALTY FOR THE EXERCISE OF CONSTITUTIONAL RIGHT HAS THE POTENTIAL TO DETER THE INMATE FROM THE FUTURE EXERCISE OF THOSE RIGHTS."

CODY v. CLARK, 2022 U.S. DIST. LEXIS 89419 FIRST AMENDMENT CLAIMS AT *32 SAYS "ALTHOUGH [PLAINTIFF] DID NOT FILE A FORMAL GRIEVANCE, HE ALERTED A PENITENTIARY OFFICER TO THE PROBLEM ... IN HOPES OF RESOLVING IT. THUS, HE ENGAGED IN CONSTITUTIONALLY PROTECTED SPEECH." HERE, CHRISTIANS ALERTED MULTIPLE OFFICALS AND THE ONLY SOLUTION TO CHRISTIANS ISSUE OF MISSING FOOD AND SNACKS IN THE SHU (AND PRIOR ISSUES OF THE SAME NATURE) WAS FOR WARDEN YOUNG TO THREATEN TRANSFER TO ANOTHER STATE. CONDITIONS OF ANOTHER STATE ASIDE, THIS WAS DIRECTLY DUE TO

COMPLAINTS THAT WERE MADE KNOWN TO YOUNG AS OPPOSED TO ADDRESSING THE COMPLAINTS OF MISSING FOOD AND SNACKS.

TO THE ARGUMENT OF CHRISTIANS CONTINUING IN THE ACTIVITY, CHRISTIANS REFERS TO GARCIA v. CITY OF TRENTON REFERRED TO ABOVE. THE QUESTION IS OBJECTIVE TO WHAT A PERSON OF "ORDINARY FIRMNESS" WOULD HAVE DONE. ADDITIONALLY, CHRISTIANS STOPPED FOOD GRIEVANCES AFTER THOSE HE RAISED WHILE IN THE SHU. HE DID FILE GRIEVANCES ON OTHER ISSUES AS THE RECORD COULD POTENTIALLY SHOW, IT WASN'T UNTIL AFTER YOUNG WAS TERMINATED THAT CHRISTIANS RESUMED ADDITIONAL FOOD DISPUTES. IT SEEMS AS THOUGH DEFENDANTS, OR THEIR ATTORNEY IS SUGGESTING THAT CHRISTIANS SHOULD HAVE STOPPED HIS FILING OF ANY GRIEVANCE ABOUT ANY ISSUE UNDER THE DARRIN YOUNG ADMINISTRATION, WHICH MAY HAVE BEEN THE INTENT. THIS ONLY SHOWS CHRISTIANS ISN'T AN INMATE OF 'ORDINARY FIRMNESS.' AS STATED ABOVE, "A MORE DANGEROUS PRISON AS A PENALTY FOR THE EXERCISE OF CONSTITUTIONAL RIGHT HAS THE POTENTIAL TO DETER THE INMATE FROM THE FUTURE EXERCISE OF THOSE RIGHTS." MORRIS v. POWELL AND PARKER v. CARPENTER.

THE WOODS CASE TO REFERRED TO BY DEFENDANTS IS QUITE DIFFERENT CIRCUMSTANCES AND CHRISTIANS IS NOT IN THE HABIT OF FILING GRIEVANCES DIRECTLY AGAINST "VARIOUS PRISON OFFICIALS," AS IN WOODS. THE TOPICS OF GRIEVANCES AFTER THE YOUNG THREATS VARIED GREATLY ABOUT A VARIETY OF ISSUES BUT DID NOT INVOLVE FOOD DISPUTES BEYOND THAT OF WHICH WAS INITIATED AND ADDRESSED DURING MARCH-MAY 2021. AND AGAIN PLAINTIFF DID NOT RESUME FOOD DISPUTES UNTIL AFTER YOUNG'S TERMINATION.

DEFENDANTS STRATMAN AND CHRISTENSEN

CHRISTIANS ASSERTS HE PROPERLY EXHAUSTED ALL GRIEVANCES ACCORDING TO POLICY. THE MAIN ARGUMENT IS THE NOTICE OF REJECTION (EXHIBIT 28) STATING CHRISTIANS "DID NOT INCLUDE THE REQUIRED DISCIPLINARY REPORT AND DHO FINDINGS AND DISPOSITION." FIRST, CHRISTIANS STATES HE SUBSTANTIALLY FOLLOWS POLICY 1.3.E.2 AND IS VERY FAMILIAR WITH IT, SPECIFICALLY TURNING IN REQUIRED DOCUMENTS (CHRISTIANS AFFIDAVIT). SECOND, THE REQUEST FOR ADMINISTRATIVE REMEDY WAS RECEIVED BY KEITH DITMANSON ON 10/31/19, EIGHT (8) DAYS BEFORE THE ANSWER BY JESSICA COOK ON 11/7/19 (EXHIBITS 27, 28). IT'S NOT LIKELY A SENIOR STAFF MEMBER SUCH AS DITMANSON WOULD HAVE ACCEPTED A A.R. WITHOUT THE REQUIRED DOCUMENTS. AT MINIMUM IT CHANGED HANDS ONCE AFTER SUBMITTED BY CHRISTIANS, IT'S UNKNOWN HOW MANY TIMES THE DOCUMENTS WERE PASSED ALONG. DITMANSON LIKELY LOST OR DID NOT ATTACH THE DOCUMENTS CHRISTIANS SUBMITTED WHEN HE PASSED IT ON, BUT THIS COULD GO TO ANYONE WHO CAME INTO CONTACT WITH IT AFTER DITMANSON, INCLUDING COOK HERSELF, IF SHE MISPLACED THEM. THIRD, COOK HAS A HABIT OF REJECTING GRIEVANCES FOR IRRELEVANT REASONS, FOR REASONS THAT DON'T APPLY TO POLICY (MADE UP RULE), OR SHE DOESN'T ANSWER THEM AT ALL, SEE ARGUMENTS ABOVE, UNDER DEFENDANT YOUNG. SPECIFICALLY GRIEVANCES # 30010, 36852, 37671, 38790 IN WHICH COOK REJECTED OR SIMPLY DID NOT REPLY. DOZENS OF OTHER EXAMPLES OF COOK'S INEPTNESS ARE IN THE RECORD UPON REVIEW.

