UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARK CHRISTIANS, | 4:20-CV-04083-LLP |
| Plaintiff, | |
| vs. | ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT REGARDING NEWLY ADDED CLAIMS AND DEFENDANTS |
| DARRIN YOUNG, in his individual capacity; DAN SULLIVAN, in his official capacity; TROY PONTO, Deputy Warden SDSP, individual and official capacity; JESSICA COOK, Associate Warden SDSP/Jameson, individual and official capacity; BRENT FLUKE, Warden MDSP, individual and official capacity; REBECCA SCHIEFFER, Associate Warden MDSP, individual and official capacity; ALEX REYES, Associate Warden MDSP, individual and official capacity; CODY HANSON, Unit Manager Jameson, individual and official capacity; SETH HUGHES, Unit Manager Jameson, individual and official capacity; NANCY CHRISTENSEN, Unit Manager MDSP, individual and official capacity; DEREK EKEREN, Unit Coordinator Jameson, individual and official capacity; DEB EILERS, Unit Coordinator MDSP, individual and official capacity; LAURIE STRATMAN, Unit Coordinator MDSP, individual and official capacity; JULIE STEVENS, Case Manager MDSP, individual and official capacity; CRAIG MOUSEL, Property Officer, SDSP, individual and official capacity; MIKE LEIDHOLT, individual capacity; KELLIE WASKO, official capacity, PECHOUS, Unit Coordinator, individual and official capacity; GENIE BIRCH, Program Manager, individual and official capacity; GREASMAN, Correctional Officer, individual and official capacity; DAWN ALUMBAUGH, Correctional Officer, individual and official capacity; MARJAMA, | |

| | |
|---|---|
| Correctional Officer, individual and official capacity; WINTERS, Correctional Officer, individual and official capacity; PADILLA, Correctional Officer, individual and official capacity; MULLINS, Correctional Officer, individual and official capacity; HULSCHER, Correctional Officer, individual and official capacity; DREISKE, Former Deputy Warden, individual capacity; BECKER, Lieutenant, individual and official capacity; HETTIG, Lieutenant, individual and official capacity; SORENSON, Lieutenant, individual and official capacity; PERRET, Lieutenant, individual and official capacity, | |
| Defendants. | . |

Plaintiff, Mark Christians, an inmate at the South Dakota State Penitentiary ("SDSP"), filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Doc. 1. Pending before the Court is a motion for summary judgment filed by defendants Pechous, Genie Birch, Greasman, Alumbaugh, Marjama, Winters, Padilla, Mullins, Hulscher, Dreiske,[1] Becker, Hettig, Sorenson, Perret, Young, Christensen, and Stratman ("Newly Added Defendants"). Doc. 239. Christians opposes this motion. Docs. 273, 274-280, 282, 285, 289, 293, 311. For the following reasons, this Court grants in part and denies in part the pending motion for summary judgment.

## PROCEDURAL BACKGROUND

Christians alleges an Eighth Amendment conditions of confinement claim against current and former employees of the Department of Corrections ("DOC"), contending that he lost over 90 pounds from March 2017 to August 13, 2018, because of inadequate nutrition. Doc. 26 ¶ 36.

---

[1] In his Second Amended Complaint, Christians named Driskie, a former deputy warden at SDSP, in his or her official capacity. Doc. 83 ¶ 32(D). The correct spelling of this defendant's name is Dreiske. Doc. 188. The Court will refer to this defendant using the correct spelling.

2

This Court entered a Rule 16 Scheduling Order providing that the parties shall have until December 13, 2021, to move to amend the pleadings and requiring that all motions, other than motions in limine, be filed no later than April 12, 2022. Doc. 78. Christians timely moved for leave to file a second amended complaint. Doc. 79. DOC defendants Darin Young, Tony Ponto, Jessica Cook, Brent Fluke, Rebecca Schieffer, Alex Reyes, Cody Hanson, Seth Hughes, Nancy Christensen, Derek Ekeren, Deb Eilers, Laurie Stratman, Julie Stevens, Craig Mousel, Dr. Mary Carpenter, Dr. Shamin Sultana, Dr. Karissa Zimmer, Amber Gitchel, Mike Leidholt, and Rachel Depree moved for summary judgment. Doc. 98. The Court denied the DOC defendants' motion for summary judgment on Christians' Eighth Amendment inadequate nutrition claim "[b]ecause genuine questions of material fact remain regarding Christians' caloric intake, the cause of his weight loss and other adverse health effects, and the DOC Defendants' response to these alleged issues[.]" Doc. 147 at 43. The Court granted the DOC defendants' motion for summary judgment on the other pending claims against the DOC Defendants. *See generally id.*

Although the Court denied in part the DOC Defendants' motion for summary judgment, the Court did not schedule the remaining claims for trial because the Court granted, in part, Christians' motion for leave to file second amended complaint. *Id.* at 51–57. Specifically, the Court granted Christians leave to bring inadequate nutrition claims against new defendants (Pechous, Genie Birch, Greasman, Dawn Alumbaugh, Barnetche[2], Marjama, Winters, Padilla, Mullins, Hulscher, Dreiske, Becker, Hettig, Sorenson, and Perret, all of whom are DOC employees). *Id.* at 51–53. The Court also permitted Christians to bring new First Amendment retaliation claims against existing defendants Young, Christensen, and Stratman in their

---

[2] Christians' claims against Bernetche have been dismissed without prejudice in accordance with Rule 4(m). *See* Doc. 344 at 12.

3

individual capacities. *Id.* at 54–57. The pending motion for summary judgment, Doc. 239, purportedly relates to the claims in the Second Amended Complaint that were permitted to go forward.

On October 17, 2023, the Court issued a Second Amended Rule 16 Scheduling Order (Second Amended Complaint). Doc. 202. This Scheduling Order specifically provided that the "parties may **not** conduct any further discovery or file any further motions . . . related to any of Christians' claims against the DOC Defendants which survived summary judgment. The scheduling deadlines in this . . . Order apply only to the claims in Christians' second amended complaint that this Court ruled were permitted to go forward[.]" *Id.* ¶ 1. Since this Court issued its Second Amended Scheduling Order, Doc. 202, the DOC Defendants have sought leave to "renew" their previous motion for summary judgment, Doc. 98, which was granted in part and denied in part by the Court in an Order dated September 28, 2022. Doc. 224; Doc. 228 at 2. Each time, the Court has denied the DOC Defendants' request and reminded them that the Second Amended Scheduling Order expressly prohibits them from "renewing" their previous motion for summary judgment. Doc. 226 n.3; Doc. 235. In fact, the DOC Defendants moved to amend the Second Amended Rule 16 Scheduling Order specifically for the purpose of renewing their motion for summary judgment to argue that they had reason to believe that their actions were lawful in light of the information they possessed at the time. Doc. 228 at 6. This Court denied the motion to amend because the DOC Defendants had "not demonstrated either good cause or excusable neglect for their failure to raise and develop in their initial motion for summary judgments the arguments they now seek to raise in their renewed motion for summary judgment." Doc. 235 at 3. Notwithstanding this Court's orders, the DOC Defendants appear to be attempting to do exactly what this Court ordered that they could not do–renew their motion for

4

summary judgment based on evidence and arguments that they did not submit in support of their initial motion for summary judgment.

