**United States District Court**
**District of South Dakota**
**Southern Division**

| | |
|---|---|
| Mark Christians,<br>Plaintiff,<br><br>v.<br><br>Darin Young, et al.,<br>Defendants. | Case No. 4:20-cv-04083-LLP<br><br><br>Motion for Rule 60 - Relief from a Final Judgment |

COMES NOW, Plaintiff, pro se, mailed respectfully moves this court to consider this motion and it's evidence under Rule 60(b)(2)(3)(6) & (d)(1)(3).

Fed. R. Civ. P. 60(b) - Grounds for relief from a final judgment, order, or proceeding. On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:

> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(d) - Other powers to grant relief. This rule does not limit a court's power to:

> (1) entertain an independent action to relieve a party from a judgment, order, or proceeding;
>
> (3) set aside a judgment for fraud on the court.

(The rest of this page intentionally left blank.)

### A. Factual Background

Plaintiff has just received 745 pages of documents of "Nutritional Analysis'" that both sets of Defendants have repeatedly claimed did not exist (Declaration Christians). It would be hard to imagine a scenario where that many documents over the course of several years could have in any way possible been mistaken to "never exist." It is simply unreasonable and can only be described as an attempt meant to intentionally mislead and misrepresent information to the court, the Plaintiff and hide evidence in an effort to survive Summary Judgment, which in this instance, did just that. In response to a discovery request, the CBM/Summit "state[d] that they are not in the possession of any materials relating to a 'nutrient analysis,'" and went on to add that document does not exist (Doc. 221-2 at p. 2 – last paragraph). This was reiterated by the SDDOC Defendants by saying "As for any 'nutrient analysis reports' requested by Christians...Defendants [are] 'not in possession of any materials relating to a 'nutrient analysis' and therefore, no responsive document exist[ed]." They went on to claim "A party cannot be compelled to produce what it does not have...an impossible production" (Doc. 221 at p. 9-10).

With this newly discovered information that *all* Defendants were deceitful about, Christians can prove beyond a preponderance of the evidence that CBM/Summit, falsified these reports in an overall custom and policy to defraud prisoners of adequate nutrition and force an increase in commissary sales (by starving and malnourished prisoners) for profit in multiple areas. First, the money they were paid for under contract for food services by not providing the contracted nutrition. Next, they provided even less calories than already *FALSELY* claimed by shorting portions and removing required

menu items. Third, they profited from increased commissary sales due to prisoner hunger, in which they were also the contracted supplier. This speaks volumes of willful misconduct and evil intent. In addition, not to deny the fact that they *knew* the inadequate calories would be harmful and cause serious injury to prisoners by underfeeding them if they did not purchase additional commissary. This needs no evidence of injury, as these very actions *are well known*, even for a layperson, which will cause a scenario of an individual not being able to maintain ones health without adequate nutrition. These "Menu Nutrient Analysis Report[s]" (Exhibit A – 1 through 28) are altered purposefully and intentionally by the CBM/Summit Defendants and then withheld from the Court and Plaintiff during the motions and discovery phase of the scheduling order and fraudulently claimed the documents as to never have existed. Notably, they did not claim, the nutritional analysis' could not be found or were destroyed, they went above and beyond in their deception and claimed the reports "*never* existed" and would be "*impossible* to produce"(emphasis added) (Doc. 221-2 at p. 2; Doc. 221 at p. 9-10). Again, it would be unfathomable to accept as true that 745 pages of documents spanning over years could reasonably believed to have "never existed." In addition, to note, they stated it would be impossible to produce, yet the Exhibits submitted with this motion show they have always existed and *are* possible to produce. The Exhibits attached to this document are not all inclusive and as stated an additional 745 pages were just delivered to Christians by way of USB drive through his newly appointed attorneys which was given by the SDDOC defendants. (Decl. Christians).

