IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF SOUTH DAKOTA
SOUTHERN DIVISION

MARK CHRISTIANS,

Plaintiff,

v.

DARRIN YOUNG, et al.

Defendants.

Case No. 4:20-CV-04083-LLP

**RESPONSE TO PLAINTIFF'S MOTION FOR RULE 60 RELIEF FROM A FINAL JUDGMENT [D.E. 385]**

Defendants, Jarred Anderson, Kelly Buchholz, John Trierweiler, Pamela Thomas, Justin Barthel, Unnamed Summit Licensed Dieticians, Unnamed Summit Dietary Assistants, Unnamed Summit Directors of Operations, Unnamed Summit District Managers, Unnamed Summit Food Service Directors, Unnamed Summit Assistant Food Service Directors, Unnamed Summit Food Service Workers and Summit Food Service, LLC, (collectively, "Summit Defendants"), through Summit Defendants' undersigned counsel, The Hustead Law Firm, *A Professional Corporation*, hereby submit the following Response to Plaintiff's Motion for Rule 60 Relief From a Final Judgment (D.E. 385) (the "Motion"), and in support thereof states as follows:

## I. INTRODUCTION

On or around April 24, 2025, Plaintiff filed his Motion for Rule 60 Relief from a Final Judgment (the "Rule 60 Motion" or "Motion") [D.E. 385]. On or around May 14, 2025, Plaintiff filed his Notice of Perjury [D.E. 396], Motion to Request Hearing to Show Cause [D.E. 397], and

Motion to Request Sanctions and/or Hearing to Show Cause [D.E. 400] (collectively, the "Filings"). On May 27, 2025, the Court ordered the Summit Defendants and the SDDOC to respond to the Filings (the "Order"). [D.E. 417 at 3]. As requested by the Court, the Summit Defendants submit this Response to Plaintiff's Motion for Rule 60 Relief from a Final Judgment. As explained herein, Plaintiff's Rule 60 Motion is without merit and should be dismissed.

Plaintiff moves for reconsideration pursuant to Federal Rule of Civil Procedure 60(b)(2), (3), and (6), as well as 60(d)(1) and (3), arguing that newly discovered evidence and alleged fraud – specifically, the Summit Defendants' purported misrepresentations and fabrication of documents – warrant relief. [D.E. 385 at 1]. First, Plaintiff argues that the Summit Defendants were aware of and deliberately indifferent to the inadequate nutrition because "the evidence now shows they altered the actual nutritional analysis' overstating calories (and nutrients) to provide less food in order to boost commissary sales to which they also profited," and that "[c]ertainly all defendants listed in the complaint KNOW that underfeeding a human being results in a substantial risk of serious harm." *Id.* at 9.

Second, Plaintiff argues that the Summit Defendants provided perjured testimony during discovery by stating that the Summit Defendants were "not in the possession of any materials relating to a 'nutrient analysis,' and therefore, no responsive document exists." *Id.* at 10. Plaintiff reasons that, having obtained these nutrition documents, their existence itself proves that the Summit Defendants knowingly misrepresented their availability. *Id.*

Third, Plaintiff argues that the new evidence "will show fraud on the Court and in the least of terms create a genuine issue of material fact."[1] *Id.* at 11. Plaintiff supports his position by comparing the caloric value in the newly received nutrition documents – reflecting food items

[1] Because the allegations in this section of Plaintiff's Rule 60 Motion relate to "fraud on the court," the Summit Defendants assume that Plaintiff is making this argument pursuant to Rule 60(d)(3).

provided by Summit Food Service, LLC – to random internal and external sources, including food labels he claims to have collected, the USDA's Nutritive Value of Foods report, and published caloric information from fast food chains. *Id.* at 11-18. Plaintiff asserts that discrepancies from these "random selections of food items" prove that the nutrition documents are "falsified, inaccurate, untrustworthy and deceitful." *Id.* at 14, 19.

Plaintiff's claims are untimely and lack substance. First, Plaintiff's Rule 60 Motion is untimely under Rule 60(c), which requires that a motion brought under Rule 60(b)(1), (2), or (3) be made "no more than one year after the entry of the judgment or order from which relief is sought." Fed. R. Civ. P. 60(c). Christians' Rule 60 Motion, having been filed well beyond the one-year deadline, is therefore barred as a matter of law.

Second, the alleged newly discovered evidence cited by Plaintiff does not invalidate the Court's prior summary judgment ruling because Plaintiff's new evidence and assertions do not alter the ruling. The alleged new evidence does not establish that the Summit Defendants were aware of a substantial risk of serious harm to Christians.

Third, Christians has failed to establish, by clear and convincing evidence, that the Summit Defendants engaged in fraud, misrepresentation, or other misconduct as required for relief under Rule 60(b)(3). Nor do Christians' conclusory allegations and speculative assertions meet the burden of proof required for relief based on fraud on the court under Rule 60(d)(3).

