UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| MARK CHRISTIANS, | 4:20-CV-04083-LLP |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER ON POST-TRIAL MOTIONS |
| DARIN YOUNG, in his individual capacity; TROY PONTO, Deputy Warden SDSP, individual capacity; JESSICA COOK, Associate Warden SDSP/Jameson, individual capacity; BRENT FLUKE, Former Warden MDSP, individual capacity; REBECCA SCHIEFFER, Associate Warden MDSP, individual capacity; ALEX REYES, Associate Warden MDSP, individual capacity; SETH HUGHES, Unit Manager Jameson, individual capacity; NANCY CHRISTENSEN, Unit Manager MDSP, individual capacity; DEB EILERS, Unit Coordinator MDSP, individual capacity; LAURIE STRATMAN, Unit Coordinator MDSP, individual capacity; JULIE STEVENS, Case Manager MDSP, individual capacity; ANGELA PECHOUS, Unit Coordinator, individual capacity; GREASMAN, a/k/a ADAM SIMS, Correctional Officer, individual capacity; BRYAN MARJAMA, Correctional Officer, individual capacity; KENDRICK WINTERS, Correctional Officer, individual capacity; ANGEL PADILLA, Correctional Officer, individual capacity; MATTHEW HULSCHER, Correctional Officer, individual capacity; JENNIFER DREISKE, Former Deputy Warden, individual capacity; JORDAN BECKER, Lieutenant, individual capacity; PRESTON PERRET, Lieutenant, individual capacity, | |
| Defendants. | |

After entry of judgment following a jury trial, the parties have filed various post-trial motions. *See* Docs. 539, 544, 550, 551, 553, 602, 604. The Court now considers these motions.

## I.    Procedural Background

Mark Anthony Christians commenced this *pro se* action under 42 U.S.C. § 1983 seeking to recover for the alleged denial of his constitutional rights. Doc. 1. Two of Christians' claims survived summary judgment: an Eighth Amendment inadequate nutrition claim from March 2017 to August 13, 2018, and an Eighth Amendment inadequate nutrition claim from March 2021 to May 2021. Doc. 382. This Court appointed counsel to represent Christians during trial and scheduled a jury trial on Christians' surviving claims beginning on July 15, 2025. Docs. 375, 376. A jury trial was held from July 15 to July 22, 2025. The jury returned a verdict in favor of Christians and against Defendant Brent Fluke and awarded nominal damages in the amount of $1.00. Doc. 519 at 2–3. The jury also returned a verdict in favor of Christians and against Defendant Darin Young and awarded $5,000.00 in actual damages and $100,000 in punitive damages. *Id.* at 4–6. The jury returned a verdict in favor of the remaining defendants. *Id.* at 2–7. The Court entered a judgment consistent with the jury verdict. Doc. 535.

After entry of judgment, Christians' appointed counsel filed a motion for attorneys' fees and expenses under 42 U.S.C. § 1988(b). Doc. 544. Defendants[1] filed a Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b). Doc. 551. Young filed a Motion to Amend Judgment to Set Aside or, in the alternative, to Reduce the Punitive Damage Award pursuant to Rule 59. Doc. 553. Christians' appointed counsel responded to Defendants' post-trial motions, Docs. 567, 568, as well as to Defendants' objections to the Motion for Attorneys' Fees and

---

[1] Because judgment was entered in favor of all but two defendants, the Court construes Docket 551 as a renewed motion for judgment as a matter of law filed by Fluke and Young, the two defendants against whom the jury returned a verdict.

Expenses, Docs. 565, 566. Defendants did not file reply briefs in support of their Rule 59 and Rule 60 motions, and the time for doing so has expired. *See* D.S.D. Civ. LR 7.1(B) (providing that a moving party may file a reply brief within 14 calendar days after service of the responsive brief).

Christians has filed a *pro se* Motion for Sanctions, Doc. 539; a *pro se* Motion for Declaratory Relief, Doc. 550; a *pro se* Motion for Costs, Doc. 602; and a *pro se* Motion for New Trial, Doc. 604.

## II.     Defendants' Rule 50(b) Renewed Motion for Judgment as a Matter of Law (Doc. 551)

After Plaintiff rested and at the close of the evidence, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). TT at 350: 23 to 355: 21 (Doc. 560 at 62: 23 to 68: 21); TT at 647: 9 to 652: 3 (Doc. 562 at 64: 13 to 69: 3). After entry of the judgment, Fluke and Young, the two defendants against whom the jury returned a verdict, filed a timely renewed motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b). Doc. 551; *see also Nassar v. Jackson*, 779 F.3d 547, 551 (8th Cir. 2015) ("Rule 50(b) provides for post-trial renewal of a Rule 50(a) trial motion for judgment as a matter of law."). Fluke and Young raise three arguments in support of their renewed motion for judgment as a matter of law. Doc. 552. First, Young contends that the $5,000.00 compensatory award against him is barred by 42 U.S.C. § 1997e(e). *Id.* at 3–8. Second, Young and Fluke argue that they are entitled to judgment as a matter of law based on qualified immunity because "the evidence Mr. Christians' [sic] presented to the jury to establish liability on the part of the Defendants was not matters that a reasonable person would have known were violating a clearly established constitutional right to adequate nutrition[.]" *Id.* at 8–12. Third, Young argues that

3

Christians did not present sufficient evidence to establish that the individualized medical diet ordered for him from March to May 2021 was nutritionally inadequate. *Id.* at 12–14.

"Under Rule 50, if the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for a party on an issue, the court may grant a motion for judgment as a matter of law against the party." *Howard v. Mo. Bone & Joint Ctr., Inc.*, 615 F.3d 991, 995 (8th Cir. 2010) (quoting Fed. R. Civ. P. 50(a)) (citation modified). The Court should review all the evidence in the record and must draw all reasonable inferences in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods.,* 530 U.S. 133, 148–51 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 150 (citation omitted). "[A]lthough the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Id.* at 151.

"A court reviewing a Rule 50(b) motion is limited to consideration of only those grounds advanced in the original, Rule 50(a) motion." *Nasser*, 779 F.3d at 551 (quoting *Graham Constr. Servs. v. Hammer & Steel Inc.*, 755 F.3d 611, 617–18 (8th Cir. 2014)). The Eighth Circuit has "long held that a party cannot raise 'new arguments in [a] Rule 50(b) motion.'" *Parada v. Anoka Cnty.*, 54 F.4th 1016, 1022–23 (8th Cir. 2022) (quoting *Miller v. Huron Reg'l Med. Ctr.*, 936 F.3d 841, 847–48 (8th Cir. 2019)) (alteration in original).

### A.    42 U.S.C. § 1997e(e) Does Not Preclude Christians from Recovering Compensatory Damages

In his second amended complaint, Christians sought compensatory damages on his Eighth Amendment claim for inadequate nutrition. Doc. 83 ¶ 153. The jury awarded Christians $5,000.00 in compensatory damages on his Eighth Amendment inadequate nutrition deliberate indifference claim against Young. Doc. 519 at 4–6.

4

The Prison Litigation Reform Act (PLRA) provides that no action "may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). The Eighth Circuit has interpreted § 1997e(e) to require more than a de minimis physical injury. *McAdoo v. Martin*, 899 F.3d 521, 525 (8th Cir. 2018). In *Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir. 2004), the Eighth Circuit recognized that "Congress did not intend section 1997e(e) to bar recovery for all forms of relief[]"and held that § 1997e(e) does not preclude claims for nominal or punitive damages or injunctive and declaratory relief.

First, the Court considers Young's argument that "the only weight loss that should have been considered by the jury was Mr. Christians' sixteen-pound weight loss from March 20, 2021, to April 3, 2021."  Doc. 552 at 4. According to Young, "[t]his approach merely deducts the time and weight loss directly attributable to Mr. Christians' voluntary participation in a hunger strike." *Id.* Because it was Christians' voluntary action rather than Young's unconstitutional conduct that caused Christians' weight loss after March 31, 2021, when he began the hunger strike, Young urges the Court to consider only whether a loss of sixteen pounds from March 20, 2021, to April 3, 2021, is de minimis. *Id.*

The Eighth Circuit has rejected the argument that § 1997e(e) "requires that the unconstitutional conduct must cause the physical injury." *McAdoo*, 899 F.3d at 526. The Eighth Circuit has held that

> the PLRA's gatekeeper function against frivolous suits does not require a prison inmate to make a showing of a physical injury *caused* by an unconstitutional act. Rather, in the Eighth Amendment context, in order to recover compensatory damages, the PLRA requires a showing of harm caused by some unconstitutional conduct that amounted to deliberate indifference *and* an accompanying showing of physical injury. The PLRA does not say whether the unconstitutional conduct must cause the physical injury. With a showing of a physical injury, § 1997e(e) permits

recovery for the harm—physical or otherwise—caused by the demonstrated unconstitutional conduct.