IN EXHIBIT 25, CHRISTIANS CLEARLY STATES (PAGE 3 BOTTOM) "NO STATEMENTS [WERE COLLECTED OR CONSIDERED BY DHO OFFICER STOCK] FROM WITNESS I REQUESTED THRU [HIS] STAFF REPRESENTATIVE [TYRE]." IN DAREK EKEREN'S RESPONSE

(EXHIBIT 26) HE STATES "[CHRISTIANS] DID NOT TAKE WRITEUP TO DHO." WHICH IS CLEARLY DISPUTED BY THE EVIDENCE (EXHIBIT 31). EKEREN DID NOT CALL CHRISTIANS IN TO DISCUSS THE GRIEVANCE TO "FULLY UNDERSTAND THE ISSUE" AS PER POLICY (SEE ABOVE), NOR DID HE CONSIDER CHRISTIANS STATEMENT OF NOT BEING ABLE TO USE REQUESTED WITNESSES. AS QUOTED IN HRBEK v. NIX, 12 F.3D 777 AT 780 "WOLFF SET OUT THE PROCEDURAL HEARING REQUIREMENTS FOR PRISON DISCIPLINE: AN INMATE IS ENTITLED (1) TO ADVANCE WRITTEN NOTICE ... (AND MORE); (2) TO CALL WITNESSES AND TO PRESENT DOCUMENTARY EVIDENCE IN HIS DEFENSE; AND (3) TO RECEIVE A WRITTEN STATEMENT ... (AND MORE). WOLFF v. MCDONNELL, 418 U.S. 539 AT 563-67. AS CHRISTIANS STATES IN EXHIBIT 27 "LT. LARSEN, CO PUDWELL, AND A NEW UNNAMED C.O" (FEMALE w/ NO NAME BADGE) COULD HAVE VERIFIED THE INCONSISTANT STATEMENTS FROM DURING THE EVENT, TO WHAT WAS WRITTEN BY BOTH CHRISTENSEN AND STRATMAN IN THE H-4 WRITE UPS, AS THE ABOVE WITNESSESS COULD HAVE TESTIFIED AT A DHO HEARING NANCY SAID [CHRISTIANS] PUSHED [HER] INTO THE DOOR WHEN [HE] RAN PAST." THIS IS QUITE DIFFERENT THAN GRABBING A ARM AND ATTEMPTING TO PUSH HER OUT OF THE WAY. WHY WOULD SHE LEAVE OUT BEING PUSHED INTO A DOOR AND RECLASSIFYING IT AS AN ATTEMPTED PUSH? ALSO THE SEQUENCE IS OFF. IN THE REPORT CHRISTENSEN SAID THERE WAS AN ATTEMPT TO PUSH, THEN CHRISTIANS SAT DOWN TO YELL FOR HELP, THEN RAN PAST AS SHE OPENED THE DOOR. ALL QUITE DIFFERENT OF WHAT SHE STATED IN FRONT OF WITNESSES OF BEING PUSHED INTO A DOOR. THOSE WITNESSES WERE NOT CALLED. CHRISTIANS DID NOT REQUEST SPECIFIC INMATE WITNESSES AS THERE WERE NONE BUT VERBALLY ASKED FOR LARSEN, PUDWELL, AND THE NEW FEMALE C.O. TO BE QUESTIONED. THOSE REQUESTS WERE MADE TO BOTH TYZC AND DHO HEARING OFFICER STOCK. IT WAS DENIED. CHRISTIANS DID NOT RECEIVE A FAIR AND IMPARTIAL HEARING WHERE HE WAS

ALLOWED TO CALL WITNESSES, HENCE THE VIOLATION FINDING GUILT WAS INVALID AND HIS RETALIATION CLAIM SHOULD REMAIN. IN OTHER WORDS THE "SOME EVIDENCE" STANDARD (USING STAFF MEMBER CLAIMS IN THIS CASE) IN FINDING OF GUILT ONLY APPLIES IF THE INMATE IS AFFORDED AND IT IS FOUND AT A "FAIR AND IMPARTIAL HEARING." WOLFF V. MCDONNELL; HARTSFIELD V. NICHOLS, 511 F.3D 826, 829-31 (8TH CIR. 2008)

IF THE CLAIM IS NOT ALLOWED, THE SYSTEM WOULD BE GIVING PERMISSION TO DEFENDANTS (AND FUTURE CORRECTIONAL STAFF) TO LOCK INMATES IN NON-CAMERA'D ROOMS WITHOUT OTHER REQUESTED WITNESSES AND MAKE ANY CLAIM OF RULES VIOLATION THEY WISH WHICH CAN BE BASED SOLEY ON THEIR REPORT. AS THE CASE HERE, IT IS UNDISPUTED BY BOTH PARTIES THE CHRISTIANS WAS BLOCKED FROM EXIT OF THE OFFICE (A NON CAMERA'D ROOM) AND THAT HE REQUESTED FOR WITNESSES TO WHATEVER EVENT MAY TRANSPIRE (COMPLAINT #140; EXHIBIT 25, 27) (CHRISTIANS REQUESTED THE PRESENCE OF WARDEN FLUKE, AN OIC OR AT MINIMUM TO BE IN FRONT OF A CAMERA)