The Eighth Amendment inadequate nutrition claims in the Second Amended Complaint that survived summary judgment and were permitted to go forward arise out of Christians' confinement in the Special Housing Unit ("SHU") from March 2021 through May 2021. Doc. 83 ¶¶ 127(N)-(WW); Doc. 282 at 1. Although the pending summary judgment motion, Doc. 239, purports to be made on behalf of only the Newly Added Defendants and to seek only summary judgment on the claims in the Second Amended Complaint that were permitted to go forward against the Newly Added Defendants, the Newly Added Defendants' summary judgment submissions are not limited to relevant time nor the information the Newly Added Defendants possessed during the relevant time in question. As Christians' correctly outlines in the introduction of his opposition brief, Doc. 282 at 1–4, most of the 101 paragraphs of the Newly Added Defendants' Statement of Material Facts related to the Eighth Amendment inadequate nutrition claims, Doc. 249 ¶¶ 9–110, have nothing to do with the specific information the Newly Added Defendants possessed during the relevant time period when Christians was housed in the SHU. The Newly Added Defendants argue that they are entitled to qualified immunity because "based on the information that was available to them at the time in question, they could have reasonably believed that there was not a 'problem' which needed fixing." Doc. 240 at 4. Thus, this Court must consider only the specific information the Newly Added Defendants[3] possessed

---

[3] Throughout their supporting brief and reply brief, Docs. 240, 300, counsel for the Newly Added Defendants repeatedly refers to information available to "Defendants" without making any attempt to demonstrate that the Newly Added Defendants did, in fact, possess that information during the relevant time period. For example, the supporting brief argues that "[b]ased on the information that was available to them at the time, Defendants could have reasonably believed that . . . the meals provided at the SDSP were nutritionally adequate." Doc. 240 at 29. But, for purposes of the pending motion, this argument is far too broad. The relevant

during the relevant time period. Information other DOC defendants, the DOC in general, or

information set forth in Christians' medical records is simply not relevant to the arguments the

Newly Added Defendants make in support of their motion for summary judgment.

## DISCUSSION

## I.    FACTUAL BACKGROUND

### A.    Inadequate Nutrition Claims

In Christians' Second Amended Complaint, he makes several allegations regarding

inadequate nutrition while he in the Segregated Housing Unit (SHU). Doc. 83 ¶¶ 127(N)-(WW).

During this time, Christians talked to various correctional officers about missing food items and

portions smaller than indicated on the menu, including Marjama, Winters, Padilla, Mullins, and

Hulscher. *Id.* ¶ 127(Y).[4] None of these officers, according to Christians, made an effort to secure

a "proper" meal. *Id.* Rather, they responded to the effect that "that's what the kitchen gave us so

that's what you get" although the same officers had acknowledged that the meals were incorrect,

missing items, or short on proper serving size. *Id.* During the time he was in the SHU, Christians

submitted to Pechous multiple kites and grievances about food issues, including missing food

items. *Id.* ¶¶ 127(Q), 127(X), 127(Z), 127(BB). On March 23, 2021, that day after Christians had

kited Pechous about missing food items, Sorenson insured that a missing food item was

delivered, but the meat was rancid. *Id.* ¶ 127(R). On another occasion, Christians discussed with

---

question is only what the Newly Added Defendants knew from March 2021 to May 2021, when
they were delivering meals to Christians in the SHU.

[4] Christians' Second Amended Complaint is signed and dated under "penalty of
perjury." Doc. 83 at 66. "A plaintiff's verified complaint is the equivalent of an affidavit for
purposes of summary judgment, and a complaint signed and dated as true under penalty of
perjury satisfies the requirements of a verified complaint, 28 U.S.C. § 1746." *Roberson v. Hayti
Police Dep't*, 241 F.3d 992, 994–95 (8th Cir. 2001) (internal citation omitted); *see also id.* at 995
("[T]he facts alleged in a verified complaint need not be repeated in a responsive affidavit in
order to survive a summary judgment motion.").

Sorenson missing food items, and Sorenson "stated he is aware of situation but is unsure why it is not resolved." Doc. 83 ¶ 127(W). Christians talked to Birch on April 16, 2021, about missing food items and small portions, but Birch did not inform prison administration or any kitchen staff about Christians' concern. *Id.* ¶ 127(BB). According to Christians, on May 13, 2021, when Christians was in the infirmary, Ponto and Dreiske informed him "if [you are] ever having issues with food you can talk to one of us." *Id.* ¶ 127(HH).

While Christians was in the SHU March 20, 2021 to May 2021, he told Hughes, Bertsch, Pechous, and others that he was losing weight and muscle. Doc. 274 at 1. During this same time period, several A-floor officers commented that it looked like Christians was "getting skinnier[,]" and Christians responded that "it's because you're bringing me incomplete trays." *Id.*

Because many of the paragraphs of the Newly Added Defendants' Statement of Material Facts related to the Eighth Amendment inadequate nutrition claims, Doc. 249 ¶¶ 9–110, do not address the specific information the Newly Added Defendants possessed during the relevant time period, the factual allegations, along with Christians' response, are not outlined in detail. When the Court addresses the arguments the Newly Added Defendants raise to support their claim of qualified immunity, the Court will discuss why the record evidence does support summary judgment on the basis of qualified immunity.

### B.    Retaliation Claims

Christians alleges that on April 26, 2021, Young, along with A.W. Cook and Unit Manager Hughes, "stopped by cell #89 at approximatly [sic] 9:45 AM where Young threatened to move Christians out of State to a much harsher and more violent prison." Doc. 83 ¶ 127(CC) (capitalization omitted). Young does not dispute that he spoke with Christians about a possible transfer to another prison, but he denies making any threats about moving Christians to a much

7

harsher and violent prison. Doc. 249 ¶ 126. Christians also alleges that on April 30, 2021, Young

"reiterated moving Christians to a different State such as New Jersey, South Carolina, Wisconson

[sic], New Mexico or Kansas where guys get stabbed over cookies." Docket 83 ¶ 127(FF)

(capitalization omitted). Young has no specific recollection of a conversation with Christensen on

April 30, 2021, or any specific statement about "guys get[ting] stabbed over cookies." Docket

243 ¶¶ 6, 8. Young contends that any conversations he had with Christians in this time period

"was simply for purposes of possibly giving him the opportunity for a fresh start somewhere

else[]" and "trying to find an acceptable resolution to [his] concerns[.]" *Id.* ¶ 7. Young's sole

purpose "was to give Inmate Christians as realistic a picture as possible of what conditions might

be like elsewhere." *Id.* ¶ 8. During his time as Warden of the SDSP, Young did not take any steps

toward arranging for Christians to be transferred to an out-of-state facility because Young did not

perceive that Christians was interested in being transferred out of state. *Id.* ¶ 12. It is undisputed

that Christians did not file any grievances related to Young's alleged threats in April 2021. Doc.

247 ¶ 8; Doc. 249 ¶ 125; Doc. 281 ¶ 125.

The alleged retaliation by Stratman and Christensen stems from an incident on September

19, 2019, when Christians left his "room with paperwork including a State contract between the

DOC and CBM/Summit Food Service. . . . [and] entered Unit Coordinator Laurie Stratman's

office attempting to gain copies of grievances and the contract for a civil suit." Doc. 83 ¶ 140

(capitalization omitted). Christians contends that Stratman refused to provide him with a copy of

the contract and instead told him that he "needed to turn it over[.]" *Id.* (capitalization omitted).