**B. Legal Standard**

A summary judgment motion must be supported by evidence on the record. Fed. R. Civ. P. 56(c). The non-moving party is entitled to the benefit of having *all reasonable inferences resolved in his or her favor* (emphasis added). Atkinson v. City of Mountain View, 709 F.3d 1201, 1207 (8th Cir. 2013) (citation omitted). Section 1983 creates civil liability for a person who, acting under the color of state law, deprives another of his or her federal constitutional or statutory rights. 42 U.S.C. § 1983. However, "[q]ualified immunity shields a government official from liability in a § 1983 action unless the official's conduct violates a clearly established constitutional or statutory right of *which a reasonable person would have known* (emphasis added)."

"Courts must be sensitive to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights," see Nickens v. White, 622 F.2d 967, 971 (8th Cir. 1980).

"The Constitution *is* [ ] *violated* if the food provided is inadequate to maintain good health" (emphasis added). Jones v. Allen, 2007 WL 2725218, at *4 2007 U.S. Dist. LEXIS 105014, at *9 (W.D. Ark. Sept. 18, 2007) (citing Burgin v. Nix, 899 F.2d 733, 734-35 (8th Cir. 1990) (per curiam)). To show deliberate indifference, an inmate must demonstrate that a prison official knew the "inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." Kenyon v. Dooley, 2014 WL 3700878, at *3, 2014 U.S. Dist. LEXIS 101673, at 10 (D.S.D. July 25, 2014) (alterations in original) (quoting Coleman v. Rahija, 114 F.3d 778, 785 (8th Cir. 1997)). Thus, as this Court stated in the Order Granting the Summit

Defendants' Motion for Summary Judgment (Doc. 185 at 12), Christians must show 1) that the nutrition he received was in adequate to maintain good health ***OR*** (with added emphasis) that he suffered weight loss or other adverse physical effects as a result of his diet; and 2) that the Summit Defendants were aware of and deliberately indifferent to the inadequate nutrition. An inmate must show that defendants "failed to act despite...*knowledge* of a *substantial risk* of serious harm" (emphasis added). Ingrassia v. Schafer, 825 F.3d at 897 (omission in original) (quoting Farmer v. Brennan, 511 U.S. 825, 842 (1994)).

**C. The Summit Defendants' Awareness of Christians' Food Complaints**

This court stated, "At most, Christians provides evidence, through Lint's affidavit, that the lack of training resulted in poor-tasting meals that sometimes had an insufficient quantity of meat. Christians fails to connect the alleged lack of training to the inadequate diet that he claims violates his constitutional rights or to any impact that diet has had on his health" (Doc. 185 at 18). This is not entirely true as the Court cites only a single affidavit of Lint. The Declarations of Shane Bell, Rock Blair, Kevin Brown, Jr., Leander Clay, Eric Coon, Chance Harruff, Steven Layton, Albert Marshall, and Steven Spear (Docs. 5,6,7,8,9,11,12,15,16) not to exclude the declarations and amended complaint of the Plaintiff himself, were seemingly not included in that opinion. As just a small sample of the prisoner population, these individuals state "The portions of so called meat are small," "When the menu says one thing it is often substituted four or more times a week for something else," "In some meals it is hard to say [ ] if there is any meat in the dish at all," "The portion size is usually different and it is either undercooked of overcooked.