Accordingly, the Summit Defendants respectfully request that the Court dismiss Plaintiff's Rule 60 Motion for Relief from Final Judgment.

## II. BACKGROUND

This case arises from the meals that Summit Food Services, LLC ("Summit Food Services") served to Plaintiff, Mark Christians ("Christians" or "Plaintiff") during his incarceration

at Mike Durfee State Prison ("MDSP") in Springfield, SD and South Dakota State Penitentiary ("SDSP") in Sioux Falls, SD.[2] On or around May 27, 2020, Plaintiff filed this *pro se* civil rights lawsuit under 42 U.S.C. § 1983. [D.E. 1]. On or around November 10, 2020, Plaintiff amended his complaint to include claims against the Summit Defendants. [D.E. 26 ¶¶ 18-28]. Plaintiff alleges that the Summit Defendants violated the Eighth Amendment prohibition against cruel and unusual punishment for failing to provide Plaintiff with an adequate and nutritious diet. Plaintiff alleges that the Summit Defendants "acted with deliberate indifference to [Plaintiff's] nutritional needs causing pain, discomfort and a host of present and future health issues, constituting cruel and unusual punishment…" during his time at SDSP and MDSP. [D.E. 26 at ¶¶ 126, 145].

On or around July 5, 2022, the Summit Defendants filed their Motion for Summary Judgment. [D.E. 135; D.E. 136].[3] By order dated March 29, 2023, the Court granted the Summit Defendants' Motion for Summary Judgment [D.E. 185 at 5-23, 20], and entered judgment in favor of the Summit Defendants and against Christians [D.E. 186].

The Court found that "[t]here is no evidence in the record that the Summit Defendants were alerted to any of the harms that Christians alleges he suffered or was at risk of suffering. The Summit Defendants were not aware that Christians was losing weight or that he was losing muscle and strength." [D.E. 185 at 22-23]. Because there was no evidence that "the Summit Defendants were aware of and deliberately indifferent to Christians' nutritional needs because they were not aware of a substantial risk of serious harm to Christians[,]" the Court granted the Summit Defendants' Motion for Summary Judgment. *Id.* at 23. As addressed below, the newly obtained documents that Christians relies upon do not alter the Court's prior summary judgment analysis.

---

[2] Plaintiff has been incarcerated within the South Dakota Department of Corrections ("SDDOC") since 2013 and is serving an 80-year sentence for second-degree rape.

[3] The Summit Defendants incorporate by reference the arguments set forth in their Motion for Summary Judgment [D.E. 136].

The documents are consistent with the existing record, do not establish any material factual dispute, and would have never produced a different outcome if presented earlier.

More than two years later, on or around April 24, 2025, Christians filed his Rule 60 Motion. [D.E. 385]. In preparation for trial of the claims against the SDDOC Defendants that survived summary judgment, Christians received "745 pages of discovery documents, including 'Nutrient Analysis,' 'Menus,' and other related documents" from the SDDOC Defendants. [D.E. 386 ⁋ 1]. Christians contends that he requested that the Summit Defendants produce nutritional analyses for diets served during the time when Summit Food Services was the contracted food provider for the SDDOC. [D.E. 385 at 2]. Christians alleges that the Summit Defendants represented to Christians that the nutrition documents he has recently received did not exist, and therefore, he is entitled to relief under Rule 60(b)(2), (2), and (6) as well as Rule 60(d)(1) and (3). [D.E. 385].

## III. ARGUMENT

### A. Legal Standard.

A motion for reconsideration is not described in the Federal Rules of Civil Procedure, but such a motion is typically construed either as a Rule 59(e) motion to alter or amend the judgment or as a Rule 60(b) motion for relief from judgment. *Walsh v. Toro*, No. 4:24-CV-04018-CCT, 2025 WL 1638559, at *2 (D.S.D. June 9, 2025) (quoting *Auto Servs. Co., Inc. v. KPMG, LLP*, 537 F.3d 853, 855 (8th Cir. 2008)). Rule 60(b) motions, however, do not allow movants to "simply relitigate issues the [court] has already ruled upon." *Buergofol GMBH v. Omega Liner Co., Inc.*, No. 4:22-CV-04112-KES, 2025 WL 1640486, at *1 (D.S.D. June 9, 2025) (citing *In re SDDS, Inc.*, 225 F.3d 970, 972 (8th Cir. 2000); *Broadway v. Norris*, 193 F.3d 987, 989-90 (8th Cir. 1999) ("[T]he purpose of [Rule 60(b)]…is not a vehicle for simple reargument on the merits.")). "Rule 60(b) authorizes relief in only the most exceptional of cases." *Noble v. Am. Nat'l Prop. & Cas.*

*Ins. Co.*, No. CIV. 17-5088-JLV, 2018 WL 11190704, at *1 (D.S.D. May 4, 2018) (quoting *Noah v. Bond Cold Storage*, 408 F.3d 1043, 1045 (8th Cir. 2005).