*Id.* (emphasis in original). Here, Christians presented evidence that he suffered harm, inadequate nutrition, caused by unconstitutional conduct, that led to a hunger strike, which resulted in a total weight loss of 50 pounds during the time that he was in the Segregated Housing Unit (SHU). Doc. 527 at 146. Christians presented evidence that he was placed in the SHU on March 20, 2021, and did not begin his hunger strike until March 31, 2021, after he had lost a massive amount of weight before beginning the hunger strike because he was not receiving full trays. TT at 68: 11-17; TT at 68: 24 to 69: 4 (Doc. 558 at 68: 11–17; Doc. 558 at 68: 24 to 69: 4). Christians also testified that when he did eat during the initial period he was in the SHU, it hurt worse than just simply not eating. TT at 69: 23 to 70: 9 (Doc. 558 at 69: 23 to 70: 9). According to Christians, because he was so "terribly hungry[] [j]ust a little bit of food going through [his] belly actually hurt. So [he] just stopped eating. It's much easier not to eat and be somewhat normal." TT at 70: 4–7 (Doc. 558 at 70: 4–7). Young does not argue that a 50-pound weight loss during the time Christians was in the SHU is de minimis, and Eighth Circuit precedent indicates that it most certainly is not. *See Pratt v. Corrs. Corp. of Am.*, 124 F. App'x 465, 467 (8th Cir. 2005) (per curiam) (holding that a prisoner who alleged a 30-pound weight loss while eating vegetarian meals that lacked adequate nutritional value sufficiently alleged a physical injury stemming from the denial of a Halal diet); *see also Davis v. Missouri*, 389 F. App'x 579, 579 (8th Cir. 2010) (per curiam) (allegation that plaintiff lost 19 pounds in eight months because he was denied adequate food, was always sick, and lacked energy to get out of bed sufficiently stated a claim for denial of adequate food and nutrition).

However, even if the Court disregards the weight loss Christians experienced while in the SHU after his hunger strike began, a 16-pound weight loss in less than two weeks is not de

minimis. Relying on *Kurtenbach v. Codington County*, No. 1:20-CV-01008-CBK, 2022 WL 4482863 (D.S.D. Sept. 27, 2022), Young argues that Christians' 16-pound weight loss between March 20 and March 31, 2021, is de minimis. Doc. 552 at 3–5. Young's reliance on *Kurtenbach* is misplaced.[2] In *Kurtenbach*, the plaintiff lost 15 pounds over a span of three months. *Kurtenbach*, 2022 WL 4482863, at *6. Christians lost 16 pounds in less than two weeks. Doc. 527 at 146. The Eighth Circuit has recognized that a 14-pound weight loss in three months is "a significant weight loss tied to nutrition." *Ingrassia v. Schafer*, 825 F.3d 891, 898–99 (8th Cir. 2016). Further, Christians presented evidence that in addition to weight loss, he experienced stomach pain, loss of muscle mass, and weakness because of inadequate nutrition. TT at 36:  8–17 (Doc. 558 at 36:  8–17); TT at 69:  23 to 70:  9 (Doc. 58 at 69:  23 to 70:  9); TT at 96:  12–15, 23 to 97:  5 (Doc. 558 at 96:  12–15, 23 to 97:  5).

During trial, the jury viewed two videos, Exhibits 124 and 125, of Christians being taken from his cell to be weighed when he was in SHU. TT at 550:  15 to 552:  1 (Doc. 561 at 155:  15 to 157:  1); TT at 567: 5 to 568:  1 (Doc. 561 at 172:  5 to 173:  1). His appearance in those videos was noticeably different than his appearance during the trial. In the videos, Christians

---

[2] To bolster his argument that Christians' weight loss in the SHU constituted at most a de minimis physical injury, Young argues that "[u]nlike the circumstances in *Kurtenbach*, unrebutted testimony from Christians' medical providers reflected that his weight loss was 'pretty normal weight loss for him' and they were not concerned about his weight loss." Doc. 552 at 3, n.1 (citing TT at 439, 442)). This argument mispresents the trial testimony. The trial testimony Young cites from Christians' medical providers relates to weight loss over periods of months when Christians was incarcerated at MDSP. One of Christians' medical providers testified that he "would not have [had] too much of a concern[]" about a loss of 12 pounds during a five-month period from October 2017 to March 2018. TT at 439:  6–13 (Doc. 561 at 44:  6–13). The same provider testified that it was not concerning that Christians had lost 7 pounds between March 18, 2018, and April 17, 2018. TT at 439:  4–10, 441:  14–16, 442:  9–17 (Doc. 561 at 44:  4–10, 46:  14–16, 47:  9–17). Defendants did not present testimony from any medical provider that Christians' loss of 16 pounds between March 20, 2021, and April 3, 2021, when a nurse performed the initial hunger strike assessment, was not concerning.

appeared gaunt and unhealthy. Because Christians presented sufficient evidence to establish a physical injury for purposes of the PLRA, Young is not entitled to judgment as a matter of law on Christians' claim for compensatory damages. *See Pratt*, 124 F. App'x at 467 (holding that a prisoner who alleged a 30-pound weight loss while eating vegetarian meals that lacked adequate nutritional value sufficiently alleged a physical injury stemming from the denial of a Halal diet); *Ward v. ARAMARK Corr. Food Serv.*, No. 3:09-CV-P802-S, 2011 WL 1542108, at *3–4 (W.D. Ky. Apr. 22, 2011) (allegations that "inadequacies in the quality, quantity, and preparation of food" caused intestinal difficulties, irritable bowel syndrome, and weight loss are sufficient to establish a physical injury for purposes of the PLRA); *Shirely v. Sternal*, No. 09-10045-Civ-Martinez, 2010 WL 6020684, at *10 (S.D. Fla. Aug. 30, 2010) (PLRA physical injury requirement satisfied where plaintiff alleged "weight loss of forty pounds in six months, swelling, headache, light-headedness, swollen legs, constipation, upset stomach, nausea, and depression."), *report and recommendation adopted*, 2011 WL 855273 (S.D. Fla. Mar. 9, 2011); *Shepard v. Alvarez*, No. 08-10090-CIV, 2009 WL 1872016, at *8 (S.D. Fla. May 21, 2009) (noting that "it does not appear that the 40–50 pound weight loss alleged by the plaintiff can be said to be *de minimis*."); *Walker v. Powell*, No. 5:05cv75/MD, 2007 WL 4303766, at *8–9 (N.D. Fla. Dec. 10, 2007) (allegations sufficient to go to the jury where plaintiff alleged he lost forty pounds in approximately two years, was constantly hungry, had headaches, stomach pains, lack of concentration, and weakness in his extremities); *Williams v. Humphreys*, No. CIV A CV504-053, 2005 WL 4905109, at *7 (S.D. Ga. Sept. 13, 2005) (allegations of "nausea, abdominal pain, and weight loss" as a result of inadequate diet sufficient to satisfy PLRA physical injury requirement).

Finally, the Court considers Young's argument that Christians' 16-pound weight loss between March 20, 2021, and April 3, 2021, all occurred after March 31, 2021, which was when Christians reported he had last consumed a meal because he had begun a hunger strike. Doc. 552 at 5–6; *see also id.* at 4 (arguing that any alleged injury for weight loss from March to May 2021 was "a direct result of [Christians'] own decision to voluntarily participate in a hunger strike and the matter should not have been submitted to the jury."). As Christians notes, Defendants did not argue in their Rule 50(a) motions that *all* or *substantially all* of Christians' weight loss during his time in the SHU had occurred only after Christians' hunger strike began. *See* Doc. 567 at 9–10. Thus, this argument is waived.

However, even if the Court considers the argument, it fails for two reasons. First, as discussed above, Eighth Circuit precedent permits the Court to consider Christians' weight loss after beginning the hunger strike. *See supra* at 5–6. Second, even if the Court does not consider Christians' weight loss after beginning the hunger strike, Young's argument fails because the Court is required to give Christians, the non-moving party, instead of Young, the moving party, the benefit of all reasonable inferences from the evidence presented. Christians presented evidence that he had lost a significant amount of weight before he began a hunger strike because he was not receiving full trays. TT at 68: 11-12; TT at 68: 24 to 69: 4 (Doc. 558 at 68: 11–12; Doc. 558 at 68: 24 to 69: 4). Young contends that Christians' testimony is not credible and argues that based on Christians' rate of weight loss during his hunger strike, it is likely that he lost 16 pounds between March 30, 2021, when he reported eating his last meal and the first time he was weighed on April 3, 2021. Doc. 552 at 5–6. It is the role of the jury, not this Court, to make credibility determinations. Because Christians presented sufficient evidence to support a finding that he experienced significant weight loss, along with other symptoms, due to

inadequate nutrition before he began the hunger strike, Young's contention that the jury could have construed the evidence otherwise is not sufficient grounds for the Court to enter judgment as a matter of law in favor of Young under Rule 50(b).