NEXT, IN MADEWELL V. ROBERTS, 909 F.2D 1203 AT 1206-1207 - A. RETALIATION - "THIS COURT HAS RECOGNIZED THE ESTABLISHED RULE THAT 'AN ACT IN RETALIATION FOR THE EXERCISE OF A CONSTITUTIONALLY PROTECTED RIGHT IS ACTIONABLE UNDER SECTION 1983 EVEN IF THE ACT, WHEN TAKEN FOR A DIFFERENT REASON, WOULD HAVE BEEN PROPER.'" FREEMAN V. BLAIR, 793 F.2D 166, 178 (8TH CIR. 1986) IT IS UNDISPUTED THE "PAPERWORK" CHRISTIANS WAS IN POSSESSION OF WAS COPIES OF THE FOOD CONTRACT BETWEEN THE SDDOC AND CBM/SUMMIT AND GRIEVANCES OF CHRISTIANS HE WAS ATTEMPTING TO MAKE ADDITIONAL COPIES OF FOR A CIVIL SUIT. IT IS ALSO UNDISPUTED BOTH STRATMAN AND CHRISTENSEN DID NOT WANT PLAINTIFF TO RETAIN POSSESSION OF THE FUTURE CIVIL SUIT

EVIDENCE. AND ULTIMATELY IT WAS REMOVED FROM HIS POSSESSION AS HE WAS SENT TO THE SHU. THIS IN ITSELF IS RETALIATION. MADEWELL V. ROBERTS GOES ON TO SAY "WE EMPHASIZE THAT THE ALLEGED MANIFESTATIONS OF DEFENDANTS RETALIATION NEED NOT THEMSELVES AMOUNT TO CONSTITUTIONAL VIOLATIONS." SPENCER V. JACKSON COUNTY MO., 738 F.3D 907 (HEADING (11.) PARAGRAPH 3) SAYS "IT IS WELL ESTABLISHED THAT THE RIGHT TO FILE A LEGAL ACTION IS PROTECTED UNDER THE FIRST AMENDMENT. GOFF, 7 F.3D AT 736. ADVERSE ACTIONS WHICH MAY SHOW RETALIATION INCLUDE DENIAL OF PRIVILEGES. REVELS V. VINCENZ, 382 F.3D 870 AT 876 ETC. THE KEY QUESTION IS WHETHER THE ACTIONS WERE TAKEN IN RETALIATION FOR ENGAGING IN PROTECTED ACTIVITY." NOT ONLY IS THE FALSE CHARGE RETALIATORY, THE VERY ACT OF LOCKING THE PLAINTIFF IN A ROOM TO REMOVE HIS GRIEVANCES AND COURT DOCUMENTS FROM HIM WAS SPECIFICALLY DONE TO PREVENT HIM FROM ENGAGING IN THE PROTECTED ACTIVITY. THIS COULD BE FOUND TO BE AN "ADVERSE ACTION".

FOR ANY OF THE ABOVE REASONS WHEN LOOKED AT AS A WHOLE WITH PRIOR THREATS BY SPRATMAN TO "GET RID OF [CHRISTMAN]" BECAUSE OF HIS EXCESSIVE FOOD DISPUTES AND CHRISTENSEN'S VERY SPECIFIC THREAT TO KILL PLAINTIFF BY POISONING HIS COFFEE OR POWDERED MILK (AN COMMON COMMISSARY ITEM) CHRISTMAN ASKS THE COURT TO REVIEW MCCAULEY V. DORMIRE 245 FED. APPX. 565 WHERE CLAIMS WERE MADE TO "GET RID" OF PLAINTIFF IN CONNECTION TO FALSE DISCIPLINARY RETALIATION CLAIMS. CITED BY: BENSON V. PIPER, 2019 WL 2017319 AT *8 (AND PRIOR TO) CONSIDERING STATEMENTS OF DEFENDANTS SAYING "WE'LL MAKE YOUR LIFE HELL" PRIOR TO THE FILING OF A FALSE DISCIPLINARY REPORT WHERE QUALIFIED IMMUNITY WAS DENIED. AS HERE WITH CHRISTMAN, SIMILAR THREATS WERE MADE JUST PRIOR TO THE FALSE-DISCIPLANARY CHARGE AND CHRISTMAN'S REFUSAL TO TURN OVER HIS LEGAL DOCUMENTS IMMEDIATELY PRIOR TO THE

DISCIPLINARY ACTION ALL SUGGEST ~~[illegible]~~ RETALIATION WHERE QUALIFIED IMMUNITY SHOULD BE DENIED.

APRIL 25, 2020 - PROHIBITED ACT H-7

CHRISTMANS ASSERTS ALL ADMINISTRATIVE REMEDIES WERE EXHAUSTED TO THE HIGHEST LEVEL AS WAS AVAILABLE, (IRR, A.R. APPEAL TO SEC. #35495/35485 SUBMITTED) THESE WERE FILED OUTSIDE THE 30-DAY TIME FRAME PER POLICY HOWEVER, CHRISTMANS MAINTAINS HE WAS NOT AWARE OF CONVICTION UNTIL FEBRUARY 2021. (CHRISTMANS DECLARATION AND AS PREVIOUSLY STATED IN GRIEVANCES) HE ONLY BECAME AWARE AFTER LEARNING OF INELGIBILITY FOR A REQUESTED JOB DUE SPECIFICALLY BECAUSE OF THE "RECENT CONVICTION" MAKING HIM INELGIBLE FOR TWO YEARS BEYOND THE CONVICTION DATE. CHRISTMANS IMMEDIATELY UPON LEARNING THIS, FILED GRIEVANCES IN RECORD, AFTER A VERBAL DENIAL FROM JESSICA COOK ON 2/23/2021.