Stratman called Unit Manager Christensen into her office, and Christensen also informed

Christians that he "could not possess the food contract." *Id.* (capitalization omitted). Christians

responded that "he would turn over the contract at minimum in front of a camera located at the

8

officer's desk next to Stratman's office so as to provide some proff [sic] that the contract was being taken from him." *Id.* (capitalization omitted). When Christians moved toward the door, Christensen stepped in front of the door, and Christians began yelling for help. *Id.* While Christians was screaming for help, Stratman placed an emergency call. *Id.* When the door to Stratman's office opened, Christians ran to the officer's desk and positioned himself in front of the camera. *Id.* Christians was "cuffed up" and received an H-4 major violation for assault on staff. *Id.* Christians asserts that he was "given such a severe violation because it would send him to a max security prison from the minimum-medium he was being housed at." *Id.* (capitalization omitted). Following the incident in Stratman's office, a disciplinary report was filed. Doc. 240-29.

According to the disciplinary report, Christians was very agitated. *Id.* After Christensen informed Christians twice that he was not getting the "paperwork" Christians grabbed the paperwork off Stratman's desk and tried to leave the office. *Id.*; Doc. 240-30. Christensen directed Christians to give back the paperwork and stepped in front of the door to prevent him from leaving the office. Doc. 240-29; Doc. 240-30. Christians then grabbed Christensen's arm and tried to push her away from the door. Doc. 240-29; Doc. 240-30. Christians claims he never touched Christensen and did not grab her. Doc. 274 at 2. Christians sat down in the chair next to the door and began yelling "help officer help me officer." Doc. 240-29; *see also* Doc. 240-30. Christensen opened the office door and asked the officer to cuff him up. Doc. 240-29. But Christians ran out of the office and past the officer. *Id.* Christians was cuffed in the day hall when the A-team arrived. *Id.*

Following a disciplinary hearing, Christians was found guilty of having committed the H-4 violation. Doc. 240-31. Christians alleges that none of his requested witnesses were

interviewed. Doc. 240-25 at 3. Christians was given fifteen (15) days in disciplinary segregation but was given credit for the four (4) days spent in administrative detention pending investigation. Doc. 240-31.

Christians filed an Informal Resolution Request (IRR), dated October 13, 2019, alleging that he had been wrongfully written up for an H-4 violation at MDSP on September 19, 2019. Doc. 240-25. In a response dated October 25, 2019, Christians was informed that he "provided no evidence to suggest that [he] did not commit the prohibited act. Also, [he] chose not to take [his] writeup to DHO." Doc. 240-26. Thus, Christians' request was denied. *Id.* Christians contends that he did, in fact, take his writeup to DHO. Doc. 281 ¶ 135 (citing Doc. 240-31). On October 31, 2019, Christians submitted a Request for Administrative Remedy (RAR) related to the H-4 violation. Doc. 240-27. This RAR was rejected and returned to Christians because he did not attach his original IRR or the required disciplinary report and DHO findings. Doc. 240-28. Christians asserts that "it cannot be ruled out that the [correctional officer who accepted the RAR] lost the disciplinary report and DHO findings submitted with the [RAR] by Christians." Doc. 281 ¶ 136 (capitalization omitted). He also asserts that a correctional officer "likely would have never accepted incomplete grievances." *Id.* (capitalization omitted). Finally, Christians asserts that it cannot be determined "how many hands the document passed through before reaching" the prison official who signed the notice of rejection. *Id.* (capitalization omitted). The DOC defendants contend that Christians did not exhaust his administrative remedies regarding the H-4 violation and associated alleged retaliation. Doc. 249 ¶ 133.

On April 25, 2020, Christians was served a disciplinary report charging him with an H-7 violation because he had allegedly planned and orchestrated a group hunger strike. Doc. 83 ¶ 141. During an investigative interview related to the H-7 violation, Cathy Wynia, a DOC

employee who is not named as a defendant, accused Christians of "filing alot [sic] of grievances on food issues and filing a lawsuit about the food service at the prison." *Id.* (capitalization omitted). Wynia also accused Christians of attending a group meeting in the recreation yard that apparently was videotaped. *Id.* Christians informed Wynia that he did not attend night recreation and had no involvement in any group meeting about a hunger strike. *Id.* Christians also denied participating in a group hunger strike because he never stopped eating. *Id.* According to Christians, following an investigative interview, Wynia told him that she did not think that he was involved in planning a group hunger strike, but Young and Cook had told Christians that he was filing too many food grievances not to be involved. *Id.*

Defendants contend that on or about April 27, 2020, Christians pleaded guilty to the charge that he had committed an H-7 violation. Doc. 240-32. Christians alleges that the unit manager of A-floor (SHU) told him that the H-7 charge would be dismissed. Doc. 281 ¶ 132. He also alleges that he was unaware of the "guilty" finding until February 2021. *Id.* Christians claims the exhibit Defendants rely on to establish that he pleaded guilty to an H-7 violation is fraudulent. Doc. 282 at 39. Christians asserts that defendants failed to provide a document titled "Disciplinary – Your Rights" that states that Christians accepted an offer of 15 days sanctions, eight days after Defendants' exhibit, Doc. 240-32, indicates that a plea of guilty was entered. Doc. 282 at 39.[5] Additionally, according to Christians, the Defendants' exhibit, Doc. 240-32, notes that reports were read, but Defendants did not submit the reports. *Id.* Defendants contend that Christians did not exhaust his administrative remedies in connection with the April 25, 2020, H-7 violation. Doc. 249 ¶¶ 144, 145 (citing Doc. 247 ¶¶ 15, 16).

---

[5] Christians states that the "Disciplinary – Your Rights" document is submitted along with his opposition brief, Doc. 282 at 39, but no documents were attached to his brief.

11

## II.    LEGAL ANALYSIS

### A.    Summary Judgment Standard

The Court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment motion must be supported by evidence on the record, which may include affidavits or declarations based upon personal knowledge. Fed. R. Civ. P. 56(c). The non-moving party is entitled to the benefit of having all reasonable inferences resolved in his or her favor, but the non-moving party must present specific facts showing a genuine issue for trial. *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (citation omitted). That is, a non-moving party must present "sufficient probative evidence" capable of supporting a finding in his or her favor, not "mere speculation, conjecture, or fantasy." *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985)).

### B.    Eighth Amendment Inadequate Nutrition Claims

The Newly Added Defendants argue that they are entitled to summary judgment because "based on the information that was available to them at the time in question, they could have reasonably believed that there was not a 'problem' in question which needed fixing." Doc. 240 at 4. For purposes of this motion for summary judgment, therefore, the time in question is March through May 2021, which Christians was in the SHU. *See* Doc. 83 ¶¶ 127(N)–(WW); Doc. 282 at 1. Thus, the Court must "examine the information possessed by the government official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government would have known that his actions violated the law." *Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010) (citing *Miller v. Schoenen*, 75 F.3d 1305, 1308 (8th Cir.

12

1996)). The Newly Added Defendants argue that the "relevant question" is whether they "could have believed that their actions were lawful 'in light of the information possessed at the time.'" Doc. 240 at 6 (quoting *Gainor*, 973 F.3d at 1384)). But the record contains no evidence of what information the Newly Added Defendants possessed in March through May 2021, when Christians was in the SHU. Rather the Newly Added Defendants, in their Statement of Undisputed Material Facts, Doc. 249, outline information that is not limited to relevant time period or in any way tied to the Newly Added Defendants.