There are substitutions from the menu where we should get turkey but instead are served mechanically separated chicken by product instead. As far as portions of meat go, [ ] they add flower and water to thicken it because there is so little meat and actual food. There is no consistency between trays. Small portions of meat [ ] are served," "There are some big substitutions most noticeable is the meat," "Our portions are small," "I feel the reason CBM/Summit serve the food they serve is because of what I believe to be a monopoly. This same [food] company also runs our commissary program," "The trays always have dishwater in them. Trays are never consistent or full and the bowls and served half full," "I can barely tell if there is any meat in the dishes served," "It's making people sick," "Inconsistent all the time...Meat is almost zero. There's just little to no meat like the meat gravy, it's just ninety-nine percent just gravy...The meals are substituted a lot. So much so I've stopped looking at the menu...the food [has] very little meat," "Portion sizes have gone down especially with meats but every aspect of our diets seems to be getting smaller. They only follow the menu sometime...there is no actual diabetic diet," "When we have some meal that is supposed to contain meat, there is no meat," "There is inconsistency in portion sizes. We are served smaller amounts of poultry or ham than what is listed of three to four ounces. I would estimate we are more frequently served one to two ounces of meat...less tomatoes in dishes as well as less beans or no beans in dishes like Chili Mac. There is also inconsistency in the fruit and vegetable portions we are served. The meals are very inconsistent with portion size and amount served from one meal to the next always varies. Substitutions occur for example like a chicken patty or other meat will be substituted with potatoes and gravy or rice." "It is a conflict of interest to have the company that provides food service, also run

the institutions commissary. This allows the food provider to short inmates on daily calories in hopes they purchase additional items on the commissary option." (See above listed declarations generally). Also in those declarations generally speaking are statements of quality of such poor food quality supporting it is not edible and causing sickness, vomiting and diarrhea.

Additionally, Christians has also stated on the record his attempts to contact CBM/Summit by way of numerous kites that went unanswered completely with not a single response ever given (Doc. 1-1, p. 283, 293; Doc. 1, p. 5, para. 41 and p. 6, para. 42, 45, 46, & 50 as just a *few examples* in record). This Court has also cited grievances and emails that the CBM/Summit Defendants were aware of the above complaints as well as other issues which were refused to be corrected or resolved.

In support of these sworn statements, Plaintiff cites the SDDOC officials' statements they contacted CBM/Summit due to the above issues of improper and missing portion sizes and horrible, inedible food that were coming from complaints of prisoners. "...the photographs were then used by the SDDOC in subsequent meetings with CBM/Summit Food Service to document the issues or complaints that were being raised at the SDSP. Arrangements were made by the SDDOC to meet with representatives of CBM/Summit Foods in hopes of resolving the alleged lack of quality control at the SDSP." (Doc. 303 at 4; citing Aguirre Affidavit, para. 10, Doc. 304) With *all reasonable inferences resolved in* [Plaintiffs favor] (Atkinson, 709 F.3d 1201, 1207 (8th Cir. 2013), this would show the CBM/Summit Defendants were aware of the "inmate[s] face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it." (Kenyon, 2014 WL 3700878). Even if they were to

argue, as they did, that they provided an adequate diet per their "sham" nutritional analysis' (just now being provided after the deceitful tactics of saying the documents did not exist), they were *aware* of their claimed "adequate" menu not being followed (i.e. smaller portions, missing food, incorrect substitutions, etc.) and failing to correct it ever, ultimately resulting in a contract renewal being forfeited. These behaviors would apply to all defendants regarding CBM/Summit from the executives (previously dismissed) to the dieticians, to the management and supervisory staff to the kitchen staff committing the very acts described, as all were made aware and did not correct or implement action to correct it. Notably, this would be the very definition of an official custom or practice, as it would relate to the CBM/Summit organization itself. As the Plaintiff has repeatedly stated, the above acts were and are compounded due to the newly discovered *falsified* Nutritional Analysis' as they state the calories (and macronutrients and other vitamins and minerals) were sufficient to maintain health, which is the basis of this motion and other information is in support. As will be shown below those records are inaccurate and fraudulent as record evidence shows they are a ruse.