**B. Christians' Rule 60 Motion Is Untimely and Unreasonably Delayed under Rule 60(c).**

Christians moves for relief from final judgment under Rule 60(b)(2), (3), or (6) on the basis that he "has just received 745 pages of documents of 'Nutritional Analysis' that [the Summit Defendants] have repeatedly claimed did not exist." [D.E. 385 at 1-2]. Under Rule 60(b), a "court may relieve a party…from final judgment" for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Because Plaintiff's motion relies on a combination of allegedly newly discovered evidence and alleged fraud, his motion arises under Rule 60(b)(2) and (b)(3) and is therefore subject to the one year limitation period. Fed. R. Civ. P. 60(c). Even if Christians were to assert a sufficient basis for relief under Rule 60 (he does not), Christians' Rule 60 Motion is untimely.

Pursuant to Rule 60(c), a Rule 60(b) motion "must be made within a reasonable time – and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c); *Smith v. S. Dakota Dep't of Corr.*, No. 4:08-CV-04187-LLP, 2024 WL 3567421, at *3 (D.S.D. July 29, 2024).

In *Smith v. S. Dakota Dep't of Corr.*, the plaintiff, an inmate at the South Dakota State Penitentiary who had filed a *pro se* civil rights action, sought relief from final judgment on the grounds of newly discovered evidence and fraud, misrepresentation, and misconduct on the parts of the defendants. 2024 WL 3567421, at *3. The District Court for the Southern District of South

Dakota found that the plaintiff's "relief from the…order and judgment under Rule 60(b)(2) and (3) are not timely because they were filed more than a year after entry of the judgment and order," and that, "[b]ecause [his] Rule 60 motions are not timely, this Court need not consider the merits of the motions." *Id.*

Similarly, in *Toro v. DYFS*, a *pro se* plaintiff's complaint was dismissed for failure to state a claim and closed case after the plaintiff failed to timely amend. No. CV 20-14821 (GC) (DEA), 2024 WL 3833549, at *2 (D.N.J. Aug. 15, 2024). After an unsuccessful appeal, the plaintiff filed a second appeal that was dismissed on procedural grounds. *Id.* Almost two years later, the plaintiff filed a motion requesting that the case be reopened. *Id.*

Although the plaintiff did not cite a legal rule in her motion, the court liberally construed the filing – as required for *pro se* litigants – as a motion under Federal Rule of Civil Procedure 60. *Id.* The *Toro* court denied the *pro se* plaintiff's motion to reopen the case under Rule 60, holding that "even if Plaintiff were to assert a sufficient basis under Rule 60 to reopen this matter, Plaintiff's motion is untimely." *Id.* at *3. The court emphasized that plaintiff's motion, filed two years after her second appeal was dismissed, was untimely under any subsection of Rule 60(b) "even under the most generous application of Rule 60(c)'s time limits." *Id.*

To the extent that Christians may argue that his level of legal ability as a *pro se* plaintiff serves as grounds for a more relaxed procedural standard under Rule 60, this argument is misguided. "Although the Supreme Court has relaxed certain standards and rules when confronted with *pro se* filings by prisoners in criminal cases, it has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.'" *Bowie v. Maddox*, 677 F. Supp. 2d 276, 281 (D.D.C. 2010) (quoting *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993)).

In *Bowie*, a *pro se* plaintiff filed a Rule 60(b)(3) motion seeking relief from the district court's order denying his motion for judgment as a matter of law and a new trial following an adverse jury verdict in his wrongful termination case. 677 F. Supp. 2d at 278-79. The plaintiff alleged that the verdict was tainted by fraud, claiming that the defendants submitted a forged affidavit in a related case and made misrepresentations throughout the proceedings. *Id.* While the plaintiff filed his motion "with little over an hour before the one-year time limit ran out," the court found the delay unjustified. *Id.* at 279-282.

Despite the plaintiff's claim that he had only recently become aware of the alleged fraud, the court found that he had known about the disputed affidavit and potential misconduct as early as four years before the final judgment in his case. *Id.* at 280-281. The *Bowie* court rejected his argument that confusion stemming from his *pro se* status excused the delay, noting that he had represented himself for five years and had ample opportunity to investigate and raise these issues earlier. *Id.* The court reiterated that while *pro se* filings are construed liberally, procedural rules like those in Rule 60 still apply, and the plaintiff's lack of timely action and insufficient justification rendered his motion untimely and without merit. *Id.*

Final judgment was granted in favor of the Summit Defendants and against Christians on March 29, 2023. [D.E.185, 186]. Christians' Rule 60 Motion was not filed until April 24, 2025, more than two years later. [D.E. 385]. Thus, his Motion is untimely under Rule 60(c).

As courts have consistently held, failure to meet the one-year deadline is dispositive, and the Court need not address the merits of the Motion. *See Smith*, 2024 WL 3567421, at *3.