Young argues in the alternative that he is entitled to a new trial under Federal Rule of Civil Procedure 59 because "Christians presented significant testimony and argument on mental suffering and emotional injury that should not have been submitted to the jury." Doc. 552 at 6–8. Because the Court has rejected Young's argument that § 1997e(e) bars Christians from recovering compensatory damages, the Court also rejects Young's alternative argument that he is entitled to a new trial under Rule 59 because Christians presented evidence Young contends was not admissible.[3]

The Court also notes that Young's alternative argument that he is entitled to a new trial under Rule 59 is procedurally flawed. Federal Rule of Civil Procedure 59(a)(1) provides that "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]" Fed. R. Civ. P. 59(a)(1)(A). Grounds for granting a new trial include a verdict that is against the weight of the evidence, an excessive damage award, and evidentiary rulings. *Children's Broad. Corp. v. Walt Disney Co.*, 245 F.3d 1008, 1017 (8th Cir. 2001). When a motion for a new trial is based on evidentiary rulings, the moving party must "show the error affected his substantial rights and that a new trial would likely produce a different result." *Am. Fam. Mut. Ins. Co. v. Graham*, 792 F.3d 951, 957 (8th Cir. 2015) (citing *Pointer v. DART*, 417

---

[3] When Young moved for summary judgment, he did not contend that he was entitled to summary judgment on Christians' claim for compensatory damages under § 1997e(e). *See generally* Docs. 98, 99, 239, 240. Similarly, Young did not move in limine for an order excluding evidence of mental and emotional injury. *See* Doc. 427. But Young does not explain why admission of evidence of mental and emotional injury during the trial was improper.

F.3d 819, 822 (8th Cir. 2005)); *see also* Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence . . . is ground for granting a new trial[.]"); *Gareis v. 3M Co.*, 9 F.4th 812, 816 (8th Cir. 2021) ("[W]e will not set aside a verdict or grant a new trial to an erroneous evidentiary ruling unless that ruling was prejudicial "). Here, Young does not argue that the alleged improper admission of evidence regarding mental or emotional injury was prejudicial or affected his substantial rights. Rather, Young asserts only that "it is now impossible to determine the weight the jury assigned to this information[.]" Doc. 552 at 8. This argument does not satisfy Young's burden of demonstrating that he is entitled to a new trial because of an alleged error in admitting evidence, but in this case, because Young did not timely object to the admission of the evidence he contends was improperly admitted, his burden is even higher. Failure to object to the admission of evidence at trial allows a court to review the admission only for plain error. Fed. R. Evid. 103(a); *McKeel v. City of Pine Bluff*, 73 F.3d 207, 211 (8th Cir. 1996); *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1407–08 (8th Cir. 1994); *see also Hoffmann Bros. Heating & Air Conditioning, L.L.C.* v. *Hoffmann Heating & Air Conditioning, L.L.C.*, No. 4:19-CV-00200-SEP, 2023 WL 2681994, at *18 (E.D. Mo. Mar. 29, 2023) (holding that plaintiff's failure to object to introduction of evidence at trial precludes the court from granting plaintiff's motion for new trial on that basis unless there was plain error).

In their answer, Defendants affirmatively alleged that Christians "is not entitled to compensatory damages, because he has not shown that Defendants have caused him any physical injury." Doc. 70 ¶ 27. But when Defendants moved for summary judgment, none of the Defendants, including Young, argued that 42 U.S.C. § 1997e(e), barred Christians' claim for compensatory damages. *See generally* Docs. 98, 99, 239, 240. No Defendant, including Young, moved in limine for an order precluding Christians from presenting evidence of mental or

emotional distress because his weight loss was at most a de minimis physical injury. *See* Doc. 427 (Defendants' motions in limine). Defendants first argued that Christians is barred from seeking compensatory damages because he cannot show more than a de minimis physical injury when they objected to Plaintiff's proposed jury instructions. Doc. 488 at 7–8. Finally, when the allegedly improper testimony and argument were presented to the jury, Defendants did not object or move to strike the testimony or argument. TT at 40-41 (Doc. 558 at 40–41); TT at 697 (Doc. 562 at 114).[4] Young has not demonstrated any evidentiary error that resulted in a miscarriage of justice and certainly no evidentiary error that could be construed as plain error. Young's alternative motion for a new trial is denied.

### B.    Young and Fluke Are Not Entitled to Qualified Immunity

According to Fluke and Young, "[t]he evidence that Mr. Christians presented at trial to prove liability on the part of Defendants went well-beyond the type of knowledge that a reasonable person would have known was unlawful." Doc. 552 at 12. Thus, Fluke and Young argue that the Court should grant their Rule 50(b) motion on the basis of qualified immunity. *Id.* The first issue the Court must consider is whether Fluke and Young moved for judgment as a

---

[4] When Christians testified that he had been diagnosed with PTSD, Defendants' counsel objected, and the Court sustained the objection. TT at 96: 16–19 (Doc. 558 at 96: 16–19). The Court did not sustain the objection based on § 1997e(e). *Id.* Further, when the Court sustained the objection, the Court struck the testimony and instructed the jury to disregard the testimony. TT at 96: 16–19 (Doc. 558 at 96: 16–19). *See Black v. Shultz*, 530 F.3d 702, 707 (8th Cir. 2008) (finding district court did not abuse its discretion in denying defendants' motion for new trial due to violation of an order in limine when the district court instructed the jury that the testimony was irrelevant and should be disregarded); *Couch v. ConAgra Foods, Inc.*, 64 F. App'x 595, 596 (8th Cir. 2003) (per curiam) (affirming district court's decision to deny defendant's motion for a new trial because "the court's curative instructions to the jury removed any potential prejudice or error from violation of the oral order in limine."). In both the preliminary and final jury instructions, the Court instructed the jury that statements, arguments, questions, and comments by counsel were not evidence and that the jury must not consider testimony and evidence the Court instructs the jury to disregard. Doc. 515 at 5; Doc. 520 at 6.

matter of law under Rule 50(a) on the basis of qualified immunity. In their Rule 50(a) motions, Young and Fluke did not argue that they were entitled to qualified immunity. TT at 350:  13 to 355:  21 (Doc. 560 at 63:  13 to 68:  21); TT at 647: 9 to 652:  3 (Doc. 562 at 64:  13 to 69:  3). In their Rule 50(b) motion, Young and Fluke contend that in their Rule 50(a) motions "Defendants renewed their argument for qualified immunity and asserted that, based on the evidence presented at trial, a reasonable person would not have known that their conduct violated a clearly established constitutional right." Doc. 552 at 8 (citing TT at 651). The argument Defendants raised in their Rule 50(a) motions went to the issue of whether the evidence was sufficient to establish that Defendants were deliberately indifferent, not to whether they are entitled to qualified immunity. Defendants' counsel argued:

> Unlike the situation in *Brakeall* where there was an obvious risk ignored by staff, this is a situation where Mr. Christians' allegations are there are less calories in corn that what he believes there should be, or that a portion size was too small, or that the diet did not contain adequate calories or nutrients. That is not within an obvious knowledge that a line officer would know, and so it was not a clear acknowledgement and risk that was ignored by staff. We're dealing with correctional officers, not registered dieticians.

TT at 651: 4–12 (Doc. 562 at 68: 4–12). Thus, Young and Fluke have waived the argument that they are entitled to qualified immunity because Defendants did not raise this argument in their Rule 50(a) motions.

But even if the argument was not waived, Young and Fluke are not entitled to qualified immunity on Christians' inadequate nutrition claim. "In claims brought under 42 U.S.C. § 1983, 'qualified immunity shields government officials from liability and the burdens of litigation unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known.'" *Schoettle v. Jefferson Cnty.*, 788 F.3d 855, 858 (8th Cir. 2015) (quoting *Carpenter v. Gage*, 686 F.3d 664, 648 (8th Cir. 2012)). The test for qualified

immunity has two parts: (1) "whether the facts, viewed in the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008 (8th Cir. 2017) (quoting *Jones v. McNeese*, 675 F.3d 1158, 1161 (8th Cir. 2012)). Before the time frames in issue in this case, the Eighth Circuit held that it is "clearly established that a prisoner may properly allege a constitutional violation by demonstrating significant weight loss or other adverse effects from lack of nutrition." *Ingrassia,* 825 F.3d at 899; *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[P]rison officials must ensure that inmates receive adequate food[.]"). Because the law is settled, Fluke and Young are not entitled to qualified immunity.

        To the extent that Young and Fluke's motion argues that Christians did not present sufficient evidence for the jury to find that they were deliberately indifferent, their motion is denied. Christians' counsel cross-examined Fluke "using a specialized online Dietary Intake Calculator simulation designed for healthcare professionals to demonstrate that [Christians] had allegedly not been receiving the proper caloric intake for a person of his height and weight." Doc. 552 at 10 (citing TT at 183–91). Christians' counsel also cross referenced Menu Nutrient Analysis Reports prepared by the Department of Corrections' contracted food vendor against the "United States Department of Agriculture's Dietary Guidelines in an attempt to extract testimony about the number of servings of any particular food group, the daily recommended macronutrients in certain foods, and the number of calories contained in various food items." *Id.* (citing TT at 173–200). When cross-examining Young, Christians' counsel used the food vendor contract "to examine Warden Young about USDA grades of meat[.]" *Id.* at 11 (citing TT at 218– 22). Christians' counsel also "used the United States Department of Agriculture's Official Food

14

Plans to examine Warden Young about the cost of food." *Id.* (citing TT at 234–37). While this specific information may be "outside of the scope of that which a reasonable person would have known," *see* Doc. 552 at 11, Young and Fluke fail to acknowledge that Christians presented other evidence to establish that Young and Fluke were deliberately indifferent to his inadequate nutrition complaints.