CHRISTMANS POINTS TO LINN v. ANDREWS, 2018 WL 3614994 AT *7 WHERE AS SIMILAR TO HERE, THE PLAINTIFF ONLY BECAME AWARE OF RETALIATORY DISCIPLINARY AFTER THE (15 DAY) TIME TO FILE A GRIEVANCE, HOWEVER THE GRIEVANCE WAS FILED WITHIN 15 DAYS OF THE DATE HE BECAME AWARE OF THE ISSUE, AS STATED IN ALL GRIEVANCES AND A SWORN STATEMENT IN CIVIL ACTION 4:22-CV-04072-LLP CHRISTMANS PLED NOT GUILTY AND ASKED FOR A DHO HEARING. THIS WAS NOT GRANTED AND INSTEAD UNIT MANAGER DITMANSON TOLD CHRISTMANS THE CHARGES WOULD BE DISMISSED AND HE WAS RELEASED FROM THE SHU. IT WASN'T UNTIL MUCH LATER WITH INQUIRY ABOUT A DIFFERENT TOPIC THAT CHRISTMANS BECAME AWARE (AS IN LINN v. ANDREWS WHERE SUMMARY JUDGMENT WAS DENIED FOR SAME REASON)

THE EXHIBITS DEFENDANT ATTACH ARE INCOMPLETE, CONTRADICTING TO OTHER READILY AVAILABLE DOCUMENTS AT THEIR DISPOSAL (WHICH THEY DID NOT PROVIDE), IN DISPUTE

WITH PLAINTIFFS TESTIMONY (SWORN AND PREVIOUS GRIEVANCES) AND POTENTIALLY FORGED OR FALSIFIED AS WILL BE DESCRIBED.

CHRISTIANS FULLY DENIES ADMITTING TO THIS ALLEGATION AND FURTHER DISPUTES THE "SOME EVIDENCE" CLAIM AS THEIR IS ABSOLUTELY NONE IN EXISTANCE OR THAT HAS BEEN PROVIDED TO PLAINTIFF.

FIRST, AS STATED IN THE RESPONSE TO STATEMENT OF FACTS, EXHIBIT 32 SHOWS A UNIT DISCIPLINARY HEARING DATE OF 4/27/2020 CONDUCTED BY DITMANSON, K WHERE A GUILTY PLEA WAS ENTERED. THIS IS A FULL EIGHT DAYS BEFORE CHRISTIANS SUPPOSEDLY ACCEPTED AN OFFER OF 15 DAYS SANCTIONS ON 5/04/2020. (SEE DOCUMENT TITLED "DISCIPLINARY - YOUR RIGHTS" SUBMITTED WITH THIS FILING BY PLAINTIFF) THE DEFENSE OMITTED THIS DOCUMENT. CHRISTIANS BECAME IN POSSESSION OF IT IN FEBRUARY 2021 AND AGAIN JUST RECENTLY. WITHOUT A VERY GOOD EXPLANATION, THIS IS FRAUDULENT TO AT LEAST SOME DEGREE. IT WOULD HAVE BEEN IMPOSSIBLE FOR DITMANSON TO ENTER A PLEA OF GUILTY ON 4/27/2020 WHEN CLEARLY NO PLEA WAS SUPPOSEDLY ACCEPTED UNTIL 5/04/2020. ADDITIONALLY, IN EXHIBIT 32, THE COMMENTS SECTION SAYS "READ REPORTS" WHICH ALSO WERE NOT SUBMITTED AND PLAINTIFF HAS BEEN DENIED ACCESS.

IMPORTANTLY, THE OFFER SUPPOSEDLY ACCEPTED BY CHRISTIANS ON 5/04/2020 IS NOT SIGNED BY HIM OR DITMANSON. WELL ABOVE THE "INMATE SIGNATURE / PRINT NAME" LINE STATES "INMATE ACCEPTED OFFER / UNABLE TO SIGN." IF DITMANSON HAD CONDUCTED A UNIT DISCIPLINARY HEARING WITH CHRISTIANS PRESENT, THERE COULD NOT POSSIBLY BE ANYTHING PREVENTING CHRISTIANS FROM SIGNING THE DOCUMENT PHYSICALLY OR FOR THAT MATTER DITMANSON HIMSELF (AS OPPOSED TO THE TYPED SIGNATURE ON THE DOCUMENT PROVIDED BY PLAINTIFF). THIS IS NOT JUST ALL HIGHLY SUSPECT, BUT

PROBABLY FALSIFIED AND FRADULENT TO SOME DEGREE. THESE UNDISPUTED FACTS IN CONJUNCTION WITH CHRISTIANS SWORN STATEMENTS AND DENIALS AND HIS CONSISTENT STATEMENTS IN THE SUPPLIED GRIEVANCES IS ENOUGH TO SHOW PROPER EXHAUSTION AND DENY QUALIFIED IMMUNITY TO THIS ISSUE, AND AT VERY LEAST A DISPUTE OF MATERIAL FACT.

AS TO ANY CLAIM OF "SOME EVIDENCE" PROVIDED IT CANNOT BE CONSIDERED DUE TO THE FACT THERE WAS NO DHO HEARING GIVEN AND CHRISTIANS DID NOT PLEAD GUILTY. THIS BEING FACTUAL, THE ONLY EVIDENCE THAT COULD HAVE BEEN PRESENTED WOULD BE WYNIA'S "BELIEF" THAT CHRISTIANS WAS SOMEHOW INVOLVED. THERE IS NO CONFIDENTIAL INFORMANT PINPOINTING CHRISTIANS (WHICH WOULD BE A SEPERATE ISSUE FOR PLAINTIFF TO DEFEND IF THAT WAS THE CLAIM), THERE IS NO VIDEO OF CHRISTIANS CONSPIRING WITH OTHERS THAT MAY HAVE BEEN INVOLVED (OR CLAIMS OF SUCH), NOR IS THERE ANY EVIDENCE CHRISTIANS PARTICIPATED IN SAID "GROUP FOOD/HUNGAR STRIKE" AS CHRISTIANS MAINTAINS HE CONTINUED TO EAT DURING THIS TIME FRAME (NO DOC/DOH DOCUMENTATION OF CHRISTIANS NOT EATING) AND TO THIS POINT, THERE COULD NOT POSSIBLY BE ANY EVIDENCE CONNECTING CHRISTIANS TO THIS H-7 ACCUSATION BEYOND WHAT WAS SAID BY CATHY WYNIA IN THE S.I.U. INTERVIEW AND DARRIN YOUNG'S STATEMENTS THAT CHRISTIANS HAD TO BE INVOLVED DUE TO HIS FOOD GRIEVANCES/ISSUES (LAWSUIT) (SEE COMPLAINT #141) BECAUSE NO EVIDENCE HAS EVER EXISTED.