### 1.    Qualified Immunity Standard

"Qualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of which a reasonable person would have known." *Partlow v. Stadler*, 774 F.3d 497, 501 (8th Cir. 2014) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "To overcome the defense of qualified immunity, the plaintiff must show: (1) the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Howard v. Kan. City Police Dep't*, 570 F.3d 984, 988 (8th Cir. 2009). For a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Clearly established" law cannot be demonstrated at a high level of generality; rather, it must put officers on "fair notice." *City and County of San Francisco v. Sheehan*, 575 U.S. 600, 613, 616 (2015) (citations omitted). To show that a right was clearly established, the plaintiff must provide either "controlling authority . . . which clearly established the rule on which [he or she] seek[s] to rely" or "a

13

consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).

### 2.    Eighth Amendment Standard

The Eighth Amendment's prohibition against cruel and unusual punishment require prisoners to be provided with nutritionally adequate meals to maintain health. *See, e.g., Cody v. CBM Corr. Food Servs.*, 250 F. App'x 763, 765 (8th Cir. 2007); *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996); *Campbell v. Cauthron*, 623 F.2d 503, 508 (8th Cir. 1980). The Constitution is only violated if the food provided is inadequate to maintain good health." *Jones v. Allen*, 2007 WL 2725218, *4 (W.D. Ark. September 18, 2007) (citing *Burgin v. Nix*, 899 F.2d 733, 734-35 (8th Cir. 1990)).

In *Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992), the Eighth Circuit Court of Appeals held that prisoners have a right to adequate nutrition and the failure to provide adequate nutrition may qualify as a deliberate indifference that violates the Eighth Amendment. *Id.* A prisoner making a deliberate indifference claim for failure to provide adequate nutrition must show that "the food he was served was nutritionally inadequate or prepared in a manner presenting an immediate danger to his health, or that his health suffered as a result of the food." *Id.* In *Ingrassia v. Schafer*, the Eighth Circuit held that it is "clearly established that a prisoner may properly allege a constitutional violation by demonstrating significant weight loss or other adverse physical effects from lack of nutrition." 825 F.3d 891, 899 (8th Cir. 2016); *see also Davis v. Missouri*, 389 F. App'x. 579, 579 (8th Cir. 2010) (per curiam) (citing cases for the proposition that "inmate claiming inadequate diet under Eighth Amendment must allege he lost weight or suffered adverse physical effects, or was denied nutritionally or calorically adequate diet").

14

"If the facts are found to be undisputed, then the court must determine whether a reasonable officer could have believed that his conduct was lawful *in light of clearly established law.*" *Gainor v. Rogers*, 973 F.3d 1379, 1984 (8th Cir. 1992). But if a genuine issue of material is found to exist, it is "impossible for the court to determine, as a matter of law, what predicate facts exist to decide whether or not the officer's conduct clearly violated established law." *Id.* at 1385. The Court must "examine the information possessed by the government official accused of wrongdoing in order to determine whether, given the facts known to the official at the time, a reasonable government official would have known that his actions violated the law." *Langford v. Norris*, 614 F.3d 445, 461 (8th Cir. 2010) (quoting *Miller v. Schoenen*, 75 F.3d 1305, 1308 (8th Cir. 1996)).

As a preliminary matter, it is significant to note that the while the Newly Added Defendants argue that they are entitled to qualified immunity based on the facts known to them when Christians was in the SHU from March to May 2021, none of the Newly Added Defendants have submitted an affidavit or declaration outlining the facts known to them during the relevant time. Thus, the only record evidence is Christians' allegations in the Second Amended Complaint stating what he reported to the Newly Added Defendants during the relevant time period.

The Newly Added Defendants argue that "Defendants, in response to their emails to Summit [the DOC food contractor], were told that "all meals served are approved by a licensed Dietician and meet nutritional requirements[.]" Doc. 240 at 9 (quoting Doc. 185 at 20). But there is no evidence that the Newly Added Defendants exchanged any emails with Summit during the relevant time period. The portion of the Court's previous order the Newly Added Defendants quotes cites an Informal Resolution Response from Unit Coordinator Eilers to Christians dated

15

April 17, 2019. *See* Doc. 185 at 20 (quoting Doc. 1-1 at 105). Any information CBM, the predecessor food contractor, communicated to Eilers, who is not one of the Newly Added Defendants, in 2019 is not information known to the Newly Added Defendants during the relevant time period. Similarly, the Newly Added Defendants argue that their "reasonable beliefs were based on the Reports received from the private, independent consultant retained to perform an independent review of [their] prison food service program." Doc. 240 at 9 (citing Doc. 104 ¶ 13; Doc. 99–78). One cited report from the private, independent consultant was prepared following an evaluation in 2017, which included an on-site review of six meals served at three DOC facilities on October 9, 10, and 11, 2017. Doc. 99-78 at 4. Although there is no evidence that even one of the Newly Added Defendants was aware of any conclusions following the 2017 evaluation, even if they were, an evaluation of the food service program in 2017 does not constitute information known to the Newly Added Defendants during the relevant time period.

The Newly Added Defendants' brief discusses "yet another independent evaluation of the Food Services Program . . . conducted in 2019." Doc. 240 at 12 (citing Doc. 99-79).[6] The 2019 evaluation was based on a site visit on December 11 and 12, 2019. Doc. 99-79 at 1. Again, there is no evidence that any of the Newly Added Defendants were aware of the conclusions of the 2019 evaluation, and even if they were, the Court is unwilling to assume as a matter of law without any affidavit or declaration explaining why, during the relevant time period, the Newly

_____

[6] In their Statement of Undisputed Material Facts, the Newly Added Defendants discuss an independent menu analysis performed by Jennifer Jackson, a registered dietician. Doc. 249 ¶¶ 30–41. The DOC did not retain Jackson until September 2023, and Jackson evaluated food service at the DOC facilities after a new food contractor took over on October 1, 2022. *Id.* ¶¶ 30, 33. Evaluation of the food service program more than two years after the relevant time period and after Summit, the food contractor during the relevant time period, was no longer operating the food service program has no relevance whatsoever to the issues in the pending motion for summary judgment.

16

Added Defendants reasonably believed that that their actions were lawful, especially when the Newly Added Defendants concede that the independent consultant did not conduct any on-site evaluations during the relevant time period. Doc. 240 at 11, n.2.

The Newly Added Defendants devote many pages of their brief, Doc. 240, and paragraphs in their Statement of Undisputed Material Facts, Doc. 249, to demonstrating that the menus and meals Summit, the food contractor, planned to serve were nutritionally adequate. But Christians' allegations in the Second Amended Complaint against the Newly Added Defendants do not pertain to whether the menus or meals, as planned, were nutritionally adequate. When he was in the SHU, Christians alleges that he "complained about missing food and portions smaller than indicated." Doc. 83 ¶ 127(Y). He also alleges that the same "officers acknowledged the meals were incorrect, missing items or were short on proper serving size." *Id.* Thus, there is sufficient evidence in the record to establish that the Newly Added Defendants were aware during the relevant time period that Christians was not receiving the meals that the food contractor had planned to serve. Indeed, the Newly Added Defendants do not dispute that Christians made these complaints during his time in the SHU.