Importantly, the facts of their inadequate menu were laid out for them in detail in one of the grievances this Court pointed out (see Doc. 140-1, p. 2, 6 & 7). However, they again falsely claim without any support that "I think we can use the same reply for this as yesterday. 'Menus are planned according to contract requirements.' Thanks!" signed by Jessica Waldner, RD - Registered Dietitian (Doc. 140-1, p. 1). "To show deliberate indifference, an inmate must demonstrate that a prison official *knew* the 'inmate face[d] a substantial risk of serious harm and disregard[ed] that risk by failing to take reasonable measures to abate it.'" (Kenyon, 2014 WL 3700878 (quoting Coleman,

114 F.3d 778, 785 (8th Cir. 1997)). "The *Constitution is* [ ] *violated* if the food provided is inadequate to maintain good health" (emphasis added). (Jones, 2007 WL 2725218 (citing Burgin, 899 F.2d 733, 734-35 (8th Cir. 1990) (per curiam)). Thus, as this Court stated in the Order Granting the Summit Defendants' Motion for Summary Judgment (Doc. 185 at 12), Christians must show 1) that the nutrition he received was in adequate to maintain good health ***OR*** that he suffered weight loss or other adverse physical effects as a result of his diet; and 2) that the Summit Defendants were aware of and deliberately indifferent to the inadequate nutrition. An inmate must show that defendants "failed to act despite…*knowledge* of a *substantial risk* of serious harm" (emphasis added). Ingrassia, 825 F.3d at 897 (omission in original) (quoting Farmer, 511 U.S. 825, 842 (1994)). Emphasizing the word "***OR***" above, that is an alternative or option for the Plaintiff bringing the allegation to show the violation. Even though the CBM/Summit Defendants *may* not have been aware of Christians' extreme and unhealthy weight loss, as the evidence now shows they altered the actual nutritional analysis' overstating calories (and nutrients) to provide less food in order to boost commissary sales to which they also profited (see infra. E). The Court seems to hold the Plaintiff here to only the second half of the phrase and not the fact that Christians clearly had shown inadequate nutrition even with no discovery allowed. As stated in Nickens, 622 F.2d 967, 971 (8th Cir. 1980), "Courts must be sensitive to the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights."

Certainly *all* defendants listed in the complaint *KNOW* that underfeeding a human being results in a substantial risk of serious harm. Especially so of the Registered Dietician, Jessica Waldner who created the deceptive Nutritional Analysis' and top

supervisory staff John Trierweiler (District Manager of Dietary Services), Kevin Trierweiler (Site Manager/Dietary), and Jarred Anderson (Site Manager/Dietary) tried to hide them from this Court and Plaintiff for years. Also, see below (infra D) for perjured testimony by Justin Barthel (CBM/Summit Executive) who was previously dismissed as a defendant, stating these newly discovered and now known to be fraudulent Nutritional Analysis' never existed. In addition to fraudulently hiding these important documents from the Court and Plaintiff, they claimed they were "irrelevant" to the issue at hand by those Defendants. (See Doc. 221-1 & 221-2).

**D. Perjured Testimony**

In CBM/Summits' Defendants' Responses to Plaintiff's First and Second Set of Written Discovery (Doc. 118 at 30 & 35; also Doc. 221-1 at 3, Doc. 221-2 at 2), it is sworn "Summit Defendants state that they are not in the possession of any materials relating to a 'nutrient analysis,' and therefore, no responsive document exists." This is verified under oath by the Executive Director of Dietary for CBM/Summit, who swore "I, Justin Barthel, *under penalty of perjury* of the laws of the United States, state that I have read the foregoing Responses and Objections to Plaintiff Mark Christians' Second Set of Written Discovery to Summit Food Service, LLC and hereby verify that they are true to the best of my knowledge, information and belief" (Doc. 118 at 39; also Doc. 221-1 at 8, Doc. 221-2 at 6). For anyone in that organization to state that these documents, produced over a number of years, knowing they are what is relied upon to determine and show nutritional adequacy, is a virtual impossibility to say they never existed. It is a falsehood sworn under oath and that is flatly perjured testimony allowed (or possibly

encouraged) by their counsel and attorney, Patrick Q. Hustead. Only now, do they *magically* appear by some fairy or leprechaun, as is the assumption since they "never existed" and would be an "impossible production" (citations above).