Furthermore, Christians admits that he was aware of the documents that form the basis of his Rule 60 Motion over a year ago - no later than March 13, ***2024*** [D.E. 295 at 1-3; D.E. 310 at 1; D.E. 312 at 2-3], yet he did not file his Motion until April 24, 2025 – more than one year later.

As in *Bowie*, Christians has not justified the delay despite knowing of the alleged basis for relief for over a year.

Nor does Christians' *pro se* status warrant a more lenient standard. Christians has been representing himself for approximately five years, and is no stranger to procedural obligations. As *Smith*, *Toro*, and *Bowie* all confirm, courts do not excuse non-compliance with procedural rules solely because a party is *pro se*. Accordingly, the Summit Defendants respectfully request that the Court dismiss Plaintiff's Rule 60 Motion as both untimely and unreasonably delayed.

Christians also cites Rule 60(b)(6) which provides relief "from a final judgment, order, or proceeding for…any other reason that justifies relief." [D.E. 385 at 1]. Relief under Rule 60(b)(6) is available only in extraordinary circumstances, and courts have held that a motion for relief from final judgment based on Rule 60(b)(6) must still be brought within a reasonable time. *Jones v. Swanson*, 512 F.3d 1045, 1049 (8th Cir. 2008) (citing *Lester v. Empire Fire and Marine Ins. Co.,* 653 F.2d 353, 354 (8th Cir. 1981)).

The one year time limit, however, "applies regardless of whether the petitioner seeks to frame his petition as if brought pursuant to the more general Rule 60(b)(6)." *Kemp v. United States*, 596 U.S. 528, 538, 142 S. Ct. 1856, 1863-65, 213 L. Ed. 2d 90 (2022); *see also Jones*, 512 F.3d at 1049 (holding that "absent special circumstances, it would be unreasonable to vacate a judgment based on third-party fraud after more than one year when a similar motion based on fraud by a party would be barred by Rule 60(b)(3) if brought after more than one year") (internal quotations omitted); *Middleton v. McDonald*, 388 F.3d 614, 616 (8th Cir. 2004) ("Although Middleton recites Rule 60(b)(6), which is not subject to the one-year limitation, as the basis for setting aside the earlier judgment of dismissal, the substance of his motion clearly implicates

subsection (3) by stating that "the circumstances here strongly suggest bad faith on the part of the State" in entering into the settlement.").

Because the substance of Christians' Rule 60 Motion is grounded in subsection (2) and (3), the claim is subject to the one-year limitation period under Rule 60(c). Fed. R. Civ. P 60(c). As in *Middleton*, Christians cannot avoid the one-year limitation by labeling the motion as brought pursuant to subsection (6). Again, Christians filed this Rule 60 Motion on April 24, 2025 – over two years after the Court granted the Summit Defendants' Motion for Summary Judgment on March 29, 2023. Christians cannot disguise his Rule 60(2) or (3) Motion as a subsection (6) motion in order to gain the benefits of a more generous time limitation. Accordingly, the Summit Defendants respectfully request that the Court dismiss Christians' Rule 60(b)(6) Motion as untimely.

**C. The Newly Obtained Nutrition Documents Do Not Change the Outcome of Christians' Claims against the Summit Defendants.**

Christians argues that the newly disclosed nutrition documents would have altered the outcome of the Court's March 29, 2023, entry of summary judgment in favor of the Summit Defendants and against Christians. [D.E. 385 at 9]. He contends that "the evidence now shows [Summit Defendants] altered the actual nutritional analysis overstating calories (and nutrients) to provide less food in order to boost commissary sales to which they also profited." *Id.* Based on this conclusory allegation, Christians argues that the nutrition documents establish that the Summit Defendants knew of a substantial risk of serious harm to his health and failed to take measures to address that risk, in violation of the Eighth Amendment. *Id.*

The newly obtained documents do not create a genuine dispute as to any material fact related to the Summit Defendants' knowledge regarding a risk of harm to Christians' health. Under Rule 60(b)(2), the movant must demonstrate how the newly discovered evidence would change

the outcome of the dismissal of his case on the grounds stated in the court's order. *See Mitchell v. Shalala*, 48 F.3d 1039, 1041-42 (8th Cir. 1995) (affirming denial of Rule 60(b)(2) motion to introduce newly discovered evidence because plaintiff failed to show due diligence, and her new evidence was unlikely to produce different results); *Bacon v. Greyhound Lines, Inc.*, 221 F.3d 1341 (8th Cir. 2000) (noting that Rule 60(b) relief is not appropriate where the allegedly new evidence would not change the outcome).

"A movant may prevail on a Rule 60(b)(2) motion by showing: (1) the evidence was discovered after trial; (2) due diligence was exercised to discover the evidence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence is such that a new trial would probably produce a different result." *Mitchell*, 48 F.3d at 1041.