On April 10, 2017, when he was incarcerated at MDSP, Christians, who is 6 feet, 2 inches tall, weighed 307 pounds, was muscular, physically fit, and did not have excessive body fat. TT at 33: 1 to 34: 3 (Doc. 558 at 33: 1 to 34: 3); Doc. 527 at 4. Christians began losing weight rapidly, losing muscle mass, and became weak. TT at 36: 8–17 (Doc. 558 at 36: 8–17). Each day, Christians received one or more meals that did not contain all items provided in the menu and/or full serving sizes of all items outlined in the menu. TT at 36: 19–22 (Doc. 558 at 36: 19–22); TT at 37: 22 to 38: 2 (Doc. 558 at 37: 22 to 38: 2; TT at 102: 19–24 (Doc. 558 at 102: 19–24); TT 103: 15–19 (Doc. 558 at 103: 15–19). Christians testified that he was living in a "constant state of hunger." TT at 38: 3 (Doc. 338 at 38: 3). When then-Warden Fluke walked through the facility, Christians notified Fluke that he was concerned about his diet and the rapid weight loss he was experiencing. TT at 36: 23 to 37: 2 (Doc. 558 at 36: 23 to 37: 2). From March 2017 until August 2018, Christians lost 90 pounds. TT at 38: 8–13 (Doc. 558 at 38: 8–13.

Christians testified that he talked to Fluke in person and sent him kites about his concern that he was not getting adequate nutrition, that the planned menus were not being followed, and the fact that the actual number of calories that was being provided was far less than the number of calories provided for in the menu. TT at 41: 7 to 42: 21 (Doc. 558 at 41: 7 to 42: 21). During a formal, scheduled meeting Fluke attended, Christians used serving utensils and other

15

measuring devices he had obtained from the chow hall to demonstrate that he was receiving much less food than provided for in the planned menu. TT at 45:  5 to 47:  14 (Doc. 558 at 45: 5 to 47:  14). After Christians explained his inadequate nutrition concern, there was an "uproar of laughter in the room." TT at 47:  23–24 (Doc. 558 at 47:  23–24). *See also* TT 110:  22 to 111: 1 (Doc. 558 at 110:  22 to 111: 1). According to Christians, Fluke and the other meeting attendees were "willfully blind" to his concerns and refused to go to the chow hall to observe the quantity of food that Christians was actually receiving. TT at 48:  2–9 (Doc. 558 at 2–9). To ensure that inmates at MDSP were provided adequate nutrition, Fluke testified that he "ensured that food was prepared, any complaints were followed up on by staff. If complaints were sent to [him], [he] would talk with [the] food service vendor, and [he] would just ensure that grievances were answered properly and correctly." TT at 204:  20–25 (Doc. 559 at 73:  20–25). But Fluke did not testify or present any evidence that he discussed any of Christians' complaints with the food service vendor.

At each meal, Christians forced himself to eat everything on his tray regardless of the quality or taste, but after he finished, he was still hungry. TT at 50: 17 to 51: 1 (Doc. 558 at 50: 18 to 51:  1); TT 51:  5–17 (Doc. 558 at 51:  5–17). Christians introduced photos representative of food trays served at MDSP but repeatedly testified that the portions on the trays that were served to him were consistently smaller than the portions depicted in the photos. TT at 143: 8 to 145:  8 (Doc. 559 at 12:  8 to 14:  8); TT at 146:  11–14 (Doc. 559 at 15:  11–14); TT at 149:  23 to 150:  11 (Doc. 559 at 18 to 19:  11); TT 150:  17–20 (Doc. 559 at 19:  17–20); TT 161:  23 to 162:  3 (Doc. 559 at 30:  12 to 31:  3). Christians collected nutritional labels that he presented to prison officials to substantiate that he was not receiving adequate nutrition, but no one did

anything to respond to his concerns. TT at 54:  8 to 56:  13 (Doc. 558 at 54:  8 to 56:  13 (Doc. 558 at 54:  8 to 56:  13); Doc. 531-1 at 1–17.

Beginning on March 20, 2021, Christians was housed in Section 6 of the A floor of the Jameson Annex at the South Dakota State Penitentiary. TT at 60:  11–21 (Doc. 558 at 60:  11–21). Christians was in Section 6, which is the Segregated Housing Unit (SHU), for a disciplinary infraction. *Id.* In the SHU, meals are served to prisoners in their cells. TT at 62: 16 to 63:  2 (Doc. 558 at 62:  16 to 63:  2). While in the SHU, Christians received meals with small portions and/or missing items, but it was more difficult while on lockdown to report missing items or small portions to attempt to rectify the situation. TT at 62: 19 to 63:  2; TT at 64:  2–4 (Doc. 558 at 62: 19 to 63:  2, 64:  2–4). Christians submitted kites complaining about the meals he was served in the SHU, but the kites went unanswered. TT at 65:  12–19 (Doc. 558 at 65:  12–19). Because he was so hungry and his kites had gone unanswered, Christians began a hunger strike on March 31, 2021. TT at 66: 12–24 (Doc. 558 at 66:  12–24).

Young was familiar with Christians when he was in the SHU from March to May 2021. TT at 219:  17–21 (Doc. 559 at 88:  17–21). While Christians was in the SHU, Young came to his cell, but Young was not interested in attempting to resolve Christians' nutritional concerns. TT at 74:  23–25 (Doc. 558 at 74:  23–25). Instead, Young threatened Christians if Christians did not end his hunger strike and merely told him to file a grievance when Christians asked him to address the food issues. TT at 71:  16–20 (Doc. 558 at 71:  16–20); TT at 75:  1–11 (Doc. 558 at 75:  1–11). Christians presented evidence that he filed grievances in accordance with the facility's applicable policy, but Young did not timely respond to the grievances that reached him. Doc. 528 at 35, 36, 38, 40. For example, on May 3, Christians submitted a Request for Administrative Remedy regarding missing food items on his meal tray. TT at 83:  17–25 (Doc.

558 at 83: 17–25); Doc. 528 at 36. Approximately six weeks later, on June 25, Young responded that "[y]ou have not reported any missing food tray items to kitchen staff. If any tray, snack, or sack ever has an issue and is found warranted by a Kitchen Supervisor then staff is always happy to immediately fix the issue." Doc. 528 at 40. Young's response fails to acknowledge that when Christians was in the SHU, meal trays were brought to his cell by persons other than kitchen staff. Thus, it was not possible for Christians to report missing food items to the kitchen staff.

Christians presented evidence that he repeatedly reported to the correctional officers working on the SHU from March to May 2021 that his food trays were missing items. TT at 89: 24 to 90: 17 (Doc. 558 at 89: 24 to 90: 17). Although the correctional officers assured Christians that they had brought his concerns to the attention of officials who could address them, those officials refused to take any action. TT at 89: 24 to 90: 17 (Doc. 558 at 89: 24 to 90: 17); TT at 118: 8–16 (Doc. 558 at 118: 8–16). According to Christians, one of the correctional officers who worked in the SHU from March to May 2021, pulled him aside and said "Hey, I know you got this nutrition thing going on. I know I'm a defendant. But in all honesty, . . . I hope you win this thing, because what they're going do you guys is absolutely terrible. The food you guys are eating, you can't be healthy." TT at 89: 14–23 (Doc. 558 at 89: 14–23).[5]

Young did not take any meaningful action to address any of the issues Christians raised in the grievances that reached him. TT at 86: 2–5 (Doc. 558 at 86: 2–5). According to Christians, Young was "willfully blind" to his complaints and decided that "[w]e're not going to address the issue." TT at 86: 14 to 87: 3 (Doc. 558 at 86: 14 to 87: 3).

---

[5] During the trial, this correctional officer denied making these statements. TT at 422: 14–19 (Doc. 561 at 27: 14–19). The jury, not this Court, makes credibility determinations, weighs the evidence, and resolves factual disputes based on conflicting testimony.

Fluke and Young are not entitled to judgment as a matter of law on the grounds that some of the evidence that Christians presented to establish liability may have been more appropriately directed to a dietician or nutrition expert, although the Court notes that Defendants' counsel did not object to the portions of the cross examination of Fluke and Young cited in their Rule 50(b) motion. Other evidence that Christians presented was sufficient to establish that Fluke and Young were deliberately indifferent to his inadequate nutrition complaints.