INJUNCTIVE RELIEF

CHRISTIANS HAS SUBMITTED SUFFICENT EVIDENCE AT THIS POINT TO BE ENTITLED TO INJUNCTIVE RELIEF. ALL DONE WITHOUT ONE OUNCE OF REQUESTED DISCOVERY, HIS OWN EXPERT OR THE ABILITY

TO DO PERSONAL RESEARCH (COULD ONLY MAKE PHONE CALLS TO FRIENDS/FAMILY TO GET MATERIALS ALREADY AWARE OF, WRITE LETTERS TO ORGANIZATIONS FOR MATERIALS) WHICH WAS LIMITED. HE HAS PROVIDED ACTUAL NUTRIENT ANALYSIS THROUGH DETAILED FOOD JOURNALS SPANNING YEARS (PORTIONS SUBMITTED) WITH ACCURATE DATA DIRECTLY FROM FOOD LABLES USED BY CONTRACTORS AND USDA NUTRITIVE VALUE OF FOODS REPORT. AN EXPERT (DR. GUTNIK) STATING "[CHRISTMANS] NEEDS MORE PROTEIN, NO DOUBT ABOUT THAT." (WITH AN ORDER FOR THE SAME) THIS WAS STATED REGARDLESS OF DISPUTES OVER CELIAC STATEMENTS. CELIAC OR NO CHRISTMANS NEEDED MORE PROTEIN. (ORDER RECENTLY REMOVED AT REQUEST OF A CORRECTIONS OFFICER) IN CHRISTMANS' FOOD JOURNAL NUTRIENT ANALYSIS WAS SHOWN DAILY CALORIES OF SUBSTANTIALLY LESS THAN 2000 (A DAY) AND AS LOW AS 1225 FOR DECEMBER 30, 2021 AND RECENTLY 1135 FOR THE DAY OF FEBRUARY 28, 2023 OF NUTRITIOUS FOODS. ALSO PROVIDED BY PLAINTIFF THE "APPROVED MENU" OF SEVERAL DIFFERENT PERIODS PERTAINING TO THE INADEQUATE NUTRITION. EVIDENCE WAS SUBMITTED THROUGH TESTIMONY OF OVER A DOZEN INMATES ABOUT THE PORTIONS NOT BEING SERVED TO MENU SPECIFICATIONS (AND GRIEVANCES). IN THE RECORD IS MENTION OF "GOOD MUSCLE TONE" TO "EXCELLENT" SHOWING LOW BODY FAT COMPOSITION (REGARDLESS OF LISTED WEIGHT). BY LOSING 90 POUNDS IN A SINGLE STRETCH THERE CAN BE NO LEGITIMATE ARGUMENT THAT THE SIGNIFICANT PORTION OF THAT WEIGHT LOSS WAS DUE TO MUSCLE ATROPHY BASED ON CHRISTMANS' LOW BODY FAT THROUGHOUT. EVEN AT CHRISTMANS CURRENT WEIGHT AND HEIGHT AND ACTIVITY LEVEL, IT HAS BEEN PRESENTED HE WOULD NEED OVER 4400 CALORIES A DAY TO MAINTAIN WEIGHT. THIS IS THROUGH COURT RECOGNIZED SCIENTIFIC EQUATIONS AND A GOVERNMENT SUPPLIED WEBSITE FOR "HEALTHCARE PROFESSIONALS."

IT IS UNDISPUTED THE "INDEPENDANT" DIETICIANS HIRED BY THE STATE BOTH BASE THERE INFORMATION BASE FROM THE DIETARY GUIDELINES. THESE DIETICIANS ARE MEMBERS OF THE AMERICAN CORRECTIONAL ASSOCIATION (ACA) OR THE NCCHC WHO HAVE

NUTRITION POLICIES BASED ON THE USDA, DIETARY GUIDELINES OR MY PLATE GUIDE, IN TURN THE SDDOC AND DOH HAVE ADOPTED POLICIES BASED ON THESE ORGANIZATIONS AND GUIDELINES (INMATE WELLNESS AND HEALTHY LIFESTYLE PROMOTION). THERE IS EVIDENCE IN RECORD SHOWING THE GUIDELINES ARE NOT EVEN REMOTELY BEING FOLLOWED. THE COURT DOES NOT NEED TO RELY ON CHRISTMANS' CLAIMS HERE AS JUST A CURSORY REVIEW (DIETARY GUIDELINES PG. 96) OF THE FOOD CONTRACTORS APPROVED MENU SHOWS UNDOUBTABLY ONLY ABOUT HALF THE OVERALL FOODS ARE BEING PROVIDED TO MEET DAILY CALORIE GOALS. THIS ALSO SUPPORTS CHRISTMANS FOOD JOURNALS' CALORIE COUNTS OF ABOUT HALF OF WHAT IS CLAIMED TO BE PROVIDED. ACCORDING TO CONTRACT AND POLICY THE GUIDELINES ARE TO BE THE BASIS OF THE INMATE NUTRITIONAL STANDARD. "IT IS NOT NECESSARY THAT A PRISON OFFICAL BE AWARE OF THE PRECISE CONSEQUENSES, BUT THAT THE OFFICIAL BE AWARE OF 'FACTS FROM WHICH THE INFERENCE COULD BE DRAWN THAT A SUBSTANTIAL RISK OF HARM EXISTS.'" SMITH v. BRENOETTSY, 158 F.3D 908 (5TH CIR. 1998)