The Newly Added Defendants contend that if "Christians had any concerns with the 'slight portions' that he was receiving or that there were items 'missing from his tray,' he should have therefore availed himself of the Grievance Procedure set out in SDDOC Policy 1.3.D.7." Doc. 240 at 26 (citing Doc. 244 ¶ 18). Christians has submitted evidence that he did, in fact, avail himself of the grievance procedure during the relevant time period.[7] Doc. 83 ¶¶ 127(Q), (X), (Z), (BB). The Newly Added Defendants also contend that the "only action they were able

---

[7] The Newly Added Defendants do not argue that they are entitled to summary judgment on Christians' Eighth Amendment inadequate nutrition claims because Christians failed to exhaust available administrative remedies.

to take . . . was to make the issue known to Summit Foods." Doc. 240 at 26 (citing Doc. 244

¶ 21). The Newly Added Defendants assert that "Christians readily concedes that Defendants did

just that." *Id.* at 26. In their brief, the Newly Added Defendants cite no record evidence to

support this bare assertion, but one of the affidavits they submitted in support of their motion for

summary judgment avers:

> Inmate Christians does not dispute the fact that the *Officers in question* undertook to advise him that "Any food concerns should be addressed to Summit." Doc. 83, pp. 28–29, ¶ 94. Plaintiff was specifically directed to "contact CBM/Summit." Doc. 83, p. 26, ¶ 87.
>
> . . .
>
> I therefore believe that the *Officers in questions* took the appropriate action in response to the complaints from Inmate Christians. The record will reflect that, in addition to telling Christians to "contact CBM/Summit," the Correctional Officers also undertook the only other action that was available under the circumstances. That action consisted of taking it upon themselves to make the issue known to Summit Foods. Christians readily concedes that Defendants did just that.

Doc. 244 ¶¶ 19, 21 (emphasis added); *see also* Doc. 240 at 26; Doc. 249 ¶ 90. Deputy Secretary

Clark's affidavit does not demonstrate that he has any foundation to state under oath what the

Newly Added Defendants did or did not do during the relevant time period. *See generally* Doc.

244. Deputy Secretary Clark does not aver that he spoke with any of the Newly Added

Defendants or reviewed any report or other document authored by any of the Newly Added

Defendants. *Id.* His affidavit is nothing more than a summary of what he believes or understands

the record evidence demonstrates, but his understanding is incorrect. There is no record evidence

that any of the Newly Added Defendants informed Christians to contact CBM/Summit during the

relevant time, and there is no record evidence that any of the Newly Added Defendants took it

upon himself or herself to make any issue regarding missing food items, incomplete portions, or

inadequate nutrition known to Summit in the relevant time period.

As discussed above, the emails "Defendants" exchanged with Summit regarding Christians' food complaints date back to complaints in 2018 and early 2019, and none of the Newly Added Defendants sent, received, or were copied on any of those emails. *See* Doc. 244 ¶ 14 (citing Doc. 185 at 20). In his Second Amended Complaint, Christians alleges that on September 10, 2019, well before the relevant time for the claims against the Newly Added Defendants, he attempted to submit a grievance regarding food concerns, and Unit Coordinator Stratman responded that "any food concerns should be addressed to Summit through a kite." Doc. 83 ¶ 94. Christians also alleges that Stratman directed him to "contact CBM/Summit" on July 23, 2019, when he was seeking information about meals. *Id.* ¶ 87. Although Christians was permitted to allege a retaliation claim against Stratman, Stratman is not one of the defendants named in his inadequate nutrition claims arising out of the time he was housed in the SHU from March 2021 to May 2021. Simply put, Stratman is not an *Officer in question*, and it is surprising to the Court that the Deputy Secretary of the South Dakota Department of Corrections has executed an affidavit implying that she is.

According to the statement of undisputed material facts, Doc. 249 ¶ 18, "[t]he SDDOC Defendants, in attempting to ensure that Inmate Christians nutritional needs were met, fail to see what more they could or should have done under circumstances. In that regard, Inmate Christians readily acknowledges that he was told that there was 'nothing [they] can do.'" (citing Doc. 83 ¶ 127(DD)) (alteration in original). This misstates the allegations in Christians' Second Amended Complaint. In paragraph 127(DD), Christians alleged that one prisoner official, UM Hughes, who is not among the Newly Added Defendants, responded "nothing I can do" when Christians complained about missing food and Boost drinks. Doc. 83 ¶ 127(DD). For purposes of the pending motion for summary judgment, what is relevant is the knowledge of the Newly Added

19

Defendants during the relevant time period and what they did, or did not, do during the relevant time period. [8] As the Court has repeatedly stated, the record evidence on which the Newly Added Defendants rely does not relate to these issues.

The Newly Added Defendants argue that "they were not allowed or authorized to go into the kitchen area to prepare a replacement meal tray designed to his personal liking." Doc. 240 at 27 (citing Doc. 244 ¶ 20).[9] They also allege that they were "not permitted to retrieve food items from the kitchen to replace supposed items that Christians claims were missing from his food tray." *Id.* Based on the record evidence, there is a factual dispute whether the Newly Added Defendants could have retrieved missing food items from the kitchen or otherwise taken steps to replace missing food items. According to Christians' Seconded Amended Complaint, on at least two occasions during the relevant time period, a correctional officer took steps to replace food items he complained were missing. Doc. 83 ¶¶ 127(R); 127(Y). Additionally, then-Warden Young informed Christians on June 25, 2021, that "[i]f any tray, snack, or sack ever has and is found warranted by a Kitchen Supervisor then staff is always happy to immediately fix the issue." Doc. 283 at 11. But the Newly Added Defendants contend that Christians did not report any missing food tray items to kitchen staff. Doc. 300 at 4 (citing Doc. 283 at 14). During the relevant time period, Christians was in the SHU and unable to report contemporaneously any missing food tray item to kitchen staff. Because he was housed in the SHU, the Newly Added

_____

[8] In their reply brief, the Newly Added Defendants cite a medical record that indicates that a nurse in health services sent correspondence requesting an urgent dietary consult with Summit's dietician on May 17, 2021. Doc. 283 at 159. But the issue is what the Newly Added Defendants, correctional officers, did or did not do, not what health services did.

[9] This statement unfairly characterizes Christians' allegations against the Newly Added Defendants in the Second Amended Complaint. Christians does not allege that the meals he received in the SHU should have been designed to his personal liking. Rather, Christians alleges that he should have received the proper portion of *all* of the food items listed in the planned meal.

Defendants retrieved from the kitchen Christians' meal trays, and there is no specific evidence than any of the Newly Added Defendants ever relayed any of Christians' concerns to the kitchen staff. Then-Warden Young avers that "it was the customary practice of prison staff, when responding to the various grievances submitted by Christians regarding meals provided to reach out and contact kitchen staff." Doc. 301 ¶ 17. But none of the "prison staff" identified in the informal resolution responses then-Warden Young cites are among the Newly Added Defendants. *See* Doc. 283 at 12, 36, 56, 60. Further, only one of the cited responses is during the relevant time period, and Christians was simply requesting to have a copy of a 4-week meal plan. *Id.* at 12.

Then-Warden Young also avers that "[s]taff . . reached out to Summit in connection with the complaints, in his Request for Administrative Remedy dated April 3, 2021, that 'he was constantly missing food items, along with the portions being off with the items that [were] present.'" Doc. 301 ¶ 16. The staff who reached out to Summit are not identified, so this statement is insufficient to establish that is it undisputed that the Newly Added Defendants were not deliberately indifferent to Christians' food complaints and associated alleged weight loss. As the Court has previously stated, the Court must consider the Newly Added Defendants' qualified immunity defense based on the Newly Added Defendants' knowledge and actions, not the knowledge and actions of "Defendants" or unidentified "staff."