**E. Exhibits/Evidence in Record versus Newly Discovered Evidence**

The focus of the following will be calories, generally speaking, but that does not discount the fact the other nutrients also listed, are over actual (real) amounts by the Defendants. These are only a few examples for the Court to consider this motion and are not all inclusive but will show fraud on the Court and in the least of terms create a genuine issue of material fact. Plaintiff nutritional facts are taken directly from food items he was able to acquire over the course of several years in custody. Importantly, many of those nutritional facts and food labels were stolen by the SDDOC in 2024, thus Christians is now limited on his actual food products. (Decl. Christians). However, other facts are taken from the United States Department of Agriculture - Nutritive Value of Foods (Doc 1-2; and submitted elsewhere in the record). That is a "Federal Government Report." "Furthermore, as an 'official publication' of 'a public authority[,]' this exhibit is self-authenticating pursuant to Fed. R. Evid. 902(5), and falls within the public records exception to the hearsay rule. See Fed. R. Evid. 803(8)." In Porter v. Cape Girardeau County, 2022 WL 990676 at fn5 it's cited "According to Rule of Evidence 201, the Court may take judicial notice of facts outside the record that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Noting this document is currently in the record. Fed. R. Evid. 902(5), 803(8) through 201(b) states this USDA Official publication "can be

accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

First Looking to Document 352, Exhibit 52-10 are the Nutrition Facts from Bran Flakes as from CBM/Summit (Decl. Christians). This shows a total of 90 calories for a 1-cup (30g) serving. In the newly discovered (hidden) evidence, the CBM/Summit defendants list the Bran Flakes for the same serving size at 110 calories. (Exhibit A-1 or "Response to Discovery (Supplemental) – Page 0155") That is 20 calories over the actual amounts. In other words, prisoners are receiving about 20 percent less calories than what CBM/Summit is claiming for only this *one* food item.

Next, I would point to Document 352, Exhibit 52-8 that shows a total of 50 calories for a 2-ounce (56g) serving. This will be added to the USDA standard for a four-ounce portion of Turkey Gravy as found in Document 1-2 at page 280 showing a listing under #950 Turkey (Gravies-canned) for ¼ cup (or 2 ounces) providing 31 calories. That total would be a 6-ounce serving providing a total calorie amount of 102.5 (103) calories. Please look to the enclosed Exhibit A-3 under the "Lunch" heading, "Turkey Stroganoff, Grnd [Ground], Poultry, 6o [6 ounces]" with a serving size of 6 ounces for a total provision of 318 calories. That is an over estimate of 215.5 (215) calories or underfeeding the prisoner population by 68% of what is fit for a reference adult male (5'10" at 154 lbs) (see Doc. 74 at 5, FN a) on this substantial part of a meal alone.

Next, with the same Document 352, Exhibit 52-8 that shows a total of 50 calories for a 2-ounce (56g) serving, I would like the Court to note the provision of that Turkey alone listed at 76 calories in enclosed Exhibit B-2. The 76 calories is for a 2.5 ounces serving listed by the Summit nutritional analysis, thus we must figure the correct

calculation for a 2.5-ounce serving of the *actual* product claimed to be served. For that we figure at 50 calories for a 2 ounce serving is 25 calories for a 1 ounce serving which converts to 12.5 calories for a half ounce (0.5 oz). So for the proper total of 2.5 ounces one would add 12.5 calories of the half ounce to the 50 calories for 2 ounces as listed on the actual food products nutritional facts and that total is 62.5 calories for a 2.5 ounce serving of the actual turkey product. That means the fraudulent nutritional analysis here also shows a shortage of 13.5 calories or only 82% of what is actuality or in truth.

Continuing with Exhibit B-2 the item listed as "Bread" and "2 Slices" shows a provision of 187 calories. Compare this to Exhibit E showing 2 slices of bread totaling 130 calories. Notably, that is for a brand name bread source (Sara Lee) which is a commissary purchase at great expense for the prisoner and available in the supermarket or grocery store. It is undisputed that CBM/Summit rarely, if ever, provided a quality food/nutrition source at a higher rate of cost to their company and bottom-line.