In *Mitchell*, the plaintiff filed a Rule 60(b)(2) motion seeking relief from a final judgment affirming the denial of his Social Security disability benefits. *Id.* at 1040-41. The plaintiff argued that newly discovered evidence (a psychological evaluation conducted after the administrative hearing) demonstrated that he qualified as disabled. *Id.* The *Mitchell* court held that the plaintiff failed to meet the standards required for relief under Rule 60(b)(2). *Id.* at 1042. The court, noting that Rule 60(b)(2) motions are generally disfavored, found that (1) the plaintiff failed to act with due diligence (although he was unrepresented at the administrative hearing, he retained counsel shortly after but still delayed in obtaining and submitting the evaluation), and (2) "the psychological screening, when considered with the evidence before the [Administrative Law Judge], would [not] have changed the outcome of his case." *Id.* at 1041.

Similar to the plaintiff in *Mitchell*, Christians fails to meet the requirements for relief under Rule 60(b)(2). Here, Christians did not act with due diligence; although he discovered the existence of the documents on March 13, 2024, he did not file his Motion until April 24, 2025,

more than a year later. As in *Mitchell*, where the court rejected a Rule 60(b)(2) motion based on an unexplained delay, Christians offers no adequate justification for his delay.

Moreover, Christians fails to show how the nutrition documents would alter the Court's prior entry of summary judgment. Christians' argument primarily relies on evidence already presented – declarations from inmates and correspondence by and between the Summit Defendants, the SDDOC, and Christians. [D.E. 385 at 5-9].

The Court has previously held that "to show that the Summit Defendants were deliberately indifferent to his nutritional needs, Christians must show that they 'failed to act despite…knowledge of a substantial risk of serious harm.'"[4] [D.E. 185 at 22]. The documents fail to show that the Summit Defendants knew of any risk of serious harm to Christians' health, let alone that they consciously disregarded such a risk. Moreover, Plaintiff barely addresses how the newly obtained nutrition documents establish this component of his claim. *Id.* Instead, he offers a baseless accusation that the documents are "falsified." *Id.* Christians presents no evidentiary support for this absurd allegation.

On the contrary, the nutrition documents affirm the Court's finding that the Summit Defendants' were unaware of a substantial risk of serious harm, as the documents support that Summit's menus were designed to provide sufficient calories and nutrients to an average, sedentary male. *See* Affidavit of Barbara Wakeen, a copy of which is attached as **Exhibit 1** and incorporated by reference herein. In 2017, an evaluation by independent consultant, Barbara Wakeen ("Ms. Wakeen") was undertaken to "ensure inmates have access to nutritious meals while incarcerated with SDDOC facilities."[5] [D.E. 104 at 7; D.E. 99-78]. In 2019, Ms. Wakeen

---

[4] Citing *Ingrassia v. Schafer*, 825 F.3d 891, 897 (8th Cir. 2016).

[5] The record reflects that "the 2017 evaluation of the Prison Food Service Program was completed only a matter of days before Christians, on January 4, 2018, reported to Health Services with complaints of excessive weight loss." [D.E. 100 at 8].

conducted another independent evaluation of the Food Services Program. [D.E. 104 at 9; D.E. 99-79].

In Ms. Wakeen's analyses, which were based off the nutrition documents at issue, she concluded that the meals provided exceeded the caloric needs of a sedentary adult male and that there was no basis to believe that Christians' diet fell below nutritional adequacy. **Ex. 1** at 6-7. Specifically, she stated that she "certainly had no reason to believe that the meals, as now alleged by Inmate Christians, provided only approximately 1750 calories per day," and that if she "had any concerns regarding the average number of calories provided being below that recommended for the adult reference male, [she believes she] would have included those concerns in [her] 2019 report along with my appropriate recommendations." *Id.*

As in *Mitchell*, where the alleged new evidence was deemed insufficient to alter the outcome, Christians has not presented new evidence that would change the Court's prior decision. Rather, the nutrition documents are largely cumulative, echoing facts already established by the meal menus previously provided to Christians by the Summit Defendants. Furthermore, as demonstrated by analyses conducted by Ms. Wakeen, the documents support the Court's 2023 entry of summary judgment in favor of the Summit Defendants. Accordingly, Rule 60(b)(2) relief is not warranted.