### C.    Christians' Special Diet in the SHU

During the time that Christians was in the SHU from March to May 2021, there is evidence that Christians received a gluten-free and diabetic, heart healthy diet. TT at 547:  9 to 548:  11 (Doc. 561 at 152:  9 to 153:  11). According to Young, because Christians "only presented evidence of the nutrition received by other inmates on the regular menu[,] . . . his constitutional claims fail as a matter of law." Doc. 552 at 13. Young's argument cannot be reconciled with the nature of Christians' inadequate nutrition claim arising out of his time in the SHU from March to May 2021. During the time that he was in the SHU, Christians contends that his meals were nutritionally inadequate because his trays were missing items and/or the portions were too small.

While in the SHU, Christians received meals with small portions and/or missing items, but it was more difficult while on lockdown to report missing items or small portions to attempt to rectify the situation. TT at 62:  19 to 63:  2; TT at 64:  2–4 (Doc. 558 at 62:  19 to 63:  2; Doc. 558 at 64:  2–4). Christians submitted kites complaining about the incomplete meals he was served in the SHU, but the kites went unanswered. TT at 65:  12–19 (Doc. 558 at 65:  12–19). Because he was so hungry and his kites had gone unanswered, Christians began a hunger strike on March 31, 2021. TT at 66: 12–24 (Doc. 558 at 66:  12–24). When he began the hunger strike,

19

Christians made it very clear that he was doing so because he had consistently received trays that did not contain all the food items provided on the menu. TT at 72: 7–18 (Doc. 558 at 72: 7–18). Based on this evidence, it was not necessary for Christians to present evidence of the nutritional value of the meals he was supposed to receive. His claim is that his meals were nutritionally inadequate because his trays were missing items and/or the portions were too small, and the evidence that Christians presented is sufficient to support the jury's finding that the meals he was served in the SHU were nutritionally inadequate because his trays were missing items and/or did not contain the planned portion size. Young's renewed Rule 50(b) motion for judgment as a matter of law on the grounds that Christians did not present specific evidence of the nutritional value of the meals he was supposed to receive while in the SHU is denied.

## III.    Defendant Young's Rule 59 Motion to Set Aside, or in the alternative, to Reduce the Punitive Damage Award (Doc. 553)

Young moves to set aside the award of punitive damages or, in the alternative, to reduce the punitive damage award to $20,000, which Young contends is "a constitutionally permissible amount of four times the amount of compensatory damages[.]" Doc. 553. Christians, through his appointed counsel, opposes Young's motion and contends that the $100,000 punitive damage award is constitutional when considering the "guideposts" identified by the Supreme Court to assess the constitutionality of punitive damage awards. Doc. 568. Although Young moves to set aside the punitive damage award, *see* Doc. 553 at 1; Doc. 554 at 2, in his supporting brief, Young argues only that the award is excessive when considering the "guideposts" the Supreme Court has outlined for reviewing a punitive damage award. A party may seek to set aside a punitive damage award under Rule 59 if the award is the result of passion or prejudice, but Young does not argue that the punitive damage award was the result of passion or prejudice or

argue that the evidence was insufficient to support an award of punitive damages against him. *See generally* Doc. 554.

## A.    Standard

A district court has a mandatory duty to correct unconstitutionally excessive verdicts to conform with the requirements of the due process clause. *Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1048 (8th Cir. 2002) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 572–74 (1996)). Reasonableness of a punitive damage award requires evaluation of the factors enumerated in *BMW of North America, Inc. v. Gore*: the degree of reprehensibility of the defendant's conduct; the ratio or relationship between actual harm inflicted on the plaintiff and the punitive damage award; and civil penalties authorized for comparable misconduct.[6] *Gore*, 517 U.S. at 575.

## B.    Reprehensibility

"[T]he most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Gore*, 517 U.S. at 575. Reprehensibility of a defendant's conduct is determined by considering whether:

> the harm caused was physical as opposed to economic; the tortious conduct evinced
> an indifference to or a reckless disregard of the health or safety of others; the target

---

[6] The third factor, what comparable criminal or civil sanctions would have been for comparable conduct, is not easily applicable to a § 1983 action alleging violation of a prisoner's Constitutional rights. There is no specific law imposing civil or criminal penalties on prison officials for violating a prisoner's Eighth Amendment right to adequate nutrition. *See Williams v. Kaufman Cnty.*, 352 F.3d 994, 1016 n.77 (5th Cir. 2003). Further, neither of the parties have identified a comparable civil case awarding compensatory or punitive damages. Finally, when considering any disparity between a punitive damage award and the civil penalties authorized or imposed in comparable cases, the fundamental question is whether the defendant had reasonable notice that his conduct could result in a punitive damage award similar to the amount awarded. *Burke v. Regalado*, 935 F.3d 960, 1038 (10th Cir. 2019). Here, Young does not argue that he had no reasonable notice that a violation of Christians' Eighth Amendment rights could result in a large punitive damage award. *See generally* Doc. 554. Thus, application of the third factor is not helpful in this case.

of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

*State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S 408, 419 (2003) (citing *Gore*, 517 U.S. at 576–77). Young contends that "[n]one of [these] factors are present in this case[,]"*see* Doc. 554 at 4, but the Court disagrees. Christians presented evidence that Young's conduct was reprehensible. As the Court has already explained, Christians presented evidence that he suffered a physical injury that was not de minimis as a result of Young's actions. *See supra* at 6–8. In addition to the weight loss he experienced while in the SHU, Christians testified that he lost muscle tone and that his health never returned to normal after his time in the SHU. TT: 96: 12–15, 23 to 97: 5 (Doc. 558 at 96: 12–15, 23 to 97: 5). Although Young contends that he should not be punished for injuries directly resulting from Christians' voluntary participation in a hunger strike, *see* Doc. 554 at 4, as this Court has previously explained, the evidence was sufficient to support a finding by the jury that Christians began a hunger strike only as a last resort after he had lost a significant amount of weight because he received meal trays that did not contain all the food items provided on the menu, and his kites and grievances had gone unanswered. *See supra* at 5–6.

The Court agrees that the conduct in question "was not a one-off." Doc. 568 at 5. Christians' claim against Young arose out of repeated instances of receiving incomplete meal trays while in the SHU, and Christians presented evidence that Young was aware of Christians' complaints. TT at 62: 19 to 63: 2 (Doc. 558 at 62: 19 to 63: 2); TT at 64: 2–4 (Doc. 558 at 64: 2–4); TT at 68: 24 to 69: 4 (Doc. 558 at 68: 24 to 69: 4); TT at 72: 7–18 (Doc. 558 at 72: 7–18); TT at 83: 17 to 84: 8 (Doc. 558 at 83: 17 to 84: 8); TT at 86: 2–5 (Doc. 558 at 86: 2–5);

TT at 89: 24 to 90: 17 (Doc. 558 at 89: 24 to 90: 17); TT at 118: 8–16 (Doc. 558 at 118: 8–16); Doc. 528 at 36.

Christians also presented evidence that Young's conduct evinced indifference or reckless disregard to Christians' health, and that his actions were not a mere accident. When Young became aware that Christians was on a hunger strike due to incomplete meals he was consistently being provided in the SHU, Young came to the SHU and threatened Christians if he did not stop his hunger strike. TT at 71: 16–20 (Doc. 558 at 71: 16–20). When Christians' grievances reached Young, Young waited six weeks to respond, and when he did respond, Young simply informed Christians that he had not reported any missing food tray items to the kitchen staff. Doc. 528 at 40. When Young prepared this response, he was aware that Christians' meal trays were brought to his cell when he was in the SHU, and that it was not possible for Christians to report to the kitchen staff, located in a different building, that his meal trays were missing items. Initially, when Christians was placed in the SHU for a disciplinary violation, the disciplinary hearing officer determined that five days in the SHU was appropriate. But Christians remained in the SHU for more than two and a half months after he had served his disciplinary time because he had begun a hunger strike. TT at 73: 7–14 (Doc. 558 at 73: 7–14); TT at 244: 25 to 246: 8 (Doc. 559 at 113: 25 to 115: 8). Although Young testified that he did not consider keeping Christians in the SHU for two and a half months to be a form of punishment, the jury concluded otherwise. TT at 246: 9–15 (Doc. 559 at 115: 9–15).

One of the correctional officers who worked in the SHU in April 2021 testified that "the SHU is kind of like a jail inside the prison[,]" and that prisoners are usually placed in the SHU as part of the disciplinary process. TT at 559: 12–25 (Doc. 561 at 164, 12–25). All of A floor is "basically permanent lockdown." TT at 61: 6–12 (Doc. 558 at 61: 6–12). Prisoners are only

23

allowed out of their cells for 30 to 60 minutes of recreation time. *Id.* When he was being held in the SHU while on a hunger strike, Christians, regardless of his willingness to cooperate, was restrained any time that he exited his cell, including for daily weight checks. TT at 564: 2 to 24 (Doc. 561 at 169: 2–24). No security reason was shown for such restraint. Multiple nurses informed Christians that inmates who are on hunger strikes are typically housed in the infirmary, but Christians continued to be held in the SHU for more than two months after the expiration of his five-day disciplinary time instead of being transferred to the infirmary. TT at 74: 9–16 (Doc. 558 at 74: 9–16).