"THE NATIONAL ACADEMY OF SCIENCES WAS CREATED BY CONGRESS AS A SEMI-PRIVATE ORGANIZATION FOR THE EXPLICIT PURPOSE OF FURNISHING ADVICE TO THE GOVERNMENT." PUBLIC CITIZEN v. U.S. DEPT. OF JUSTICE, 491 U.S. 440, 109 S.CT. 2558, 105 L.ED.2D 377, 57 USLW 4793 (S.CT. 1989). UNDER 7 U.S.C.A. SECTION 5341, (a)(2) - ESTABLISHMENT OF DIETARY GUIDELINES - "THE INFORMATION AND GUIDELINES CONTAINED IN EACH REPORT REQUIRED UNDER PARAGRAPH (1) SHALL BE BASED ON THE PREPONDERERANCE OF THE SCIENTIFIC AND MEDICAL KNOWLEDGE WHICH IS CURRENT AT THE TIME..." LOMBARDO v. HANDLER, 397 F.SUPP. 792, 8 ERC 1084, 6 ENVTL. L. REP. 20,046 AT *798 SAYS "COMMITTEES OF THE NATIONAL ACADEMIES... ARE UTILIZED AND OFFICIALLY RECOGNIZED AS ADVISORY TO THE PRESIDENT, TO AN AGENCY, OR TO A GOVERNMENT OFFICIAL." AT *799 "THE NATIONAL ACADEMY OF SCIENCES WAS FOUNDED BY CONGRESS" AT FOOTNOTE 3 SAYING "36 U.S.C

SECTION 252 'THE NATIONAL ACADEMY OF SCIENCES SHALL HAVE POWER ... TO REPORT ... TO CONGRESS.'" AT FOOTNOTE 4 "36 U.S.C. SECTION 253 'THE NATIONAL ACADEMY OF SCIENCES SHALL... WHENEVER CALLED UPON BY ANY DEPARTMENT OF THE GOVERNMENT, INVESTIGATE, EXAMINE, EXPERIMENT, AND REPORT UPON ANY SUBJECT OF SCIENCE OR ART...'" IN EMERY V. HELDER, 2018 WL 715463 AT *2 SAYING "GUIDELINES OF THE AMERICAN CORRECTIONAL ASSOCIATION (ACA) AND THE FOOD AND NUTRITION BOARD OF THE INSTITUTE OF MEDICINE, NATIONAL ACADEMY OF SCIENCES, DIETARY GUIDELINES."

NOW, ACCORDING TO THE USDA DIETARY GUIDELINES ON PAGE vii "THE STATUTE (PUBLIC LAW 101-445, 7 UNITED STATES CODE 5341 ET SEQ) REQUIRES THAT THE DIETARY GUIDELINES BE BASED ON THE PREPONDERANCE OF CURRENT SCIENTIFIC AND MEDICAL KNOWLEDGE." AND PAGE viii "ALSO BASIS FOR FEDERAL NUTRITION EDUCATION... COMPONENTS OF THE USDA AND HHS NUTRITION PROGRAMS." ON PAGE 7, "THE DIETARY GUIDELINES TRANSLATES THE CURRENT SCIENCE ON DIET AND HEALTH INTO GUIDANCE TO HELP PEOPLE CHOOSE ... THE 'WHAT' AND 'HOW MUCH' OF FOODS AND BEVERAGES TO CONSUME TO ACHIEVE GOOD HEALTH, REDUCE RISK OF DIET-RELATED CHRONIC DISEASES AND MEET NUTRIENT NEEDS." "NUTRIENT REQUIREMENTS ARE ESTABLISHED AND UPDATED BY THE NATIONAL ACADEMIES OF SCIENCES, ENGINEERING, AND MEDICINE." "THE DIETARY GUIDELINES TRANSLATES THE ACADEMIES' NUTRIENT REQUIREMENTS INTO FOOD AND BEVERAGE RECOMMENDATIONS." IN OTHER WORDS, IF THE ACADEMY SAYS A PARTICULAR INDIVIDUAL BASED ON HIS BIOMETRICAL NEEDS/DATA NEED A SET NUMBER OF CALORIES, THE DIETARY GUIDELINES SHOWS WHAT IS TO BE CONSUMED TO MEET THOSE CALORIE REQUIREMENTS IN A BALANCED, HEALTHY

MANNER. ALSO ON PAGE 7 "AT IT'S CORE, THE DIETARY GUIDELINES HAS A PUBLIC HEALTH MISSION - THAT IS HEALTH PROMOTION AND DISEASE PREVENTION." "THE GUIDELINES MUST BE GROUNDED IN THE BODY OF SCIENTIFIC AND MEDICAL KNOWLEDGE AVAILABLE AT THAT TIME, NOT IN INDIVIDUAL STUDIES OR INDIVIDUAL EXPERT OPINION. IN ESTABLISHING THE PROCESS FOR THE 2020-2025 DIETARY GUIDELINES, USDA AND HHS CONSIDERED AND INTEGRATED RECOMMENDATIONS FROM A COMPREHENSIVE 2017 NATIONAL ACADEMIES' STUDY. TO PAGE 8, "ENSURE THE SCIENTIF REVIEW CONDUCTED BY THE COMMITTEE WOULD ADDRESS FEDERAL NUTRITION POLICY." "IN CONSULTATION WITH AGENCIES ACROSS THE FEDERAL GOVERNMENT, USDA AND HHS IDENTIFIED POTENTIAL TOPICS AND SUPPORTING SCIENTIFIC QUESTIONS THAT WERE OF GREATEST IMPORTANCE AND RELEVANCE TO FEDERAL NUTRITION PROGRAMS, POLICIES, AND CONSUMER EDUCATION PRIORITIES." "THE USE OF A FEDERAL ADVISORY COMMITTEE IS A COMMONLY USED BEST PRACTICE TO ENSURE THE FEDERAL GOVERNMENT SEEKS SOUND, EXTERNAL SCIENTIFIC ADVICE TO INFORM DECISIONS." AND PAGE 9, "THE 2020 COMMITTEE USED THREE STATE-OF-THE-ART APPROACHES TO CONDUCT ITS ROBUST AND RIGOROUS REVIEWS: DATA ANALYSIS. NUTRITION EVIDENCE SYSTEMATIC REVIEW (NESR); USDA'S (NESR) IS A TEAM OF SCIENTISTS WHO SPECIALIZE IN CONDUCTING SYSTEMATIC REVIEWS FOCUSED ON NUTRITION AND DISEASE PREVENTION AND EVALUATING SCIENTIFIC EVIDENCE ON NUTRITION TOPICS RELEVANT TO FEDERAL POLICY AND PROGRAMS; FOOD PATTERN MODELING; THE COMMITTEE USED THIS METHOD TO ASSESS POTENTIAL CHANGES TO THE USDA DIETARY PATTERNS WHICH HELP MEET THE DRI'S SET BY THE NATIONAL ACADEMIES." LASTLY ON PAGE 12 "THE WRITING TEAM INCLUDED FEDERAL NUTRITION SCIENTISTS WITH EXPERTISE IN THE DIETARY GUIDELINES AND RELATED RESEARCH AND PROGRAMS." "THE DIETARY GUIDELINES ... WAS REVIEWED BY ALL AGENCIES WITH