To support their motion for summary judgment, the Newly Added Defendants rely on an affidavit from Dr. Aaron Haynes, the Chief Medical Officer for the Division of Clinical and Correctional Services with the SDDOC. Doc. 241 ¶ 3. Dr. Haynes' affidavit, like the other summary judgment submissions, is not confined to the relevant period of time nor the knowledge available to the Newly Added Defendants, during the relevant time period. *See id.* ¶ 16 (stating

21

that Christians' weight has fluctuated since December 2021); *id.* ¶¶ 23–27 (discussing Christians' weight in late 2022 and 2023); *id.* ¶ 22 (opining that Christians' laboratory studies show no signs of protein malnourishment in September 2022, March 2023, and September 2023). Dr. Haynes' affidavit also opines as to the cause of Christians' weight fluctuations during the period of time relevant to the claims that were in issue when the DOC Defendants filed their motion for summary judgment on December 21, 2021. *Id.* ¶¶ 8–14; *see also* Docket 98. If the DOC Defendants wanted this Court to consider Dr. Haynes' medical opinions in support of their motion for summary judgment, then they should have submitted an affidavit from Dr. Haynes along with their motion for summary judgment. The Court is not going to reconsider its previous Order, Doc. 147, based on untimely evidence.

Dr. Haynes opines that between April 4, 2019, and November 2, 2020, there was not "any steady or continued decline in weight that one would expect to see if the meals provided were nutritionally inadequate." Doc. 241 ¶ 15. This medical opinion, when considered in the light of the entire record, does not establish that there is no genuine issue of material fact whether the Newly Added Defendants could have reasonably believed that the meals Christians received in the SHU during the relevant time period were nutritionally adequate.

Giving Christians the benefit of all favorable inferences, which this Court must do, there is evidence that the meals the Newly Added Defendants delivered to Christians when he was housed in the SHU were nutritionally inadequate because of missing food items or slight portions. There is evidence that the Newly Added Defendants acknowledged the meals they served "were incorrect, missing items or were short on proper serving size." Doc. 83 ¶ 127(Y). According to Christians, the Newly Added Defendants were aware that Christians lost weight during the relevant time and that Christians attributed his weight loss to the inadequate trays the

22

Newly Added Defendants were delivering to him. Thus, there are genuine issues of material fact whether the Newly Added Defendants "could have reasonably believed that there was not a 'problem' which needed fixing." Doc. 240 at 4.

Although the Newly Added Defendants argue that even if they were aware of a "problem" that needed fixing, they "fail to see what more they could or should have done under the circumstances." *Id.* at 26. Giving Christians the benefit of all favorable inferences, there are genuine issues of material fact whether the Newly Added Defendants took any steps to address Christians' inadequate nutrition claims and associated alleged weight loss during the relevant time period. There is evidence that they could have notified the kitchen staff, the food contractor, or prison administration, but there is no evidence that the Newly Added Defendants did any of these things. In fact, there is no evidence that the Newly Added Defendants took any steps during the relevant time period in response to Christians' complaints about missing food items and incomplete portions. For these reasons, the Newly Added Defendants' motion for summary judgment on the Eighth Amendment inadequate nutrition claims alleged against them in the Second Amended Complaint is denied.

## C.    First Amendment Retaliation Claims

Christians alleges that Young, Christensen, and Stratman retaliated against him for filing grievances regarding the food at the SDSP. Doc. 83 ¶¶ 127(CC), 127(FF), 140–142. Specifically, he alleges that Young threatened to have him transferred to a more violent prison and that Christensen and Stratman stole paperwork he needed for his lawsuit and grievances, falsely claimed that he assaulted them, and falsely accused him of organizing a hunger strike. *Id.*

23

### 1.    Failure to Exhaust Administrative Remedies

Young, Christensen, and Stratman argue that they are entitled to summary judgment on Christians' First Amendment retaliation claims because Christians failed to properly exhaust his administrative remedies with respect to these claims. Doc. 249 ¶ 133 (H-4 violation); Doc. 249 ¶¶ 144, 145 (H-7 violation); Doc. 249 ¶ 125 (alleged threats by then-Warden Young in April 2021).

The Prison Litigation Reform Act (PLRA) requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Dismissal is mandatory if an inmate has not fully exhausted available administrative remedies at the time he files his complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).

The United States Supreme Court has held that exhaustion of administrative remedies requires prisoners to complete the administrative review process in accordance with the applicable procedural rules as defined by the prison's grievance process, not the PLRA. *Jones v. Brock*, 549 U.S. 199, 218 (2007) (citing *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, not the PLRA, that define the boundaries of proper exhaustion." *Id.* To properly exhaust his administrative remedies, Christians was "required to 'take advantage of each step the prison holds out for resolving the claim internally and by following the critical procedural rules of the prison's grievance process.'" *Whiting v. Eagle Bear*, 3:15-CV-03019-RAL, 2016 WL 297435, at *4 (D.S.D. Jan. 22, 2016) (quoting *Rothman v. Lombardi*, 2012 WL 639713, at *2 (E.D. Mo. Feb. 27, 2012)).

24

This Court is familiar with the DOC's administrative remedy policy. *See, e.g., Bell v. Young*, 4:16-CV-04046-VLD, 2018 WL 3148385, at *30 (D.S.D. June 27, 2018). The record in this case includes a copy of the administrative remedy policy that became effective on March 3, 2021, *see* Doc. 137-30, and the current version of the policy is available on the DOC's website. *See* DOC Policy 500-04, https://doc.sd.gov/documents/500-04%201.3.D.07%20Grievance%20Procedure%20(09.15.2024B).pdf. The DOC's policy outlines a two-step process for exhausting administrative remedies. If the inmate is unable to resolve his complaint verbally, the inmate must submit an Informal Request Resolution form. Doc. 137-30 at 6. If the inmate is not satisfied with the response to the IRR, the inmate must submit a Request for Administrative Remedy (RAR). *Id.* at 7. The DOC's administrative remedy policy specifically provides that "[i]nmates seeking remedy, who do not substantially comply with the requirements and procedures of the administrative remedy process, will have their request for remedy and all accompanying forms returned" along with a Notice of Rejection explaining why the request was not processed. *Id.* at 2.