Looking at Exhibit B-1, the Charbroil Patty 3oz, Bun, and Ketchup PC have claimed provision of 188, 187, and 8 calories each, respectively. That is a total of 383 calories claimed to be served to prisoners. An *actual* standard meatless patty provides only 91 calories as can be seen in Document 1-2 on page 270 listed under #802 Meatless burger patty, frozen, MORNINGSTAR FARMS. Add those calories to a standard hamburger bun providing 123 calories (Document 1-2 at 260; #644 Hamburger (Rolls)). To show what an actual hamburger contains for calories that are served to the prison population, the simple math on this is 214 calories in total showing a difference of 169 calories from the claimed calories of the CBM/Summit Defendants for the same

food item or 55% less calories than they try to assert as truth. Additionally, in enclosed Exhibit G, we find Nutrition Information from fast food restaurant McDonald's. The Beef Burger and Cheese Burger provide 264 and 320 calories respectively. To put this in perspective the Defendants are *claiming* their "burger" has 119 calories more than a McDonald's Hamburger and 63 calories more than a McDonald's Cheeseburger. Noting that the CBM/Summit burger includes no cheese and *still* claimed to provide *more* calories than a fast-food chain cheeseburger. Apparently the Defendants are trying to claim their "burger" has 32% more calories that a McDonalds Hamburger. This is more than peculiar and a reasonable jury would find this quite interesting as a trier of fact. It is nothing but deception and fraudulent activity on this Court, reminding the Court that they falsely swore these "Nutritional Analysis'" *never existed*. Everything is adding up to willful misconduct, evil intent and purposes for profit at the cost of human suffering and in the South Dakota Prisons and Penitentiaries and violations of prisoners being entitled to adequate nutrition as wards of the State of South Dakota. The result of this is prisoners being unable to maintain their health.

Moving on to Exhibit F, which is a selection of Nutrition Facts from "Qdoba," a popular Mexican eatery known to be designated as fast food, we would pointing first to "Eggs (6 oz.)" with a calorie provision of 230 for that serving size, we will find a calorie per ounce of eggs to compare appropriately. To find the serving size in comparison to what the Defendants claimed to be served at 3.2 ounces we take the Qdoba calories of 230 divided by the 6-ounce serving equals 38.333 kcal per ounce. Then 38.333 x 3.2 ounces per CBM/Summits claimed serving amount is 122.666 or 123 kcal. Looking to Exhibit A-3 the Defendants claim that 3.2 ounces of eggs provide 144 calories and

Exhibit B-19 they claim the same amount provides 152 calories. That discrepancy alone is peculiar as it is the same food product from the same organization; However, the simple math shows those figures are inflated by 15% and 19% respectively than that compared to a fast food restaurants serving of eggs, which again a jury would find suspect. To sum that up, CBM/Summit claims to provide 21 and 29 more calories, respectively, for a standard egg that than of a fast food Mexican eatery. Additionally, to use the reliable USDA Food Values (Doc. 1-2 at 232) #150 Egg substitute at ¼ cup (2 oz.) which is converted to match that the amount claimed to be provided by the Defendants shows only 84.8 (85) calories for that serving. Again to put that in perspective, that is 59 and 67 calories less than what CBM/Summit are claiming in their fraudulent nutritional analysis' that they attempted to hide and swore under oath never existed. Come on, this is bogus, and they all need to be held liable as they know undoubtedly that these actions would cause the very health issues claimed by Christians and other prisoners. Hence, the "availability" of commissary which the Court knows a prisoner has no right to and they cannot purchase without proper funds or status in prison (i.e. not on any restrictive status, valid or not).