**D. Christians' Broad and Unsubstantiated Allegations Without Supporting Evidence Do Not Support Relief Pursuant to Rule 60(b)(3) or Rule 60(d)(3).**

Third, Christians argues that discrepancies between the caloric values in the newly obtained nutrition documents and his own external comparisons prove that the Summit Defendants intentionally falsified the nutrition documents in order defraud the Court. [D.E. 385 at 2]. Christians reasons that "[w]ith this newly discovered information that all Defendants were deceitful about, Christians can prove beyond a preponderance of the evidence that CMB/Summit,

falsified these documents in an overall custom and policy to defraud prisoners of adequate nutrition and force an increase in commissary sales (by starving and malnourish[ing] prisoners) for profit in multiple areas." *Id.*

To support his argument that the nutrition documents are altered, Christians engages in apples-to-oranges comparisons, juxtaposing caloric values from the newly obtained nutrition documents with data from various unrelated internal and external sources. *Id.* at 11-18. He contends that minor discrepancies among these values demonstrate that the Summit Defendants intentionally and fraudulently altered the documents to purposefully mislead both Christians and the Court. *Id.* He further asserts that this alleged falsification explains why the documents were not produced during discovery. *Id.*

Christians' allegations do not meet the standard required to support relief pursuant to Rule 60(b)(3). "To prevail on a Rule 60(b)(3) motion, the moving party 'must establish that the adverse party engaged in fraud or other misconduct and that this conduct prevented the moving party from fully and fairly presenting its case.'" *Cook v. City of Bella Villa*, 582 F.3d 840, 855 (8th Cir. 2009) (quoting *E.F. Hutton & Co, Inc. v. Berns*, 757 F.2d 215, 216-17 (8th Cir. 1985)); *Atkinson v. Prudential Property Co.*, 43 F.3d 367, 372-73 (8th Cir. 1994). The movant must establish their position by clear and convincing evidence. *Id.*

In *Atkinson*, a real estate broker sued for commission payments after the defendants leased space the broker had helped identify. 43 F.3d at 369. The district court granted summary judgment to the defendants because the plaintiff lacked a written agreement that met statutory requirements. *Id.* at 370. Nearly a year later, the plaintiff filed a Rule 60(b)(3) motion to vacate the judgment, arguing that the defendants failed to disclose a letter relevant to his commission claim. *Id.* at 372.

The Eighth Circuit affirmed the district court's denial of the plaintiff's Rule 60 motion, holding that failure to produce evidence in discovery is not, by itself, sufficient grounds for Rule 60(b)(3) relief. *Id.* at 373. The movant must show that the failure was due to fraud, misrepresentation, or misconduct by the opposing party. *Id.* at 372. Because the allegedly undisclosed letter had been in the plaintiff's possession all along, and because the defendants submitted affidavits showing they were not aware of the letter's existence, the *Atkinson* court found no evidence of misconduct. *Id.*

Further, the court emphasized that relief is not warranted, as here, where the withheld evidence would not have changed the outcome. *Id.* at 373 ("[P]roduction of the letter would have made absolutely no difference in the result. Hence, we cannot say that Atkinson was denied the opportunity to fully and fairly litigate his claim.").

Even if Christians can show that the Summit Defendants made a misrepresentation by stating that they were not in possession of the nutrition documents, that alone is not sufficient to warrant relief under Rule 60(b)(3). *Cook*, 582 F.3d at 855; *E.F. Hutton*, 757 F.2d at 216-17; *Atkinson*, 43 F.3d at 372-73. Christians must also demonstrate that the alleged misrepresentation prevented him from fully and fairly presenting his case. *Atkinson*, 43 F.3d at 372-73. Here, as in *Atkinson*, the nutrition documents could not have helped Christians even if it had been available at the time of summary judgment. *See infra* § C. Therefore, its absence did not deprive Christians from fairly presenting his case. Accordingly, because Christians fails to demonstrate prejudice from any alleged misrepresentation, the Summit Defendants respectfully request that the Court dismiss his Rule 60(b)(3) Motion.

In addition to requesting reconsideration under Rule 60(b)(3), Plaintiff asks this Court to grant him such relief based on "fraud on the court." [D.E. 385 at 1, 11-18]. Christians makes this

argument under Rule 60(d)(3), which provides that Rule 60 does not limit a court's power to "set aside a judgment for fraud on the court." Fed. R. Civ. P. 60(d)(3).

"The 'fraud on the court' standard is distinct from the more general fraud standard of Rule 60(b)(3)." *Greiner v. City of Champlin*, 152 F.3d 787, 788-89 (8th Cir. 1998). Relief on the basis of fraud on the court is not subject to Rule 60's one-year time limit but requires "a finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel…" *Landscape Properties, Inc., v. Vogel*, 46 F.3d 1416, 1422 (8th Cir. 1995).

Christians' claims that the Summit Defendants' failure to disclose the nutrition documents constitutes fraud on the court is insufficient. *See Rogerson v. United States*, No. CIV. 08-5060, 2010 WL 2028090, at *7-8 (D.S.D. May 21, 2010) (Mere proof of nondisclosure is not sufficient to set aside a judgment for fraud on the court.); *Tyler v. Purkett*, 413 F.3d 696, 701 n..7 (8th Cir. 2005) ("[C]laims that a party did not disclose to a court certain facts allegedly pertinent to the matter before it do not normally constitute fraud on the court"); *see also* Perjury, 21A Fed. Proc., L. Ed. § 51:198 ("Perjury of a single witness is not sufficient to set aside a judgment for 'fraud upon the court,' not is it proof of nondisclosure adequate, but rather there must be shown action representing a deliberately planned and carefully executed scheme to defraud a public institution…"). Even assuming *arguendo* that Christians can demonstrate perjury (he does not),[6] such a showing is insufficient to warrant relief under Rule 60(d)(3). *Id.*