In his opposition to Young's motion to amend the judgment to set aside the punitive damage award, Christians' counsel noted that Young "likely did not endear himself to the jury when callously joking on the stand." Doc. 568 at 4. The Court agrees. The Court observed Young's demeanor throughout the trial, including when he was testifying, and the jury likely was offended by his demeanor and flippant responses. For example, when Christians' counsel showed Young a photo of a meal tray that appeared unappetizing and perhaps even inedible, Young testified that "[i]t's one of my favorite meals . . . I found that very filling and satisfying, with the vegetables and the bread. . . . I enjoy this meal, so I appreciate you showing that." TT at 224: 16 to 225: 3 (Doc. 559 at 93: 16 to 94: 3). The Court viewed the same photo that Young and the jury viewed and questions whether one could even eat any of the meal depicted. Finally, Young testified that while the Department of Corrections has the right, if it so chooses, to enforce the terms of the contract with the food service vendor, the Department of Corrections has no duty to do so. TT at 251: 7–13 (Doc. 559 at 120: 7–13). Young's testimony could have been viewed by the jury as an opinion that the Department of Corrections, if it so chooses, may turn a

blind eye to inadequate nutrition. Considering the relevant factors, the evidence supports finding that Young's conduct was reprehensible.

### C.       Proportionality

"The second and perhaps most commonly cited indicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff." *Gore*, 517 U.S. at 580. The Supreme Court has "consistently rejected the notion that the constitutional line is marked by a simple mathematical formula," but the Court has also acknowledged that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm*, 538 U.S. at 424–25 (quoting *Gore*, 517 U.S. at 582). The Court also cautioned that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id.* Because the ratio between punitive and compensatory damages here is 20 to 1, the Court must consider whether there are special circumstances in this case that would justify the double-digit ratio.

As Christians notes, the Eighth Circuit has recognized that a very small compensatory award may properly support a higher ratio where extremely reprehensible conduct has resulted in a very small award of economic damages. Doc. 568 at 5–6. But in one of the Eighth Circuit cases Christians cites, the jury awarded no compensatory damages and only nominal damages of $1.00. *See JCB, Inc. v. Union Planters Bank, NA*, 539 F.3d 862, 876 (8th Cir. 2008). In the other case, *Williams v. ConAgra Poultry Co.*, 378 F.3d 790, 799 (8th Cir. 2004), the plaintiff received a large compensatory damage award ($600,000) which the Eighth Circuit concluded meant that a lesser ratio, only equal to compensatory damages, comports with due process. In this case, neither party cited any authority to assist the Court in determining whether a $5,000 compensatory damage award, when there is no evidence of any special damages, is an "extraordinarily small compensatory award" that may support a higher ratio. Given the evidence

25

that was presented, the Court concludes that the $5,000 compensatory damage award is not an extraordinarily small compensatory damage award that can be considered equivalent to an award of nominal damages.[7]

Further, while the Court finds that Christians presented evidence that Young's actions were reprehensible, this is not a case in which the reprehensibility of Young's conduct warrants disregarding the Supreme Court's single-digit ratio guidance. Because Christians' underlying claim required that the jury find that Young was deliberately indifferent, some degree of reprehensibility is inherent in a finding of liability. Neither the Supreme Court nor the Eighth Circuit, however, have held that more than a single-digit ratio between compensatory and punitive damages is constitutional in cases simply because the plaintiff must demonstrate that a defendant has acted with deliberate difference. Thus, because the punitive damage award in this case exceeds due process limits, the Court must reduce it.

When faced with a punitive damage award that exceeds due process limits, the district court must reduce the award to an amount that is "sufficiently punitive, but that does not violate notions of fundamental fairness." *Conseco Fin.. Serv. Corp. v. N. Am. Mort. Co.*, 381 F.3d 811, 825 (8th Cir. 2004). Here, an award of $40,000 in punitive damages would punish Young for violating Christians' Eighth Amendment right to adequate nutrition and deter other prison officials from such conduct in the future, but would not violate Young's due process rights. Although the Court does not find the $5,000 compensatory damage award so extraordinarily small as to be equivalent to an award of nominal damages, the award is relatively small. Because the compensatory damage award is not large, if, as Young suggests, the Court reduces the

---

[7] The jury was instructed to return a verdict for Christians in the nominal amount of $1.00 if the jury found in favor of Christians but determined that his damages have no monetary value. Doc. 520 at 24.

punitive damage award to $20,000 (four times the compensatory damage award), the punitive damage would not be sufficiently punitive. Thus, the punitive damage award against Young is reduced to $40,000 in conformity with constitutional limits.

Because the Court has the authority, without the permission of the parties, to enter judgment for an amount consistent with the constitutional limit on an award of punitive damages, the Court need not obtain the consent of the plaintiff in order to reduce the award—the Court's duty in this respect is independent of the Seventh Amendment constraints on a plaintiff's right to consent to a remittitur. *Ross*, 293 F.3d at 1049–50. Technically, a reduction of an excessive punitive damage award that violates due process is not a remittitur. *See id.* at 1049 ("[W]hile perhaps labeled as such, the action the district court took was not actually a remittitur, but instead was simply a reduction of the excessive punitive damages award in conformity with constitutional limits."). As the Eleventh Circuit Court of Appeals has explained:

> A constitutionally reduced verdict . . . is really not a remittitur at all. A remittitur is a substitution of the court's judgment for that of the jury regarding the appropriate award of damages. The court orders a remittitur when it believes the jury's award is *unreasonable* on the facts. A constitutional reduction, on the other hand, is a determination that the law does not permit the award. Unlike a remittitur, which is discretionary with the court . . . a court has a mandatory duty to correct an unconstitutionally excessive verdict so that it conforms to the requirements of the due process clause.

*Johansen v. Combustion Eng'g, Inc.*, 170 F.3d 1320, 1331–32 (11th Cir. 1999) (emphasis in original) (footnote omitted) (internal citations omitted). Accordingly, because the Court is reducing the punitive damage award against Young to conform with constitutional limits, it is not necessary to permit Christians to elect between the reduced punitive damage award or a new trial. As previously noted, Young does not argue that the punitive damage award is the result of passion or prejudice. Thus, Young's Rule 59 Motion to Set Aside or Reduce the Punitive

Damage Award, Doc. 553, is granted in part and denied in part. The punitive damage award is reduced to $40,000 to comport with due process.

## IV.    Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 544)

Under 42 U.S.C. § 1988, this Court has discretion to award the prevailing party in an action under 42 U.S.C. § 1983 reasonable attorneys' fees as part of the prevailing party's costs. *Farrar v. Hobby*, 506 U.S. 103, 109 (1992); *see also Warnock v. Archer*, 397 F.3d 1024, 1026 (8th Cir. 2005) (recognizing that the prevailing party in a § 1983 action is generally entitled to reasonable attorneys' fees). Because Christians is a prisoner, this Court must also consider the applicable provisions of the PLRA when considering Plaintiff's motion for attorneys' fees and expenses. The PLRA limits an award of attorneys' fees as follows:

> Whenever a monetary judgment is awarded in an action [brought by a prisoner in which attorney's fees are authorized], a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of the attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.

42 U.S.C. § 1997e(d)(2). As the United States Court of Appeals for the Eighth Circuit has stated, "[a]lthough awkwardly worded, the PLRA allows an award of attorney fees for 150 percent of the damages award." *Royal*, 375 F.3d at 725; *see also Keup v. Hopkins*, 596 F.3d 899, 905 (8th Cir. 2010) (stating that the Eighth Circuit has repeatedly construed §1997e(d)(2) "to cap awards of attorney fees in prisoner rights cases to 150% of the monetary damages awarded.").

The PLRA also provides that "[n]o award of attorney's fees . . . shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of Title 18 for payment of court-appointed counsel" 42 U.S.C. § 1997e(d)(3). Plaintiff's initial motion for attorneys' fees under § 1988 did not take into account the PLRA limits on awards of attorneys' fees. *See* Docs. 544, 545, 546. But Plaintiff's counsel's second affidavit in support of

plaintiff's motion for attorneys' fees and expenses revised the requested attorneys' fees using an hourly rate no greater than 150 percent of the hourly rate for court-appointed counsel in criminal cases. *See* Doc. 566 ¶¶ 4, 6, 7, 8; *see also* Doc. 565 at 3–4.

In their objection to Plaintiff's motion for attorneys' fees and expenses, Defendants request that the Court order that 25 percent of the attorney fee award be satisfied from the judgment in accordance with § 1997e(d)(2). Doc. 556 at 4. Plaintiff's counsel contends that the Eighth Circuit has held that the §1997e(d)(2) "does not require the district court to automatically apply 25 percent of the judgment to pay attorney's fees." Doc. 565 at 4 (quoting *Boesing v. Spiess*, 540 F.3d 886, 892 (8th Cir. 2008)). Plaintiff's counsel requests that the Court "apply a minimal percentage of the judgment to satisfy attorneys' fees." *Id.* at 5. The United States Supreme Court has interpreted § 1997e(d)(2) differently than the Eighth Circuit. In *Murphy v. Smith*, 583 U.S. 220, 223–24 (2018), the Supreme Court construed §1997e(d)(2) to require that

> the court (1) *must* apply judgment funds toward the fee award (2) with the *purpose* of (3) *fully discharging* the fee award. And to meet *that* duty, a district court must apply as much of the judgment as necessary to satisfy the fee award, without of course exceeding the 25% cap.