NUTRITION POLICIES AND PROGRAMS ACROSS USDA AND HHS, SUCH AS USDA'S FOOD AND NUTRITION SERVICE AND IT'S FOOD SAFTEY AND INSPECTION SERVICE, AND HHS' NATIONAL INSTITUTES OF HEALTH (NIH RECOGNIZED BY COURTS), FOOD AND DRUG ADMINISTRATION, AND CENTER FOR DISEASE CONTROL AND PREVENTION." "THIS PROCESS CULMINATED WITH APPROVAL BY THE SECRETARIES OF USDA AND HHS."

AS STATED, JUST A CURSORY REVIEW OF SUPPLIED APPROVED MENUS DO NOT COME EVEN SUBSTANTIALLY CLOSE TO THE STANDARDS SET ON PAGE 96 OF THE DIETARY GUIDELINES, AND TO REMIND PARTIES THAT IS FOR A REFERANCE MALE OF 154 POUNDS. ALSO TO REMEMBER PORTIONS ARE CONSISTANTLY SHORT OF THE SET MENU FOR EVEN FURTHER REDUCED NUTRITION.

TO MAKE AN ADDITIONAL POINT TO EXHIBITS 34 AND 35, WHICH THE VALIDITY OF THESE DOCUMENTS HAS BEEN ARGUED ABOVE (BY OFFERING NO BASIS WHAT THE DATA IS BASED ON [I.E. MENU FOODS], OR VERIFYING SERVED MENU OR ADHERANCE TO MENU), CHRISTIANS WOULD REFER TO EXHIBIT 34, THURSDAY, DINNER AND THE PROTEIN OF 64.4 GRAMS PROVIDED FOR THAT INDIVIDUAL MEAL. PLEASE NOW REVIEW SUBMITTED (PRIOR AND WITH THIS FILING) DOCUMENT FOOD LABEL, OBTAINED DIRECTLY FROM THE JAMESON KITCHEN, "DIETZ & WATSON GOURMET LITE BREAST OF TURKEY." UNDER "NUTRITION FACTS" - SERVING SIZE 2 SLICES (56g/2oz) - WHICH PROVIDES 11 GRAMS OF PROTEIN, AT 50 CALORIES. THIS IS A TYPICAL SERVING OF MEAT/PROTEIN AS PER MENU SET BY DIETICIAN AS CAN BE SEEN. NOW IMPORTANTLY, THIS MAIN PORTION OF ANY GIVEN LUNCH OR DINNER PROVIDES A MERE 11 GRAMS OF PROTEIN AND THE EXAMPLE IN EXHIBIT 34 SHOWS 64.4 GRAMS IS PROVIDED. THIS "EXPERT DIETICIAN" IS TRYING TO SUGGEST THAT THE REMAINING 53.4 GRAMS OF PROTEIN UNACCOUNTED FOR IS COMING FROM A SMALL PORTION OF VEGETABLES, A SMALL BISCUIT, AND A CAKE. THIS MAKES ABSOLUTELY NO NUTRITIONAL SENSE. ANY LAY PERSON REASONABLY KNOWS THE VAST MAJORITY OF PROTEIN

IN A TYPICAL DIET COMES FROM MEAT AND VERY LITTLE IS PROVIDED BY OTHER FOODS (GENERALLY); ALSO FOR THE SAME EXAMPLE LISTING 1278 CALORIES FOR THAT SINGLE DINNER MEAL WHEN THE MAIN PORTION OF MEAT ACCOUNTS FOR ONLY 50 CALORIES, NO REASON DIETICIAN (OR LAY PERSON) COULD ASSUME THE REMAINING 1228 CALORIES WOULD BE PROVIDED BY A SMALL PORTION OF VEGETABLES, A BISCUIT AND A PIECE OF CAKE (AS MENUS INDICATE). ABSOLUTELY LUDACRIS! THE DEFENDANTS' "EVIDENCE" ARE INVENTIONS OF THE IMAGINATION, AND NOT GROUNDED IN SCIENTIFIC EVIDENCE.

CHRISTMANS WEIGHT HAS FLUCUATED BUT ONLY SHOWS HIS ACCESS TO AVAILABLE CALORIES AND PROTEIN SOURCES AT GIVEN TIMES, MOST RECENTLY IN 2023 WHEN CHRISTMANS PROTEIN SNACK WAS TERMINATED AND COMMISSARY PURCHASES LIMITED SUBSTANTIALLY, HE LOST MUSCLE AGAIN, WHICH HE SPENT PRIOR YEARS TRYING TO GAIN BACK THROUGH HARD WORK, (SEE RECORD OF 50 POUND WEIGHT LOSS); AND NOTHING CAN CAST DOUBT ON THE ORIGINAL 90 POUND LOST OF MUSCLE.

CHRISTMANS, WHEN IT WAS NOTICED, HAS ALWAYS COMPLAINED OF GLOBAL MUSCLE LOSS AS POINTED OUT BY THIS COURT IN THE FIRST SUMMARY JUDGMENT. THE SINGLE INSTANCE OF MUSCLE/STRENGTH LOSS IN THE LEFT ARM WAS QUITE OBVIOUSLY DUE TO THE NECK INJURY/NERVE DAMAGE AND ANY CLAIMS OF FEELING STRONG IN THE LOWER BODY WAS IN COMPARISON TO THE NECK INJURY ONLY AFFECTING THE ARM AS OPPOSED TO LOSING STRENGTH IN THE LEGS DUE TO THE INJURY.