### a. Alleged Threats by then-Warden Young in April 2021

On the basis of the record evidence, there is no genuine issue of material fact whether Christians exhausted his administrative remedies in connection with Young's alleged threats in April 2021. Doc. 247 ¶ 8; Doc. 249 ¶ 125; Doc. 281 ¶ 125. Yet, in his opposition brief, Christians attempts to argue that he did, in fact, exhaust the administrative remedies regarding this claim. Christians contends that on April 29, 2021,[10] he "talked with [Seth] Hughes and brought up diet

---

[10] Christians alleges that one of the conversations with then-Warden Young during which Young threatened him took place on April 30, 2021, *after* Christians alleged he attempted to informally resolve his retaliation concerns during a conversation with Hughes. *See* Doc. 83 ¶ 127(FF).

concerns previously discussed and being shipped out of state due to making an issue of the food problems." Doc. 282 at 26 (quoting Doc. 83 ¶ 127(EE)) (alteration in original) (capitalization omitted). Christians argues this a verbal complaint and contends that the administrative remedy policy required that Hughes's verbal response be documented in COMS. *Id.* But Christians has not submitted any further evidence to substantiate his allegations that his "talk" with Hughes on April 29, 2021, included a verbal response. Although Christians references a letter he wrote to the Court, Doc. 49, Christians did not sign the letter under penalty of perjury. Because an unsworn letter is not an affidavit or declaration, it is not sufficient under Rule 56(c)(1)(A) to create a genuine issue of material fact. Further, Christians' argument misconstrues the administrative remedy policy. While the policy does encourage inmates to attempt to resolve a grievance informally, the policy states that "[r]equests for informal resolution may be initiated by speaking with a staff member about the grievance *and accepting the resolution offered by the staff member*, or in writing, via a kite or completed *Request for Informal Resolution* form (See Attachment 1), which must be directed to a staff member." Doc. 137-30 at 6 (emphasis added). Even if the Court considers Christians' unsworn letter, Doc. 49, it is clear that he did not accept any alleged resolution offered by Hughes. *See* Doc. 137-30 at 3 (defining "informal resolution" as "[v]erbal or written contact between an inmate and staff, in which the problem/grievance is settled by agreement of both parties in an informal setting."). Thus, policy required that Christians submit a written kite or IRR, and it is undisputed that he did not do so. *See* Doc. 249 ¶ 125; Doc. 281 ¶ 125.

Next, Christians argues that he should be excused from exhausting administrative remedies because the DOC's administrative remedy process cannot actually be used to obtain any relief. In other words, according to Christians, it is a "dead-end" process. Doc. 282 at 27–28

26

(citing *Smith v. Andrews*, 75 F.4th 805 (8th Cir. 2023)). Christians estimates that the record contains "over 100 Informal Resolution Requests, Administrative Remedy Requests, and Appeal(s) to Secretary of Correction. One hundred percent of those were rejected, denied, not replied to, given irrelevant answers, or rejected for not following policy[.]" *Id.* Additionally, Christians asserts that there are "hundreds more grievances . . . that are not in the record, which were also denied any relief for the same reasons[.]" *Id.* at 28.

The United States Supreme Court has recognized that an inmate is "must exhaust available remedies, but need not exhaust unavailable ones." *Smith*, 75 F.4th at 809 (quoting *Ross v. Blake*, 578 U.S. 632, 642 (2016)). An administrative remedy may be unavailable when the procedure "operates as a simple dead end" and is not "capable of use to obtain some relief for the action complained of." *Id.* at 808–09 (quoting *Ross*, 578 U.S. at 642). Christians' argument that no administrative remedy was "available" is procedurally and substantively flawed.

Courts have consistently been unwilling to hold that a grievance system was a dead end or unavailable because of the prison's consistent unwillingness to grant relief when the prisoner has not provided documentation of past grievances or any evidence about outcomes from the grievance system in general. *See White v. Velie*, 709 F. App'x 35, 38–39 (2d Cir. 2017); *Peterson v. David*, 2024 U.S. Dist. LEXIS 143978, at *6–7 (E.D. Mich. Apr. 2, 2024) (recommending that claims be dismissed for failure to exhaust when plaintiff claims that grievance process was unavailable because many of his grievances were rejected despite having merit although offering no details about grievances nor evidence that rejection was baseless); *Russell v. Berkshire*, 2020 WL 7327577, at *4 (W.D. Mich. June 18, 2020) (recommending claims be dismissed for failure to exhaust when plaintiff alleged that system was unavailable because she observed grievances be rejected as vague regardless of detail but not providing any evidence or specific details to

27

support claim) *adopted* 2020 WL 6498910 (W.D. Mich. Nov. 5, 2020); *Lewis v. Kiker*, 2017 WL 2123871, at *5 (W.D. Ark. May 16, 2017) (unable to find that grievance process was a dead end because record contained no evidence demonstrating such fact). Christians' argument relies, at least in part, on grievances that are not, by his own admission, part of the record. The Court cannot consider arguments unsupported by any record evidence. Although Christian alleges that the record contains over 100 IRRs, RARs, and appeals to the Secretary of the Department of Corrections, Doc. 282 at 27-28, Christians does not identify with any specificity where in the record these supporting documents may be found. When Christians filed his opposition to pending summary judgment motion, the docket contained 272 entries, some of which had multiple attachments and exhibits spanning multiple and even hundreds of pages. The Court is neither required nor inclined to review all of the voluminous filings to locate the record evidence Christians relies on to overcome his undisputed failure to exhaust his administrative remedies.

Further, in this case, because Christians' argument is substantively flawed, pouring over the record would be futile. "[A] prisoner's administrative remedies are not unavailable simply because a prisoner has never happened to obtain relief; the prison's failure to afford relief to inmates must be 'systematic' such that a prisoner could never expect to obtain relief, no matter the circumstance." *Ford v. Jindal*, 2023 WL 6396581, at * (E.D. Mich. Sept. 30, 2023) (citing *Morgan v. Kentucky*, 2018 WL 715468, at *3 (W.D. Ky. Feb. 5, 2018)). Courts have further held that use of a grievance system and granting of prior administrative remedies shows that the prison was not systematically unwilling or unable to afford relief. *See Craig v. Kizziah*, 2019 WL 5790958, at *2 (E.D. Ky. Nov. 6, 2019) (citation omitted) (stating that "an inmate's repeated use of the [prison's] administrative remedy procedures demonstrates that the remedy was not a dead end" and finding that prisoner's filing of thirteen administrative remedy requests or appeals with

28

one request being granted in part demonstrated that administrative remedy process was not a dead end); *Grafton v. Hesse*, 783 F. App'x 29, 31 (2d Cir. 2019) (holding that plaintiff had not shown constituent unwillingness to grant relief when prisoner did not provide evidence of outcomes of past grievances and when several of prior grievances showed that they were accepted); *Gebhardt v. Larson*, 2022 WL 4138600, at *5 (E.D. Mich. Aug. 2, 2022) ("considering [prison] officials' detailed responses to [plaintiff's] grievances, and their occasional efforts to provide at least some relief, the fact that [plaintiff] filed six unsuccessful grievances, without more, is not enough for a reasonable juror to conclude that prison officials were systemically unwilling or unable to afford any relief"); *Miller v. Annucci*, 2021 U.S. Dist. LEXIS 183372, at *42–45 (S.D.N.Y. Sept. 24, 2021) (holding that positive outcomes, even if not obtained through the grievance process itself, contradict claim that prison officials were consistently unwilling to provide relief). Christians concedes that two of his grievances did, in fact, lead to "some" relief. Doc. 282 at 28. Thus, Christians' argument that there were no "available" administrative remedies is unavailing.

Finally, Christians argues that he was not required to exhaust available administrative remedies related to then-Warden Young's alleged threats in April 2021 because "DOC officials do not follow their own policy here (as many other prison policies/contracts)." Doc. 282 at 28 (capitalization omitted). Initially, the Court notes this argument, as well as Christians' previous argument asserting that the administrative remedy process is a "dead end process", contradicts the allegations in this Second Amended Complaint. Christians did not allege that he should be excused from exhausting available administrative remedies for the reasons he now offers. Instead, he alleged without qualification that he "has timely exhausted all available administrative remedies prior to filing this complaint." Doc. 83 ¶ 143 (capitalization omitted).