Lettuce is listed in Exhibits A-3 and B-20 as having 11 and 8 calories per cup respectively. Lettuce in reality has 7 calories per cup (Doc. 1-2 at 80; #1124) and is served as leaf containing only 1 calorie (Doc. 1-2 at 80; #1122). Again this over stated by the newly discovered evidence by 37% and 13% respectively. Importantly, the "Nutrient Analysis'" supplied by the Defendants show a one (1) cup portion as served. However, in Exhibit C this shows the actual serving of ½ cup. Thus in reality, the lettuce

served contains only a maximum of 3.5 calories or the falsified Nutrient Analysis' is over stated by 69% and 57%.

Rice is listed in Exhibits A-8 and B-17 as having 285 and 280 calories per cup respectively. We know according to the USDA cooked rice has only 205 calories per cup. The Defendants here over state that food item by 80 and 75 calories respectively or over stated by 29% and 27% respectively of the total calories claimed to be served to prisoners.

Spaghetti noodles contain 197 calories per cup served or 174 for whole wheat (Doc 1-2 at 50; #646 or #647). However, Exhibit A-1 claims their noodles provide 212 calories or a difference of 15 or 38 calories less than what is claimed to be provided. In the same exhibit, they claim their sauce provides 161 calories per ¾ cup while we know that the USDA rates that same serving size (3/4 cup) at 107 calories (143kcal/cup) (Doc. 1-2 at 280; #942). In reality, that is 54 calories under what they claim or 66% of the calories provided to prisoners than what is alleged. Noting for a "meat sauce" we would remove an ounce of sauce and replace it with an ounce of meat for a total of 114 calories. This is still 47 calories less than the Defendants' deceitful projections and only 70% of what is claimed.

**F. Additional Exhibits/Evidence - Briefly**

In attached Exhibit D – 1 through 3 are additional examples of random selections of food items now know to be falsified with the newly discovered evidence. Please view those as well as they are laid out in summary format for easier reading. Note the

citations are also limited and if the Court desires can be more fully briefed and cited for the record.

Looking at *Response to Discovery [Supplemental] – Page 0518 and elsewhere*, note the "Brown Gravy" contains 44 Calories per 2 ounce serving is the same as *Response to Discovery [Supplemental] – Page 0494 and elsewhere*, "Poultry Gravy" showing 44 calories. Comparing this to the *Response to Discovery [Supplemental] – Page 0503 and elsewhere,* "Hearty Meat Gravy" contains 406 Calories. We already know the casseroles are prepared with "ground poultry" so we can take the "Brown/Poultry Gravy" from above at 22 calories per ounce times 7 ounces equaling 154 ounces, adding the one (1) ounce of meat at 25 calories equals 179 calories. That is using THEIR gravy calories and THEIR food label for turkey/poultry. That is undisputable.

This shows for that serving alone a calories shortage of 227 calories that cannot be reasonably argued by the defendants, nor disputed by a reasonable jury or judge.

Looking at Italian Dressing, Bulk @ 1 ounce providing 127 Calories in the *Response to Discovery [Supplemental] – Page 0155 and elsewhere* and then to Salad Dressing @ ½ ounce providing 68 Calories in the *Response to Discovery [Supplemental] – Page 0155 and elsewhere.* First noting this matches the prior *actual* menu serving on ½ ounce. Then "Salad Dressing" is generic and vague. One cannot possibly determine a calorie count on a generic term as all salad dressings and different in make up (i.e. Ranch, Bleu Cheese, Thousand Island, Italian, Vinaigrettes, etc.)

These are just several randomly chosen examples and for judicial economy, the argument will stop there but should be sufficient to show the Court the fraudulent

activities of the CBM/Summit Defendants. If the Court desires, a comprehensive list can be provided upon request.

**G. Additional Legal Authority**

"Summary Judgment should be entered [only] after adequate time for discovery…" Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). And "in resolving the summary judgment motion, the evidence of the opposing party is to be believed." Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 255 (1986).