In *Bowie*, in addition to seeking relief under Rule 60(b)(3), the *pro se* plaintiff sought relief on the basis of fraud on the court under Rule 60(d)(3). 677 F. Supp. 2d at 282. He alleged that

[6] All arguments regarding the insufficiency of Christians' perjury allegations are set forth in the Summit Defendants' Response to Plaintiff's Notice of Perjury [D.E. 396], Request for Order to Show Cause [D.E. 397], and Motion for Sanctions [D.E. 400], and are incorporated by reference herein.

the defendants knowingly relied on a forged affidavit, made false representations, and misled the court about its authenticity. *Id.* at 282-84. The plaintiff also accused specific attorneys of making perjurious or misleading statements in affidavits and during prior hearings. *Id.* Additionally, he pointed to typographical differences in documents, gaps in communication, conflicting recollections, and circumstantial evidence such as the timing of the affidavit's preparation. *Id.*

The *Bowie* court concluded that many of the plaintiff's arguments were based on conjecture, lacked factual support, and relied on inferences that were equally consistent with mistake, oversight, or faulty memory.[7] *Id.* ("[P]laintiff only makes bare allegations and does not clearly and convincingly prove that defendants' statement was more than mere mistake…Even if her statement was not true, plaintiff provides no clear and convincing evidence that her misstatement was more than a mistake or lapse of memory."). Despite the volume of allegations, the court found that the plaintiff failed to provide clear and convincing evidence that any fraud occurred, let alone that it met the high threshold for fraud on the court. *Id.*

As in *Bowie*, Christians offers no evidence of intentional fabrication or a deliberate scheme to defraud the Court.[8] Instead, he relies on discrepancies between the nutrition documents and generalized food data from commercial labels, USDA data, and random fast food data. The comparisons Christians offers are riddled with flawed assumptions as he routinely fails to compare like products:

- <u>Bread Comparison (Exhibits B-2 and E)</u> – Plaintiff compares bread served in meals (Exhibit B-2) to bread purchased from the commissary (Exhibit E) without

[7] The claim that the affidavit was forged was based largely on formatting discrepancies and the plaintiff's own denial of authorship – without evidence or proof of intentional fabrication by the defendants; allegations of false statements by opposing counsel were unsupported by evidence that would show intentional deceit.

[8] It is critical to understand that neither Mr. Barthels nor the Summit Defendants would have any motivation to not provide a nutritional analysis of the food served to Christians, for the reason that all of Summit's nutritional data supports the Summit Defendants' position in this case, which is that the nutritional value of the food served to Christians was sufficient by any reasonable standard. **Ex. 2** at 6.

accounting for differences in weight or formulation. [D.E. 385 at 13]. Bread slices will differ in weight, and therefore, calories per slice will differ depending on the specific item purchased, even if those items are purchased through the same vendor. *See* Declaration of Justin Barthel, a copy of which is attached as **Exhibit 2** and incorporated by reference herein.

- <u>Egg Comparisons (Exhibit F, A-3, B-19)</u> – Plaintiff compares an unspecified type of egg from Qdoba to an "egg patty" (Exhibit A-3) and "scrambled eggs" (Exhibit B-19). [D.E. 385 at 14-15]. The "scrambled eggs" are a different product than the "egg patty" and a different product than eggs from Qdoba. **Ex. 2** at 7. Plaintiff then compares these products to an egg substitute product, which is a different product than any of the other products. *Id.* Calories for each of these products will vary depending on product weight and formulation. **Ex. 2** at 7-8.
- <u>Lettuce Comparisons (Exhibits A-3, B-12, C)</u> – Plaintiff compares "lettuce salad mix" (Exhibits A-3, B-20, C) to a different "lettuce salad" from Summit's vendor (Exhibit B-12) and a salad from Aramark, a completely different food service company. [D.E. 385 at 15-16]. There are more ingredients than just lettuce in the "lettuce salad mix," and there are many different kinds of lettuce mixes all with different ingredients. **Ex. 2** at 8. These comparisons that likely do not contain the same ingredients would likely show differences of caloric content because they are not the same product. *Id.*
- <u>Rice Comparison (Exhibit A-8, B-17)</u> – Plaintiff compares multi-ingredient rice recipes "rice pilaf" (Exhibit A-8) and "fluffy rice" (Exhibit B-17), to a single-ingredient rice, as listed by the USDA. [D.E. 385 at 16]. The nutrition reflected

on the report is the nutrition provided by Summit's vendor for the specific recipe and should not be compared to random sources or generalized USDA baselines. **Ex. 2** at 8.