(emphasis in original). *Murphy v. Smith* mandates that this Court apply the judgment to satisfy 25 percent of the attorney fee award permitted by § 1997e(d)(2). Thus, this Court grants, in part, Plaintiff's motion for attorneys' fees and expenses, Doc. 544, and awards Plaintiff $67,501.50[8] in attorneys' fees, but 25 percent ($16,875.38) of that award must be satisfied from the amended judgment the Court will enter in favor of Plaintiff and against Defendants Fluke and Young.

When Attorney Haigh was appointed to represent Christians, he agreed "to serve without compensation except such as he may be entitled to under 42 U.S.C. § 1988, or from the Attorney

---

[8] 150 percent of the reduced judgment totals $67,501.50: $45,001 X 1.5 = $67,501.50.

Admission Fund." Doc. 375 at 3. With respect to fees and expenses paid from the Attorney

Admission Fund, Haigh agreed to the "rate provided for Criminal Justice Act appointments." *Id.*

at 2–3. Haigh devoted 318.70 hours to his representation of Christians. Doc. 546-1 at 16.

Additionally, Haigh's law firm provided paralegal assistance totaling $4,100. *Id.* The maximum

amount that Haigh can receive from the Attorney Admission Fund is $59,872.50.[9] Haigh's fees

and expenses account for 79% of the total fees and expenses Christians' court-appointed counsel

requested. Doc. 566 ¶¶ 7, 8, 9, 10. Thus, the Court's Amended Judgment will direct that 79% of

the fees and expenses awarded under 42 U.S.C. § 1988 ($53,326.18) be paid to Haigh's law firm.

Because the amount that is awarded to Haigh under § 1988 is less than the amount to which he

would be entitled to receive from the Attorney Admission Fund, the Amended Judgment will

direct that Haigh receive $6,546.32 from the Attorney Admission Fund.[10] Erickson agreed "to

serve without compensation except such as she may be entitled to under 42 U.S.C. § 1988." Doc.

485 at 2. Thus, Erickson will not be awarded attorneys' fees other than her proportional share

(21%) of the total attorneys' fees and expenses Christians' court-appointed counsel are awarded

under § 1988.

　　　After Christians' counsel filed a motion for attorneys' fees and expenses, Christians

filed[11] a *pro se* motion for costs, Doc. 602, and supporting declaration, Doc. 603. In his motion

---

[9] 318.70 hours X $175/hour = $55,772.50 + $4,100 for paralegal time totals $59,872.50.

[10] $59,872.50 less $53,326.18 totals $6,546.32. After any appeals have been concluded, if the attorneys' fees finally awarded have not been collected despite diligent efforts to collect, the Court will consider an additional fee request from the Attorney Admission Fund submitted by Attorney Haigh. The fee request can only be for uncollected fees from the Amended Judgment, as it may be amended in subsequent proceedings.

[11] The District of South Dakota's Local Rules provide that "[b]efore costs may be taxed, the prevailing party entitled to recover costs must file and serve a verified bill of costs within 28 calendar days after entry of judgment[.]" D.S.D. Civ. LR 54.1(a). Christians' *pro se* Motion for Costs was docketed on November 24, 2025, but it was signed on August 16, 2025. Doc. 602. Separately, Christians filed a declaration of deposit stating that he deposited his *pro se* Motion

for costs, Christians seeks reimbursement at an hourly rate of $50.00 to $100.00 for the 2600

hours he has personally expended working in this case. Doc. 602 at 1. The Eighth Circuit has

held that 42 U.S.C. § 1988 "presupposes a relationship of attorney and client[.]" *Davis v.

Parratt*, 608 F. App'x 717, 718 (8th Cir. 1979) (per curiam). According to the Eighth Circuit,

"[t]he legislative history of Section 1988 reveals that its purpose is not to compensate pro se

litigants, but to provide counsel fees to prevailing parties in order to give private citizens a

meaningful opportunity to vindicate their rights[.]" *Id.* Christians, a *pro se* litigant, may not

receive compensation for the time he estimates he spent prosecuting this case. *See id.* (holding

that a district court properly denied a pro se inmate's request under § 1988 to be compensated at

an hourly rate for his work preparing his § 1983 case).

In his motion for costs, Christians seeks recovery for USMS service fees totaling more

than $3,654.95. Doc. 602 at 1–3. The Court granted Christians' motion for leave to proceed in

forma pauperis. Doc. 18 at 3. Thus, when the Court screened Christians' amended complaint and

second amended complaint, the Court, in accordance with Federal Rule of Civil Procedure

4(c)(3) and 28 U.S.C. § 1915(d), ordered that the USMS serve the Defendants who remained

after screening. Doc. 27 at 18; Doc. 147 at 67. Although "[f]ees of the clerk and marshal[]" may

be taxed as costs, *see* 28 U.S.C.§ 1920(1), because Christians was granted leave to proceed in

forma pauperis in this action, he was not responsible for paying the USMS costs of service and

may not seek to recover for these costs he did not actually incur.

Finally, Christians seeks to recover a district court filing fee of $450.00 and appellate

filing fees of $1210.00. Doc. 602 at 1. When the Court granted Christians' motion for leave to

---

for Costs in the prison's internal legal mail system on August 20, 2025. Doc. 601-1. The
declaration of deposit is notarized. *Id.* Thus, the Court will give Christians the benefit of the
doubt and consider his Motion for Costs to be timely.

proceed in forma pauperis, the Court, as required by the PLRA, ordered that Christians is required to pay the full $350 filing fee and directed the institution having custody of him to submit monthly payments when sufficient funds were available in his trust account until the filing fee was paid in full. Doc. 18 at 4. The District of South Dakota's financial records demonstrate that the $350 filing fee in this case has been paid in full.

Christians is a "prevailing party" and may recover costs under Federal Rule of Civil Procedure 54(d). *See Johnston v. Dooley*, 4:14–CV–04125–LLP, 2014 WL 7011002, at *2 (D.S.D. Dec. 10, 2014) (explaining that "[a] party may be awarded attorney's fees in a § 1983 civil rights suit if he is a 'prevailing party' who 'obtains at least some relief on the merits of his claim[,]'" and providing that "[l]ikewise, costs may be awarded to the prevailing party in a civil suit under Fed. R. Civ. P. 54(d)." (internal citation omitted)); *see also Casey v. City of Cabool*, 12 F.3d 799, 804 (8th Cir. 1993) (defining a prevailing party as "one that obtains 'at least some relief on the merits of his claim.'" (quoting *Farrar*, 506 U.S. at 111). The types of costs recoverable under Rule 54(d) are defined in 28 U.S.C. § 1920. *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 440–42 (1987). Under § 1920, an award of costs for "fees of the clerk and marshal" is recoverable, which includes the $350 filing fee which Christians seeks to recover. *See Nugget Distrib. Coop. of Am., Inc. v. Mr. Nugget, Inc.*, 145 F.R.D. 54, 57 (E.D. Pa. 1992) (holding that the language of § 1920 "clearly encompasses the filing fee").

Before the trial, Christians filed two notices of appeal. *See* Docs. 56, 379, 380. This Court granted Christians' leave to proceed in forma pauperis on appeal and ordered that Christians is responsible for the full $605 filing fee under 28 U.S.C. § 1915(b)(1). Docs. 61, 418. The Eighth Circuit dismissed Christians' notices of appeal for lack of jurisdiction. Docs. 66, 420. Christians is not permitted to recover the appellate filing fees associated with his notices of appeals that

were dismissed for lack of jurisdiction. *See Troxell v. Del., L & W R Co.*, 205 F. 830, 832 (E.D. Pa. 1913) (holding that a party may not recover as part of his costs after a final judgment is entered in his favor the costs paid out by him in an unsuccessful intermediate appeal).

For the reasons explained above, Christians' *pro se* Motion for Costs, Doc. 602, is granted in part and denied in part. As a prevailing party, Christians is entitled to recover the $350 civil filing fee as taxable costs, and his Motion for Costs is granted to the extent he seeks recovery of the $350 civil filing fee.[12] To the extent his Motion for Costs seeks recovery of appellate filing fees, USMS service fees, and Christians' time spent prosecuting this case, the Motion for Costs is denied.