THERE ARE OBVIOUS ATTEMPTS TO COVER UP ANY INADEQUATE NUTRITION CLAIMS AS POSED BY INMATES. (BOGUS "EVIDENCE," NOT SUPPLYING PLAINTIFF OR COURT WITH REQUESTED NUTRITIONAL ANALYSIS REPORTS DIETICIANS CLAIM TO USE AND DENIED POSSESSION OF BY DEFENDANTS/ATTORNEY, AND OUTRIGHT PERJURED TESTIMONY BY ONE OF THE

DOC'S TOP OFFICIALS CLAIMING SDDOC STAFF DOES NOT ENTER KITCHEN TO RETRIEVE FOOD FOR INMATES AND ARE NOT AUTHORIZED TO DO SO [WHEN UNREFUTED VIDEO WOULD SHOW OTHERWISE]).

THERE IS A CONSTITUTIONAL VIOLATION, PROVEN BY AN INMATE WITH LITTLE RESEARCH ACCESS AND AVAILABLE RESOURCES WHICH CAN SHOW MUCH MORE, AND AN INJUNCTION IS THE ONLY RELIEF THAT CAN CORRECT THE VIOLATIONS OF DEFENDANTS.

THE FACT SUMMIT IS NO LONGER THE CONTRACTOR IS A MOOT POINT. CHRISTIANS ASKS FOR THE CONTRACT TO BE ENFORCED NOT NECESSARILY TO WHO THE CONTRACTOR IS. ADDITIONALLY, THE EXACT SAME CONTRACT IS USED FOR ARAMARK WHICH IS NOT BEING ADHERED TO.

WHEREFORE, PLAINTIFF WOULD RESPECTFULLY REQUEST THE DEFENDANTS MOTION FOR SUMMARY JUDGMENT BE DENIED IN FULL, THAT THEY ARE NOT ENTITLED TO QUALIFIED IMMUNITY, THE SECOND AMENDED COMPLAINT BE SET FOR TRIAL AND THE GRANTING OF REQUESTED INJUNCTIVE RELIEF FOR PRIOR AND ONGOING CONSTITUTIONAL VIOLATIONS.

DATED THIS 19TH DAY OF FEBRUARY 2024.

[signature]

MARK CHRISTIANS #35285
SOUTH DAKOTA STATE PENITENTIARY
PO BOX 5911
SIOUX FALLS, SD 57117

SUPPLEMENTAL AMENDMENT: IF THE COURT DEEM INJUNCTIVE RELIEF UNNECESSARY, PLAINTIFF WOULD RESPECTFULLY REQUEST A HEARING TO CLARIFY ARGUMENT AND EVIDENCE. PLEASE MAKE NOTE OF GRAVES V. ARPAIO, 623 F.3D 1043 (9TH CIR. 2010) 2010 WL 3987721 AT *1050-51 IN REFERENCE TO DIETARY GUIDELINES FOR AMERICANS.

SUPPLEMENTAL ARGUEMENT TO H-7 VIOLATION

MOORE v. PLASTER, 266 F.3D 928 OVERRULED → "THE RECORD FAILED TO CONTAIN "SOME EVIDENCE" THAT THE DISCIPLINARY ACTIONS TAKEN AGAINST THE INMATE WERE FOR ACTUAL VIOLATIONS OF PRISON RULES. DEFENDANT EVIDENCE WHICH WAS CONCLUSORY STATEMENTS, WITHOUT MORE, DID NOT CONSTITUTE "SOME EVIDENCE" OF THE INMATE'S HAVING VIOLATED PRISON RULES, ESPECIALLY IN LIGHT OF HIS CLAIM THAT THE INVESTIGATOR TOLD HIM THAT THE CHARGES WHERE IN RETALIATION FOR HIS GRIEVANCES AND CIVIL ACTION AGAINST THE INVESTIGATOR."

THE SAME IS TRUE HERE, WYNIA'S STATEMENT IN HER WRITE-UP IS CONCLUSORY STATING HER "BELIEF" CHRISTIANS COMMITTED AN INFRACTION, POINTS TO NO EVIDENCE RELIED ON FROM AN INVESTIGATION, AND PROVIDES EVEN LESS EVIDENCE THAN THAT OF THE INVESTIGATOR IN MOORE v. PLASTER AT *931 UNDER "RETALIATORY DISCIPLINE CLAIMS," "THE REPORT IS ONLY AN ACCUSATION, DOES NOT GIVE THE NAMES OF ANY WITNESSES, AND NOT BASED ON PERSONAL KNOWLEDGE." AND AT *932.

HERE, ONLY THREE THINGS WERE ASKED OF CHRISTIANS. HIS "EXCESSIVE FILING OF FOOD GRIEVANCES," HIS CIVIL SUIT OF THE SAME (NOT YET SCREENED BY THIS COURT), AND HIS SUPPOSED PRESENCE AT AN INMATE MEETING IN THE YARD CAUGHT ON VIDEO. THERE IS NO VIDEO EVIDENCE OF CHRISTIANS AT THIS "NIGHT REC MEETING" AND PLAINTIFF DENIES KNOWLEDGE OR PRESENCE AT SUCH MEETING. SO THERE IS ONLY CHRISTIANS' PROPERLY SUBMITTED GRIEVANCES AND STATEMENTS FROM YOUNG AND COOK ALLEGING CHRISTIANS' INVOLVEMENT DUE TO THE FILING OF FOOD ISSUES. THIS CANNOT BE CONSIDERED "SOME EVIDENCE" BUT IS CLEARLY RETALIATION.

DATED THIS 19TH DAY OF FEBRUARY 2024.

MARK CHRISTIANS #35285
SOUTH DAKOTA STATE PENITENTIARY
PO BOX 5911
SIOUX FALLS, SD 57117