29

Christians' opposition brief references unrelated grievances he asserts that are part of the record and demonstrate that he submitted unrelated grievances that were not timely responded to nor investigated. Doc. 282 at 28–30. But Christians does not identify where in the record the Court can find these grievances.[11] Also, Christians also does not argue that any alleged failure to consistently investigate and respond to grievances makes the administrative remedies *unavailable*, which as discussed above, Christians must demonstrate because it is undisputed that he did not submit any grievance or IRR related to then-Warden Young's alleged threats in April 2021. Young is entitled to summary judgment on Christians' retaliation claim because Christians failed to exhaust his administrative remedies.

### b.    H-4 Violation

In his brief in opposition to the Christensen and Stratman's motion for summary judgment, Christians asserts that both defendants had directly threatened him prior to the September 19, 2019, incident that led to the H-4 violation and that these direct threats were "due to Christians' excessive filing of grievances on food issues because it was making their life difficult." Doc. 282 at 24; *see also* Doc. 274 at 2 (declaring that Christians reported to his sister death threats from Christensen and Stratman). Christians' Second Amended Complaint does not allege that Christensen and Stratman directly threatened him in 2019. *See generally* Doc. 83. Rather, Christians' retaliation claim against Christensen and Stratman is based solely on the

---

[11] In his brief Christians mentions documents originally submitted with his complaint and "this document as well[.]" Doc. 282 at 29. Christians' brief, Doc. 282, did not contain any attachments, but he mailed 228 pages he described as "various documents cited in responses[,]" but the documents were not paginated or otherwise organized to permit the Court to ascertain which pages of the voluminous documents related to which responses. *See generally* Doc. 283 at 2-229. His initial complaint, Doc. 1, contained more than 650 pages of attachments. *See generally* Doc. 1-1; Doc. 1-2. The Court is not required to "plumb the record in order to find a genuine issue of material fact." *Barge v. Anheuser-Busch, Inc.*, 87 F.3d 256, 260 (8th Cir. 1996).

September 19, 2019 incident and subsequent H-4 violation. *Id.* ¶ 140. Christians may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment. *Bragg v. Husqvarna Forestry Prods., N.A.*, 2021 WL 2346012, at \*3 (W.D. Ark. June 8, 2021) (citing *Hildreth v. City of Des Moines*, 773 F. App'x 334, 335 (8th Cir. 2019);*Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).

Christians contends that there is a genuine issue of fact whether he exhausted available remedies with respect to the September 19, 2019, incident and subsequent H-4 violation. Specifically, to dispute that he did not include the required disciplinary report and DHO findings, Christians contends that a correctional officer likely would not have accepted the RAR without the required documents, it is unknown how many hands the RAR passed through before it reached the official who signed the notice of rejection, and it cannot be ruled out that the correctional officer who accepted the RAR lost the attachments. Doc. 282 at 34. But Christians has not cited any record evidence to support his allegations. Doc. 281 ¶ 136. A party opposing a properly supported motion for summary judgment "may not rest upon mere allegations or denials" in his pleading "but instead must set forth specific facts showing [the existence of] a genuine issue for trial." *Gacek v. Owens & Minor Distrib., Inc.*, 666 F.3d 1142, 1145–46 (8th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)); *see also Morslev v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (stating that a nonmovant may not merely rely on allegations or denials). Because it is undisputed, on the basis of the record evidence, that Christians did not fully and properly exhaust his administrative remedies regarding the September 19, 2019, incident and subsequent H-4 violation, Christensen and Stratman are entitled to summary judgment on this claim.

31

### c.    H-7 Violation

Failure to exhaust administrative remedies is an affirmative defense that the defendant must plead and prove. *Jones*, 549 U.S. at 212. Is this case, Defendants have not submitted any evidence to support their allegation that Christians failed to exhaust administrative remedies relating to the H-7 violation. Defendants rely on paragraphs 15 and 16 of the affidavit of Melissa Maturan, Doc. 247, to support their assertion that Christians did not exhaust his administrative remedies in connection with the April 25, 2020, H-7 violation, but the affidavit they filed, Doc. 247, contains only twelve (12) paragraphs and does not mention the April 25, 2020, H-7 violation. Because Defendants have not cited to any record evidence or produced any admissible evidence to support their assertion that Christians did not exhaust his administrative remedies in connection with the April 25, 2020, H-7 violation, Defendants are not entitled to summary judgment on this claim for failure to exhaust available administrative remedies. Thus, the Court will consider whether there is any genuine issue of material fact that Young falsely accused Christians of organizing a hunger strike in retaliation for filing food grievances

### 2.    Christians' Claim That He Was Falsely Accused of Organizing a Hunger Strike in Retaliation for Filing Food Grievances

To allege a First Amendment retaliation claim, Christians must show that "(1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson Cnty.*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). When an inmate alleges that disciplinary action is retaliatory, a defendant "may successfully defend a retaliatory discipline claim by showing 'some evidence' the inmate actually committed a rule violation." *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008) (citation omitted). In

32

this case, there is no record evidence to dispute that on or about April 27, 2020, Christians pleaded guilty to the charge that he had committed an H-7 violation on or about April 27, 2020. Doc. 240-32. As discussed above, *see supra* at 10–11, in his opposition brief and response to statement of undisputed material facts, Christians makes numerous arguments to dispute that he pleaded guilty to the H-7 violation and even references a document that he contends raises an issue of material fact. But Christians did not identify where in the record this document may be found, and Christians does not provide or cite to any record evidence to support his other allegations and arguments. Because Christians' unsworn allegations are insufficient as a matter of law to give rise to a genuine issue of material fact, Young is entitled to summary judgment on Christians' retaliation claim arising out of the H-7 violation.

### D.    Christians' Motion in Opposition to Defendants' Motion for Summary Judgment

With his opposing brief, supporting declarations, and response to defendants' statement of undisputed material facts, Christians filed a motion in opposition to defendants' motion for summary judgment. Doc. 273. Christians' motion is not a cross-motion for summary judgment and does not request any affirmative relief. *Id.* Rather, Christians' motion summarizes the reasons why he opposes entry of summary judgment in favor of Defendants. *Id.* The Court has considered the arguments summarized in Christians' motion in opposition to Defendants' motion for summary judgment as well his other opposition papers, Docs. 274–280, 282, 285, 288, 289, 293, 311. For this reason, Christians' motion in opposition to defendants' motion for summary judgment, Doc. 273, is denied as moot.

Accordingly, IT IS ORDERED:

1.    That the Newly Added Defendants' motion for summary judgment, Doc. 239, is granted in part and denied in part. Summary judgment is granted in favor of Young,

33

Christensen, and Stratman on the newly added retaliation claims alleged against them in the Second Amended Complaint, but this Order does not affect the Eighth Amendment inadequate nutrition claims against Young, Christensen, and Stratman that survived summary judgment. *See generally* Doc. 147. The motion for summary judgment by Newly Added Defendants Pechous, Genie Birch, Greasman, Alumbaugh, Marjama, Winters, Padilla, Mullins, Hulscher, Dreiske, Becker, Hettig, Sorenson, and Perret on Christians' Eighth Amendment inadequate nutrition claims arising out of the time he was housed in the SHU from March 2021 through May 2021 is denied.

2.      That Christians' Motion in Opposition to Defendants' Motion for Summary Judgment, Doc. 273, is denied as moot.

DATED September 30th, 2024.

ATTEST:
MATTHEW W. THELEN, CLERK

*[signature: Matthew Thelen]*

BY THE COURT:

*[signature: Lawrence L. Piersol]*

Lawrence L. Piersol
United States District Judge

34