"Sustained deprivation of food that results in pain without any penological purpose can amount to cruel and unusual punishment." Phelps v. Karnolas, 308 F.3d 180, 187 (2nd Cir. 2002).

As stated by this District Court in Spotted Bear v. Poor Bear, 2025 WL 833881, "As the Eighth Circuit Court of Appeals instructs, the Court will…continue to be alert to the possibility that…" "When a court has denied a motion for counsel…strict procedural requirements should, in fairness, be relaxed to some degree." citing Williams v. Carter, 10 F.3d 563, 567 (8th Cir 1993). "Pleadings and other documents filed by pro se litigants should be treated with a degree of indulgence, in order to avoid a meritorious claim's being lost through inadvertence or misunderstatding." see Estelle v. Gamble 424 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); additional citations in original.

In regards to the Courts opinion that the lack of training was not pointedly enough to show deliberate indifference or policy or custom, Plaintiff would cite Garcia v. Salt Lake County, 768 F.2d 303,309 (10th Cir. 1985) at fn8 stating "if you have got ten people working for [CBM/Summit] [Defendants] and all of those people working for

[those Defendants] are following a pattern and practice that [is implemented or allowed by those Defendants]...then other [workers] come on and they don't do much. Then others don't do much, and the cumulative effect of the whole thing and the lack of training [and] the lack of supervision...which is [CMB/Summits'] policy [or custom] is what is volatile ot the civil rights act." "...the cumulative effect of what they do pursuant to some practice or policy [or custom] of the defendants could constitute a violation of the civil rights act against [CBM/Summit]. As this Court dismissed the lack of training stated through multiple sworn testimonies (Lint, Christians) even though they were required by contract to do so shows what is laid out as the exact scenario cited in Garcia, 786 (10th Cir. 1985). CBM/Summit with the help of the SDDOC defendants intentionally did not train prisoners or even their own staff as clearly required to do in contract and policy and allowed preparation and service of meals without proper supervision which resulted in a cumulative effect of missing food items, short portions, and such an atrocious quality of food that caused sickness and vomiting amongst other ills such as weight loss and muscle atrophy. All that is also sworn to in the record through the numerous sworn declarations of prisoners filed with the complaint, subsequently with other filing and up to and including those submitted with Document 352 of a request for emergency injunctive relief. Importantly, this lack of supervision and known requirements of a nutritional analysis led to that document being withheld and shown to be falsified, inaccurate, untrustworthy and deceitful. This is something the SDDOC defendants also allowed to occur or likely encouraged as they were well aware of all the nutritional facts and reliable information given to them by the Plaintiff.

**H. Conclusion**

In addition to the Courts power to amend a judgment for any other reason that justifies relief, Plaintiff has shown beyond a preponderance of the evidence of fraud on this Court and examples of perjured statement by both sets of Defendants. Also in the interest of justice and fundamental fairness to a human being and the special problems faced by prisoners attempting to proceed pro se in vindicating their constitutional rights.

WHEREFORE, Plaintiff respectfully request that this Motion for Rule 60 - Relief from a Final Judgment against all CBM/Summit Defendants be granted for the above reasons and allow this newly discovered evidence that is devious and fraudulently withheld from the Court to be used at a trial in addition to all the other reliable evidence and testimony in support of justice for this prisoner and those similarly situated.

Dated this 14th day of April, 2025.

Mark A. Christians
Mike Durfee State Prison
1412 Wood Street
Springfield, SD 57062

MARK CHRISTIANS #35285
M.D.S.P.
1412 WOOD STREET
SPRINGFIELD, SD 57062

UNITED STATES DISTRICT COURT
OFFICE OF THE CLERK
400 S. PHILLIPS AVE., ROOM 128
SIOUX FALLS, SD 57104

UNITED STATES POSTAL SERVICE® quadient

USPS TRACKING #

9488 8178 9820 3260 7015 11

Label 888-QDT, March 2023

LEGAL MAIL

AD

X-RAYED BY
SOUTH DAKOTA
CSO