- Spaghetti and Sauce Comparisons (Exhibit A-1) – Plaintiff compares Summit's "spaghetti" and "sauce" recipe to USDA data without accounting for the actual recipes used. [D.E. 385 at 16]. Summit recipes may include added ingredients that significantly alter caloric values. **Ex. 2** at 8. The caloric values provided by Summit match the specific recipes used, not generalized USDA baselines. *Id.*

Christians' comparisons point to inconsistencies that are attributable to his own misunderstandings and flawed methodology, not intentional deceit by the Summit Defendants.[9] Caloric variation alone, particularly when based on incomparable data sources, does not equate to deliberate misconduct or misrepresentation, nor does it establish that any documents were intentionally withheld during discovery for improper purposes. *See Estes v. ECMC Grp., Inc.*, 565 F. Supp. 3d 239, 242 (D.N.H. 2021) ("At bottom, plaintiffs' claims of falsification boil down to assertions that certain documents provided by ECMC contain inaccuracies and that the documents contradict each other. These contentions go to the documents' accuracy and reliability; they do not demonstrate by clear and convincing evidence that ECMC intentionally falsified the documents, let alone that they did so in an attempt to perpetrate a fraud on the court.").

Moreover, the nutritional values in the nutrition documents remain consistent with previously provided menus showing that the Summit Defendants provided Christians with an adequate and nutritionally sufficient diet. **Ex. 1.** The nutrition documents only further support the Court's March 29, 2023, finding that there was no evidence that "the Summit Defendants were

[9] *See* **Ex. 2** for a full list of responses to Plaintiff's comparisons.

aware of and deliberately indifferent to Christians' nutritional needs because they were not aware of a substantial risk of serious harm to Christians."[10] [D.E. 185 at 23].

Plaintiff's theory is not only factually unsupported, but it falls far short of the high standard required under Rule 60(d)(3) to justify relief from judgment. Christians cannot establish egregious misconduct or intentional deception aimed at the Court. Therefore, his argument that the Summit Defendants have committed fraud on the court is without merit. Accordingly, the Summit Defendants respectfully request that the Court dismiss Christians' Rule 60(d)(3) Motion.

## IV. CONCLUSION

Christians' Rule 60 Motion is untimely and unjustifiably delayed under Rule 60(c). Even if timely, the newly obtained documents would not change the outcome of the case, as they do not alter the Court's prior finding that the Summit Defendants were not aware of a substantial risk of harm to Christians. Christians also fails to meet the requirements for relief under Rule 60(b)(3), as he has not provided clear and convincing evidence of misconduct that prevented him from fairly representing his claims. Finally, his speculative accusations based on apples-to-oranges comparisons falls far short of the stringent threshold for "fraud on the court" under Rule 60(d)(3), which requires proof of egregious misconduct directed at the judicial process. Accordingly, the Summit Defendants respectfully request that the Court dismiss Plaintiff's Rule 60 Motion for Relief from Judgment.

[10] Ms. Wakeen reviewed the nutrition documents and concluded that the meals served to Plaintiff exceeded the recommended caloric intake for a referenced adult male, that there was no indication that the meals fell below that standard, and that she had no reason to believe Plaintiff was receiving only approximately 1,750 calories per day, as alleged. **Ex. 1** at 5-7.

Respectfully submitted this 27th day of June, 2025.

THE HUSTEAD LAW FIRM

*A Professional Corporation*

*The Original Signature is on File at The Hustead Law Firm, A Professional Corporation*

*s/ Patrick Q. Hustead*
Patrick Q. Hustead, Esq.
THE HUSTEAD LAW FIRM,
*A Professional Corporation*
4643 S. Ulster Street, Suite 1250
Denver, CO 80237
(303) 721-5000
*Attorney for Summit Defendants and Summit Food Service, LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 27th of June, 2025, a true and correct copy of the foregoing **RESPONSE TO PLAINTIFF'S MOTION FOR RULE 60 RELIEF FROM A FINAL JUDGMENT [D.E. 385]** was served via ECF and/or e-mail, or United States Mail, first-class, postage prepaid, and to the following:

Via U.S. Mail:
Mark Christians #35285
South Dakota State Penitentiary
Jameson Unit
P.O. Box 5911
Sioux Falls, SD 57117-5911
*Pro Se Plaintiff*

Via ECF:
Amanda Miiller, Esq.
Office of the Attorney General of South Dakota
1302 E. Highway 14, Suite 1
Pierre, SD 57501-8501
(605) 773-3215
amanda.miiller@state.sd.us

*Attorneys for Darin Young, Troy Ponto, Jessica Cook, Brent Fluke, Rebecca Schieffer, Alex Reyes, Cody Hanson, Seth Hughes, Nancy Christensen, Derek Ekeren, Deb Eilers, Laurie Stratman, Julie Stevens, Craig Mousel, Lieutenant Maddox, Denny Kaemingk, and Sharon Reiman*

*s/ Patrick Q. Hustead*
Patrick Q. Hustead, Esq.