## V.    Christians' Remaining *pro se* Motions (Docs. 539, 550, 604)

### A.    Motion for Sanctions (Doc. 539)

Christians' *pro se* motion for sanctions, Doc. 539, is more accurately characterized as a request for costs under Federal Rule of Appellate Procedure 39 following the denial of Defendants' Petition for Interlocutory Appeal. Christians cites Federal Rule of Appellate Procedure 39 and submitted an itemized and verified bill of costs in support of his motion. Doc. 539 at 1 (citing Fed. R. App. P. 39); Doc. 541. According to Christians' itemized bill of costs, he seeks $5,000.00 in reimbursement for the time he personally spent preparing an opposition to Defendants' Petition for Permission to File an Interlocutory Appeal, as well as additional photocopying and postage charges. Doc. 541 at 2; *see also* Doc. 539 at 1. Defendants argue that

---

[12] Defendants Fluke and Young are jointly and severally liable for the attorneys' fees and costs awarded to Christians. In their objection to Plaintiff's motion for attorneys' fees and expenses, Fluke and Young did not argue that the attorneys' fee award should be apportioned. *See generally* Doc. 556. Thus, the Court will apply that general rule that "non-prevailing defendants are to be held jointly and severally for attorneys' fees and costs." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014).

Christians' motion for sanctions should be denied because the Eighth Circuit has held that "a *pro se* litigant is not entitled to attorney fees under section 1988." Doc. 555 at 3 (quoting *McDermott v. Royal*, 123 F. App'x 241, 242 n.3 (8th Cir. 2004) (per curiam)). Defendants do not address Christians' request for photocopying and postage charges.

Federal Rule of Appellate Procedure 39(e)(3)(A) provides that "[a] party who wants costs taxed in the court of appeals must–within 14 days after entry of judgment—file with the circuit clerk and serve an itemized and verified bill of those costs." Even assuming that denial of a petition or permission to file an interlocutory appeal constitutes the dismissal of an appeal for which costs are taxed against the appellant, *see* Fed. R. App. P. 39(a)(1), Christians' itemized and verified bill of costs should have been filed with the Eighth Circuit Court of Appeals, not this Court. A district court does not have authority to tax costs for the items set forth in Christians' itemized bill of costs, Doc. 541 at 2. *See* Fed. R. App. 39(f) (providing that certain costs on appeal are taxable in the district court). For these reasons, Christians' *pro se* motion for sanctions, Doc. 539, is denied.

### B.    Motion for Declaratory Relief (Doc. 550)

Because the jury returned a verdict in favor of Christians on his claims against Fluke and Young, Christians seeks a declaration that:

> The acts and omissions of Brent Fluke and Darin Young did cause a violation of Mark Christians' civil rights to be free from Cruel and Unusual Punishment under the 8th Amendment of the Constitution of the United States. The nutrition as provided allowed by Brent Fluke and Darin Young was so inadequate as to maintain the health of a human being (Mark Christians) resulting in physical and emotional injury. Brent Fluke and Darin Young have a duty that requires them to provide adequate nutrition to those in their charge, custody and care under their supervision as required by the law.

Doc. 550 at 1–2. Defendants did not respond to Christians' motion for declaratory relief.

This Court does not have jurisdiction to grant declaratory relief unless there is an "actual controversy" between the parties. *Butler v. Dowd*, 979 F.2d 661, 673 (8th Cir. 1992) (citing *Caldwell v. Gurley Ref. Co.*, 755 F.2d 645, 648 (8th Cir. 1985)).[13]  When a plaintiff requests declaratory relief that mirrors what the jury was instructed it must find to hold defendants liable, the jury verdict "amounts to an implicit declaration of the same things that plaintiff[] [is] requesting in [his] motion for declaratory relief." *Id.* "Once the jury's verdict was reached, declaratory relief could not change or clarify any legal relationship between plaintiff[] and defendant[s]." *Id.* Therefore, Christians' request for declaratory relief is moot, and this Court does not have jurisdiction to grant the requested declaratory relief. *See id.* Christians' motion for declaratory relief, Doc. 550, is denied.

### C.    Motion for New Trial or, in the Alternative, Motion to Extend (Doc. 604)

Christians moves for a new trial or, in the alternative, an extension of time to file a motion for new trial. Doc. 604. Christians' motion for new trial was docketed on November 24, 2025. *Id.* Federal Rule of Civil Procedure 59(b) provides that "[a] motion for a new trial must be filed no later than 28 days after the entry of judgment." Fed. R. Civ. P. 59(b). The judgment was entered on July 24, 2025. Doc. 535. Thus, the first issue the Court must consider is whether Christians' motion for new trial is timely.

Although the motion was docketed on November 24, 2025, the motion is dated and was signed under penalty of perjury on August 16, 2025. Doc. 604 at 2. More importantly, however,

---

[13] Fluke is no longer the Warden at Mike Durfee State Penitentiary, where Christians was incarcerated at the time of trial. TT at 170: 18–20 (Doc. 559 at 39: 18–20). Young is no longer the Warden at the State Dakota State Penitentiary, where Christians was held in the SHU from March to May 2021. TT at 216: 7–10 (Doc. 559 at 85: 7–10). Recently, Christians has submitted a notice of address change indicating that he has been moved from MDSP to the Jameson Annex at the SDSP. Doc. 608.

along with the motion for new trial, Doc. 604, Christians submitted a declaration of deposit stating that he deposited his motion for new trial, Doc. 604, in the prison's internal legal mail system on August 20, 2025. Doc. 601-1. Christians' declaration of deposit was notarized on August 20, 2025. Doc. 601-1. But the motion for new trial and declaration of deposit arrived at the Clerk's Office in an envelope that was postmarked on November 21, 2025. Doc. 595 at 3–4. At times, some delay in delivering and sending legal mail can occur, but a three-month delay is unusual and not what this Court would typically attribute to delays that can be inherent in the prison mail system. Although Christians asserts that the SDDOC has interfered with and withheld his legal mail, Doc. 595 at 2, the Court need not decide this issue because the Court will assume that Christians' motion for new trial, Doc. 604, was in fact deposited in the prison mail system on August 20, 2025. Applying the prisoner mailbox rule, this means that Christians' motion for new trial was timely filed on August 20, 2025.

A new trial may be awarded under Rule 59(a) only to prevent injustice or when the verdict strongly conflicts with the great weight of evidence. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co. Inc.*, 466 F.2d 179, 186 (8th Cir. 1972). A district court should grant a new trial only if it finds that an error "misled the jury or had a probable effect on its verdict[.]" *E.I. du Pont de Nemours & Co. v. Berkley & Co., Inc.*, 620 F.2d 1247, 1257 (8th Cir. 1980) (citations omitted); *see also* Fed. R. Civ. P. 61. The burden of demonstrating harmful error rests on the party moving for a new trial. *Comerio v. Beatrice Foods Co.*, 616 F. Supp. 1423, 1428 (E.D. Mo. 1985) (internal citation omitted).

In his motion for a new trial, Christians "requests a new trial on multiple circumstances." Doc. 604 at 1 (capitalization in original omitted). He states that "retrial is necessary to cure the errors made finding in judgment for numerous defendants and dismissal of other[s]." *Id.* at 2

(capitalization in original omitted). Christians' motion does not identify any specific alleged error or circumstance that misled the jury or had a probable effect on the verdict. Because Christians has not met his burden of demonstrating harmful error, his motion for a new trial, Doc. 604, is denied.

In the alternative, Christians moves for a 60-day extension of time to file a "proper motion for new trial[.]" *Id.* at 2 (capitalization in original omitted). Federal Rule of Civil Procedure 6(b)(2) provides that "[a] court must not extend the time to act under Rule[] . . . 59(b)[.]" Fed. R. Civ. P. 6(b)(2). Christians' alternative motion to extend the time to file motion for new trial, Doc. 604, under Rule 59(b) is denied.

## VI.    Conclusion

For the reasons set forth above, it is ORDERED:

1.    That Defendants' Renewed Motion for Judgment as a Matter of Law pursuant to Rule 50(b), Doc. 551, is denied.

2.    That Defendants' Rule 59 Motion to Set Aside or Reduce the Punitive Damage Award, Doc. 553, is granted in part and denied in part. The punitive damage award against Young is reduced to $40,000.00 to comport with due process.

3.    That Plaintiff's Motion for Attorneys' Fees and Expenses, Doc. 544, is granted in part and denied in part. Plaintiff's counsel are awarded $67,501.50 in attorneys' fees, but 25 percent ($16,875.38) of this award must be satisfied from the amended judgment the Court will enter in favor of Plaintiff and against Defendants Fluke and Young.

4.    That Christians' *pro se* Motion for Costs, Doc. 602, is granted in part and denied in part. Christians is entitled to recover the $350 civil filing fee as taxable costs, and his *pro se* Motion for Costs is granted to the extent he seeks recovery of the $350 civil filing fee. Otherwise, the Motion is denied.

5.    That Christians' *pro se* Motion for Sanctions, Doc. 539, is denied.

6.    That Christians' *pro se* Motion for Declaratory Relief, Doc. 550, is denied.

7.    That Christians' *pro se* Motion for a New Trial or, in the Alternative, Motion to Extend, Doc. 604, is denied.

DATED this 23rd day of January, 2026.

BY THE COURT:

LAWRENCE L. PIERSOL
United States District Judge